1
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2
   Including Professional Corporations
JILL M. PIETRINI (Cal. Bar No. 138335)
3
jpietrini@sheppardmullin.com
WHITNEY WALTERS-SACHS (Cal. Bar No. 237781)
4
wwalters-sachs@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
5
Los Angeles, California 90067-6055
Telephone:  (310) 228-3700
6
Facsimile:  (310) 228-3701

7
Attorneys for Plaintiff Lions Gate
Entertainment Inc.
8

9
UNITED STATES DISTRICT COURT

10
CENTRAL DISTRICT OF CALIFORNIA

11
WESTERN DIVISION

| | |
|---|---|
| 12 LIONS GATE ENTERTAINMENT INC., a Delaware corporation, | Case No. |
| 13 Plaintiff, | **COMPLAINT FOR FALSE ASSOCIATION, UNFAIR COMPETITION, TRADEMARK INFRINGEMENT, AND TRADEMARK DILUTION** |
| 14 v. | |
| 15 TD AMERITRADE HOLDING CORPORATION, a Delaware corporation, TD AMERITRADE SERVICES COMPANY, INC. a Delaware corporation, HAVAS WORLDWIDE NEW YORK, INC., a Delaware corporation and DOES 1-10, inclusive, | **DEMAND FOR JURY TRIAL** |
| 20 Defendants. | |

21

22         Plaintiff Lions Gate Entertainment Inc. ("Lions Gate"), for its complaint

23 against defendants TD Ameritrade Holding Corporation ("TD Ameritrade"), TD

24 Ameritrade Services Company, Inc. ("TD Services"), Havas Worldwide New York,

25 Inc. ("Havas") (collectively, "Defendants"), and Does 1-10, alleges as follows:

26                            **JURISDICTION**

27         1.      This action arises under the trademark and unfair competition laws of

28 the United States, 15 U.S.C. § 1051, *et seq.*, and under California statutory and

1  common law of unfair competition.  This Court has jurisdiction under 28 U.S.C. §§
2  1331 and 1338(a) and (b), and § 1367, and 15 U.S.C. § 1121.

3      2.      Venue is proper under 28 U.S.C. §§ 1391(a), (b) and (c) in this case
4  because Defendants are deemed to reside in this District for venue purposes and are
5  subject to personal jurisdiction in this District, and/or a substantial part of the events
6  or omissions giving rise to the instant claims occurred in this District.

7                         **PARTIES**

8      3.      Plaintiff Lions Gate is, and at all relevant times was, a Delaware
9  corporation having its principal place of business in Santa Monica, California.
10 Lions Gate is in the business of creating, promoting, and distributing motion
11 pictures and television programs, as well as licensing those properties for various
12 merchandise and promotions and sponsorships.

13     4.      On information and belief, Defendant TD Ameritrade is, and at all
14 relevant times was, a Delaware corporation having its principal place of business in
15 Omaha, Nebraska, and it does business in this District.

16     5.      On information and belief, Defendant TD Services is, and at all relevant
17 times was, a Delaware corporation having its principal place of business in Omaha,
18 Nebraska.  Defendant TD Services does business in this District and is registered to
19 do business in California.

20     6.      On information and belief, Defendant Havas is, and at all relevant times
21 was, a Delaware corporation having its principal place of business in New York,
22 New York, and it does business in this District.

23     7.      Defendants are subject to personal jurisdiction in this District because
24 they do business in this District and/or the claims arose in this District.

25     8.      The true names, identities and capacities, whether individual, associate,
26 corporate or otherwise, of Defendants DOES 1 to 10, inclusive, and each of them
27 ("the DOE Defendants"), are unknown to Lions Gate at this time, who therefore
28 sues the DOE Defendants by such fictitious names.  When the true names and

1  capacities or participation of the DOE Defendants are ascertained, Lions Gate will

2  amend this complaint to assert their true names, identities, and capacities.  Lions

3  Gate is informed and believes and thereon alleges that each of the DOE Defendants

4  sued herein is responsible for the wrongful acts alleged herein, and is therefore

5  liable to Lions Gate in some manner for the events and happenings alleged in this

6  complaint.  Lions Gate is informed and believes and thereon alleges that at all times

7  herein mentioned, the DOE Defendants were and are doing business and/or residing

8  in this District.

9  **FACTS**

10  **Lions Gate's Business And Trademarks**

11      9.     Lions Gate is a leading global entertainment company with a strong and

12  diversified presence in the motion picture and television industry.  Lions Gate has

13  produced and distributed motion pictures, television shows, and related

14  entertainment products, and has also been involved in motion picture financing,

15  licensing, production, and distribution services.

16      10.    Lions Gate's motion picture and television library includes more than

17  15,000 titles, including the highly successful motion picture *Dirty Dancing*, starring

18  the late Patrick Swayze and Jennifer Grey.

19      11.    *Dirty Dancing* is a world famous, Oscar-winning film, which was

20  released in 1987 and became a massive box office hit, with hundreds of millions of

21  dollars in worldwide earnings reported.  Two soundtracks from *Dirty Dancing* have

22  each achieved Platinum sales levels (more than 1 million units sold) and continue to

23  have strong sales worldwide.  In recent years, the film was named one of the Top 10

24  Date Movies of all time, among numerous other accolades, and its appeal to

25  generations of fans has proven that its message of love conquering all is universal

26  and timeless.  *Dirty Dancing* is iconic and well known for the dance scenes and for

27  certain lines or quotes in the motion picture.

28      12.    Numerous works have been created, released, and distributed in

connection with the motion picture *Dirty Dancing*.  For example, in or about 1987, there was a Dirty Dancing Live in Concert tour in the United States along with the release of a related video.  In or about 1988, a *Dirty Dancing* television series was aired on the CBS network.  The film has also been adapted for the stage as a major West End and Broadway musical, which was a huge commercial success and broke various box office records.

13.     In December 2006, a *Dirty Dancing* reality television series premiered on the Women's Entertainment Network in which contestants competed for best dancer status.  In 2007, to mark the film's 20th anniversary, Lions Gate re-released *Dirty Dancing* in theaters with a newly re-mastered print and bonus features, and released worldwide a 20th anniversary edition DVD to the home entertainment market, and a 20th anniversary soundtrack album, again to phenomenal success.  To pay further tribute to this cult classic, Lions Gate also celebrated the 25th anniversary of *Dirty Dancing* just a few years back, and future plans for additional exploitation of this valuable property have been announced and are being closely followed by fans and industry executives alike.

14.     During the last 25 years, Lions Gate has been able to capitalize on the popularity and recognition of its *Dirty Dancing* intellectual property rights and has enjoyed a great deal of success in the exploitation of those rights worldwide.

15.     One of the most (if not the most) famous lines of *Dirty Dancing* is "Nobody puts Baby in a corner."  This quote, said by Swayze at the climax of the film, has become unquestionably famous.  Indeed, the American Film Institute voted "Nobody puts Baby in a corner" as one of the top 100 Most Popular Quotes from a motion picture.  By virtue of the popularity of the *Dirty Dancing* motion picture and related properties  and the significant publicity generated by them, among other things, this quote has developed secondary meaning, and become famous, and is unmistakably associated with the *Dirty Dancing* motion picture.  The "Nobody puts Baby in a corner" quote is said by Swayze before the final dance scene between

Grey and Swayze, which ends in Swayze lifting Grey over his head and spinning her (the "Dance Lift").

16.     Lions Gate owns all right, title, and interest in and to the trademark DIRTY DANCING, as well as various other trademarks associated with the *Dirty Dancing* motion picture and the DIRTY DANCING mark.  These additional marks include, but are not limited to, the trademark NOBODY PUTS BABY IN A CORNER for use with motion pictures and various items of merchandise.

17.     Not only does Lions Gate have common law trademark rights in the DIRTY DANCING and NOBODY PUTS BABY IN A CORNER trademarks dating back to 1987, it also has registered the DIRTY DANCING trademark on the Principal Register of the United States Patent & Trademark Office ("PTO") and in numerous countries throughout the world.  Lions Gate owns three pending federal applications to register the NOBODY PUTS BABY IN A CORNER trademark, which have been approved by the PTO.  Lions Gate's trademark applications to register NOBODY PUTS BABY IN A CORNER are based on actual use of the mark for certain goods and on an intent to use the mark for the remaining goods identified in the applications.  True and correct copies of the PTO website pages reflecting the applications to register the NOBODY PUTS BABY IN A CORNER trademark are attached hereto as **Exhibit A**.

18.     Lions Gate possesses extensive goodwill and reputation in these trademarks, as the film has been released globally for nearly three decades, and its popularity is proven by the revenue generated from the film itself, merchandising, the soundtracks, and the musical stage show version of the film.

19.     Lions Gate has expressly licensed the use of the DIRTY DANCING and NOBODY PUTS BABY IN A CORNER trademarks for the manufacturing, marketing, and sale of a variety of merchandise through approved licensees.  Lions Gate also licenses scenes from *Dirty Dancing*, including the Dance Lift, to third parties, who use the *Dirty Dancing* property to advertise, market, or promote their

1 | goods and services.

2 |      20.    Lions Gate's licensees are currently selling a variety of merchandise

3 | derived from and related to *Dirty Dancing*, including merchandise bearing and/or

4 | using the "Nobody puts Baby in a corner" quote from the movie—both in print and

5 | audio—and are offering services under the DIRTY DANCING and NOBODY

6 | PUTS BABY IN A CORNER trademarks throughout the United States.

7 |      21.    By virtue of the popularity of *Dirty Dancing*, the significant sales of

8 | licensed merchandise, promotions with third parties, and the significant publicity

9 | relating to *Dirty Dancing*, among other things, Lions Gate's DIRTY DANCING and

10 | NOBODY PUTS BABY IN A CORNER trademarks have developed secondary

11 | meaning and are famous.

12 |      22.    Lions Gate's goods and services offered under the DIRTY DANCING

13 | and NOBODY PUTS BABY IN A CORNER trademarks have come to be known to

14 | the purchasing public as conforming to certain standard of quality.  As a result, the

15 | DIRTY DANCING and NOBODY PUTS BABY IN A CORNER trademarks and

16 | the goodwill associated with them are of tremendous value to Lions Gate and its

17 | authorized licensees and business partners.

18 | **Defendants And Their Infringing Actions**

19 |      23.    Defendant Havas created an advertising campaign on behalf of

20 | Defendants TD Ameritrade and TD Services during 2014, which consisted of

21 | advertisements in various channels, including, but not limited to, an online video,

22 | digital display, social media, television, and print (the "Advertising Campaign").

23 |      24.    The Advertising Campaign was intentionally designed to create an

24 | association with the *Dirty Dancing* motion picture and the NOBODY PUTS BABY

25 | IN A CORNER trademark by marketing TD Ameritrade's goods and services with

26 | phrases such as:

27 |     &bull;  "Nobody puts your old 401k in a corner.  Take that baby and roll it

28 |        over to an IRA.  Then show us your retirement happy dance."

(Facebook)

- "Nobody puts your old 401k in a corner.  Take that baby and roll it over to an IRA.  Do a #retirement happy dance."  (Twitter)

- "Nobody puts your old 401k in the corner," "TD Ameritrade:  Old 401(k) in a Corner," and "Don't let your old 401(k) to sit [sic] in the corner …"  (YouTube)

- "Nobody puts your old 401(k) in a corner" (spoken), and "Nobody puts your old 401(k) in the corner." (written) (National television advertisement)

25.    Because these taglines modified the iconic quote from the *Dirty Dancing* movie, Lions Gate may never have approved or licensed them, had Defendants sought Lions Gate's consent at the outset.

26.    Defendants featured these adulterated taglines with a reenactment or representation of the Dance Lift, namely, a still and/or moving image of a man lifting a piggy bank over his head after the piggy bank ran into the man's arms (the "Infringing Artwork").  The Infringing Artwork was intentionally designed to be virtually identical to the Dance Lift, which again is the iconic and ultimate scene in the film in which Swayze lifts Grey above his head during their last dance together. The Infringing Artwork further creates a false association with Lions Gate and the *Dirty Dancing* motion picture.  Documents showing examples of Defendants' infringement and improper commercial exploitation of Lions Gate's intellectual property rights associated with *Dirty Dancing* are attached hereto as **Exhibit B**.

27.    Defendants' use of the NOBODY PUTS BABY IN A CORNER trademark or a modification thereof together with the Dance Lift has caused and is likely to cause people to falsely or incorrectly believe that Lions Gate has approved, licensed, endorsed, sponsored, and/or authorized, or is associated with, TD Ameritrade's products and/or services.

28.    Confusion has occurred, or at a minimum, is likely given the near

1  identicalness of NOBODY PUTS BABY IN A CORNER trademark and
2  Defendants' use of the phrase "Nobody puts your old 401k in a corner" with or in
3  association with the words "baby" and "dance," as well as the visual similarity
4  between the Infringing Artwork and the Dance Lift, which is the film's most iconic
5  scene.

6      29.    On information and belief, the Advertising Campaign (including the
7  improper taglines and Infringing Artwork) ran from October 2014 through April 12,
8  2015.  The Advertising Campaign did not stop until Lions Gate learned of it and
9  notified Defendants of their infringement, as described below.  The Advertising
10  Campaign or elements thereof may still be viewed on social media websites.

11      30.    On April 2, 2015, Lions Gate sent a letter to TD Ameritrade,
12  demanding that TD Ameritrade cease and desist its use of Lions Gate's intellectual
13  property associated with the *Dirty Dancing* motion picture.

14      31.    On April 9, 2015, Havas responded on behalf of itself and TD
15  Ameritrade, taking the untenable position that Lions Gate did not have enforceable
16  trademark rights in the line "Nobody puts Baby in a corner," and further claiming
17  that the Advertising Campaign and Infringing Artwork were "so clearly parodic in
18  nature—so as to avoid any confusion, infringement, or other claim."   Defendants
19  have since walked back from their meritless claim of parody after their initial
20  response to Lions Gate's demand letter.

21      32.    To the extent there was any doubt, Defendants' parody argument –
22  meritless as it is – nevertheless made it clear that Defendants intended to draw a
23  connection or association with Lions Gate's *Dirty Dancing*, the iconic quote
24  "Nobody puts Baby in a corner," and the Dance Lift and deceive customers into
25  believing that the Advertising Campaign was a Lions Gate-licensed, authorized, or
26  sponsored work, when, in fact, it was not.

27      33.    On April 9, 2015, Havas asserted that "all materials within our control
28  have been pulled off or are in the process of being pulled off media …"  However,

-8-

on information and belief, an additional television advertisement(s) ran on April 12, 2015 and the Advertising Campaign or elements thereof still resides on social media websites.  Further, Havas refused to make any monetary payment to Lions Gate to compensate Lions Gate for its lost license fees for Defendants' unauthorized use of Lions Gate's intellectual property, despite knowing that Lions Gate has expressly licensed the use of the DIRTY DANCING and NOBODY PUTS BABY IN A CORNER trademarks for the manufacturing, marketing, and sale of a variety of merchandise through approved licensees, and had licensed aspects of *Dirty Dancing* to third parties for use in promoting, marketing, or advertising their goods and services—just as TD Ameritrade did.

34.     Between April 2015 and June 2015, Lions Gate continued to attempt to negotiate a settlement of its claims arising out of Defendants' unauthorized use of *Dirty Dancing's* iconic quote and Lions Gate's trademarks associated therewith. Despite Lions Gate's good faith attempt to settle the case, Defendants refused to compensate Lions Gate for their unauthorized use, resting, instead, on their indefensible position that they were free to exploit Lions Gate's intellectual property, without any consequence to them or consideration to Lions Gate.

35.     Specifically, the following letters were sent between the parties from April 2015 to June 2015:

| DATE | AUTHOR | RECIPIENT(S) |
|---|---|---|
| 4/2/15 | Lions Gate<br><br>(Whitney Walters-Sachs of Sheppard, Mullin, Richter & Hampton, LLP) | TD Ameritrade Holding Corporation and TD Ameritrade, Inc.<br><br>(Ellen L.S. Koplow, Esq., Executive Vice President, General Counsel, and Secretary of TD Ameritrade) |
| 4/9/15 | Havas Worldwide New York, Inc.<br><br>(Nancy R. Wynne, General Counsel, on behalf of Havas and TD Ameritrade Holding | Lions Gate<br><br>(Whitney Walters-Sachs of Sheppard, Mullin, Richter & Hampton, LLP) |

| | | Corporation) | |
|---|---|---|---|
| | 4/15/15 | Lions Gate <br><br> (Whitney Walters-Sachs of Sheppard, Mullin, Richter & Hampton, LLP) | TD Ameritrade Holding Corporation and TD Ameritrade, Inc.  (Helen Odem, Esq., Counsel, Intellectual Property) <br><br> Havas Worldwide New York, Inc.  (Nancy R. Wynne, General Counsel) |
| | 4/21/15 | TD Ameritrade Holding Corporation and Havas Worldwide New York, Inc. <br><br> (Andrew Baum of Foley & Lardner LLP) | Lions Gate <br><br> (Whitney Walters-Sachs of Sheppard, Mullin, Richter & Hampton, LLP) |
| | 6/3/15 | Lions Gate <br><br> (Whitney Walters-Sachs of Sheppard, Mullin, Richter & Hampton, LLP) | TD Ameritrade Holding Corporation, TD Ameritrade, Inc., and Havas Worldwide New York, Inc. <br><br> (Andrew Baum of Foley & Lardner LLP) |
| | 6/18/15 | Lions Gate <br><br> (Whitney Walters-Sachs of Sheppard, Mullin, Richter & Hampton, LLP) | TD Ameritrade Holding Corporation, TD Ameritrade, Inc., and Havas Worldwide New York, Inc. <br><br> (Andrew Baum of Foley & Lardner LLP) |

36.     In its June 3, 2015 letter, Lions Gate requested Defendants to engage in earnest in settlement discussions, and expressly stated to Defendants that if a resolution could not be reached, Lions Gate would file an infringement action in U.S. District Court for the Central District of California.

37.     On June 8, 2015, the parties discussed this dispute by telephone at Defendants' request, and Defendants presented Lions Gate with a settlement offer. Defendants expressly agreed not to file a declaratory judgment action without first contacting Lions Gate.  Lions Gate promised the same with respect to filing an infringement action.  This agreement was confirmed in writing by the parties

through a series of emails sent on June 8, 2015.

38.     In its June 18, 2015 letter, Lions Gate presented a counteroffer to Defendant and requested a response to its counteroffer to settle by June 25, 2015.

39.     On June 26, 2015, rather than respond to Lions Gate's settlement offer, and less than 24 hours after the deadline to respond to Lions Gate's settlement counteroffer, Defendants rushed to the courthouse and filed a preemptive declaratory judgment complaint in the Southern District of New York.  Defendants did so despite the parties' agreement that they would not unilaterally terminate settlement talks and file a lawsuit without advance notice to the other side.

40.     Defendants' decision to violate the parties' agreement and rush to the courthouse is the quintessence of forum shopping, designed to gain home court and substantive law advantages, and force Lions Gate to litigate thousands of miles from its principal place of business.  All of this was done knowing that if the parties could not resolve their dispute, Lions Gate's choice of forum—which is entitled to great deference—would be in this District in Los Angeles, California.

## **FIRST CAUSE OF ACTION**

### **(False Association and Unfair Competition—15 U.S.C. § 1125(a))**

41.     Lions Gate repeats and realleges each and every allegation of paragraphs 1 through 40, above, as though fully set forth herein.

42.     Defendants' unauthorized use of the NOBODY PUTS BABY IN A CORNER trademark or a modification of it, together with a representation or reenactment of the Dance Lift and other words and indicia associated with the *Dirty Dancing* motion picture, in conjunction with Defendants' businesses and the Advertising Campaign as alleged herein, constitutes a false designation of association, affiliation or sponsorship, and unfair competition in violation of 15 U.S.C. § 1125(a).  Defendants' activities falsely imply, indicate, or suggest that their activities and the Advertising Campaign are associated, affiliated, or connected with, or approved or sponsored by, Lions Gate or the *Dirty Dancing* motion picture.

-11-

43.     As a direct and proximate result of Defendants' wrongful acts, Lions Gate has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, motion picture, licensing program, and related goodwill.  Defendants may continue to conduct or renew, unless restrained, their use of NOBODY PUTS BABY IN A CORNER trademark or other trademarks confusingly similar thereto, the Dance Lift, and other words or indicia associated with *Dirty Dancing*, and will cause irreparable damage to Lions Gate.  Lions Gate has no adequate remedy at law and is entitled to an injunction restraining Defendants, their officers, members, agents, servants, and employees, and all persons acting in concert with Defendants, from engaging in further acts of false designation of association, sponsorship, affiliation, or connection, and acts of unfair competition.

44.     Lions Gate is further entitled to recover from Defendants the actual damages that Lions Gate has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts.  Lions Gate is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Defendants' acts of false designation of association, sponsorship, affiliation, or connection, and unfair competition.

45.     Lions Gate is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.  Lions Gate is presently unable to ascertain the extent of the gains, profits, and advantages that Defendants have realized by reason of their acts of false designation of association, sponsorship, affiliation, or connection, and unfair competition.

46.     Because of the willful nature of Defendants' wrongful acts, Lions Gate is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

47.     Lions Gate is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (Statutory and Common Law Unfair Competition)

48.     Lions Gate repeats and realleges each and every allegation of paragraphs 1 through 47, above, as though fully set forth herein.

49.     By reason of the foregoing, Defendants have been, and are, engaged in "unlawful, unfair or fraudulent business practices" in violation of §§ 17200 *et seq.* of the California Bus. & Prof. Code and acts of unfair competition in violation of the common law.

50.     Lions Gate invested substantial time, skill, and money in developing its *Dirty Dancing* property rights.

51.     Defendants misappropriated and used Lions Gate's intellectual property at no cost and without the authorization or consent of Lions Gate, causing substantial injury to Lions Gate.

52.     Defendants' acts complained of herein are unlawful within the meaning of § 17200 *et seq.* of the California Bus. & Prof. Code in that they constitute practices that are forbidden by federal, state, and/or common law.  Such practices are likewise unfair within the meaning of the statute, as they violate the spirit of trademark law, and the resulting harm to Lions Gate from these practices outweighs any benefit (to the extent there is any at all).  Finally, Defendants' acts complained of herein are fraudulent as used in § 17200, as members of the public are likely to be deceived by such acts.

53.     Defendants' acts complained of herein have damaged and will continue to damage Lions Gate irreparably.  Lions Gate has no adequate remedy at law for these wrongs and injuries.  The damage to Lions Gate includes harm to its NOBODY PUTS BABY IN A CORNER trademark and the goodwill associated therewith, Lions Gate's licensing program, and to the *Dirty Dancing* motion picture that money cannot compensate.  Lions Gate is therefore entitled to:  (a) injunctive relief restraining and enjoining Defendants and their officers, members, agents,

servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using the NOBODY PUTS BABY IN A CORNER trademark or any mark, name, symbol, or logo which is confusingly similar thereto, the Dance Lift, and other words or indicia associated with *Dirty Dancing*, in connection with the marketing or sale of any goods or services by Defendants; (b) Lions Gate's actual damages sustained as a result of Defendants' wrongful acts; (c) an accounting of Defendants' profits earned from the Advertising Campaign; (d) the award of Defendants' unjust profits, as well as sums sufficient to compensate Lions Gate for all harm suffered as a result of Defendants' conduct; and (e) punitive damages.

## THIRD CAUSE OF ACTION

### (Trademark Infringement—15 U.S.C. § 1125(a) and Common Law)

54.    Lions Gate repeats and realleges each and every allegation of paragraphs 1 through 53, above, as though fully set forth herein.

55.    Lions Gate owns all right, title, and interest in and to the NOBODY PUTS BABY IN A CORNER trademark.  Lions Gate markets and sells merchandise using this trademark and other trademarks associated with *Dirty Dancing*, though approved licensees, as part of its *Dirty Dancing* line of approved merchandise.

56.    Defendants have used in commerce, without Lions Gate's permission or authorization, the NOBODY PUTS BABY IN A CORNER trademark in a manner that is likely to cause confusion or mistake and to deceive purchasers as to Lions Gate's and/or *Dirty Dancing's* affiliation, connection, or association with, or approval or sponsorship of, Defendants, their businesses, the Advertising Campaign, and/or the Infringing Artwork.

57.    Defendants' actions are intentional and were designed to capitalize on the goodwill, recognition, and fame associated with the *Dirty Dancing* motion picture and the NOBODY PUTS BABY IN A CORNER trademark.

58.    Defendants' acts constitute infringement of the NOBODY PUTS

1    BABY IN A CORNER trademark in violation of the common law and under 15

2    U.S.C. § 1125(a).

3         59.    As a direct and proximate result of Defendants' wrongful acts, Lions

4    Gate has suffered and continues to suffer and/or is likely to suffer damage to its

5    trademarks, motion picture, licensing program, and goodwill.  Unless restrained,

6    Defendants may continue to use or resurrect their use of the NOBODY PUTS

7    BABY IN A CORNER trademark or marks confusingly similar thereto and will

8    cause irreparable damage to Lions Gate.  Lions Gate has no adequate remedy at law

9    and is entitled to an injunction restraining Defendants, their officers, members,

10   agents, servants, and employees, and all persons acting in concert with Defendants,

11   from engaging in further acts of infringement.

12        60.    Lions Gate is further entitled to recover from Defendants the actual

13   damages that Lions Gate has sustained, is sustaining, and/or is likely to sustain as a

14   result of Defendants' wrongful acts.

15        61.    Lions Gate is further entitled to recover from Defendants the gains,

16   profits, and advantages that Defendants have obtained as a result of their wrongful

17   acts.

18        62.    Because of the willful nature of Defendants' wrongful acts, Lions Gate

19   is entitled to an award of punitive damages under the common law, and treble

20   damages and increased profits under 15 U.S.C. § 1117.

21        63.    Lions Gate is also entitled to recover its attorneys' fees and costs of suit

22   pursuant to 15 U.S.C. § 1117, as this is an exceptional case.

23                        **FOURTH CAUSE OF ACTION**

24        **(Dilution—15 U.S.C.§ 1125(c); Cal. Bus. & Prof. Code § 14247)**

25        64.    Lions Gate repeats and realleges each and every allegation of

26   paragraphs 1 through 63, above, as though fully set forth herein.

27        65.    Lions Gate has used the NOBODY PUTS BABY IN A CORNER

28   trademark to identify its products and services relating to, and derived from, *Dirty*

-15-

*Dancing* before Defendants began using the NOBODY PUTS BABY IN A CORNER trademark in the Advertising Campaign and in conjunction with their businesses.  The NOBODY PUTS BABY IN A CORNER trademark is inherently distinctive and has acquired distinctiveness through Lions Gate's extensive, continuous, and exclusive use of it.

66.     The NOBODY PUTS BABY IN A CORNER trademark is famous and distinctive within the meaning of 15 U.S.C. § 1125(c)(1) and § 1127 and Cal. Bus. & Prof. Code § 14247.   The NOBODY PUTS BABY IN A CORNER trademark was famous and distinctive before Defendants' first use of such trademark or a modification of it.

67.     Defendants' unauthorized use of the NOBODY PUTS BABY IN A CORNER trademark or modification of it is likely to dilute the distinctive quality of the NOBODY PUTS BABY IN A CORNER trademark in violation of 15 U.S.C. § 1125(c) and Cal. Bus. & Prof. Code § 14247.

68.     Defendants' acts complained of herein are likely to damage Lions Gate irreparably.  Lions Gate has no adequate remedy at law for such wrongs and injuries.  The damage to Lions Gate includes potential harm to its trademarks, goodwill, motion picture, and reputation that money cannot compensate.  Lions Gate is, therefore, entitled to a preliminary and permanent injunction enjoining Defendants' use of the NOBODY PUTS BABY IN A CORNER trademark or any marks dilutive thereof.

69.     Lions Gate is further entitled to recover from Defendants the actual damages sustained by Lions Gate as a result of Defendants' wrongful acts.  Lions Gate is presently unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendants' acts of dilution.

70.     Lions Gate is further entitled to recover from Defendants the gains, profits, and advantages Defendants have obtained as a result of their wrongful acts. Lions Gate is presently unable to ascertain the extent of the gains, profits, and

-16-

1  advantages Defendants have realized by reason of Defendants' willful acts of

2  dilution.

3  71.  Because of the willful nature of Defendants' actions, Lions Gate is

4  entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118.

5  **PRAYER FOR RELIEF**

6  WHEREFORE, Lions Gate prays that this Court enter judgment against

7  Defendants as follows:

8  1.  Finding that Defendants have violated 15 U.S.C. § 1125(a) and the

9  common law; have violated Cal. Bus. & Prof. Code § 17200 and the common law

10  by engaging in unlawful, unfair, and fraudulent business practices and other acts of

11  unfair competition; have infringed the NOBODY PUTS BABY IN A CORNER

12  trademark under the common law and 15 U.S.C. § 1125(a); and have violated 15

13  U.S.C. § 1125(c)(1) and Cal. Bus. & Prof. Code § 14247;

14  2.  Ordering that Defendants and their officers, members, agents, servants,

15  directors, employees, partners, representative, assigns, successors, related

16  companies, and attorneys, and all persons in active concert or participation with

17  Defendants or with any of the foregoing, be enjoined preliminarily during the

18  pendency of this action and permanently thereafter from:

19  a.  Using, promoting, advertising, publicizing, distributing,

20  and posting the NOBODY PUTS BABY IN A CORNER trademark for any goods

21  or services, the Infringing Artwork, or any other mark, name, symbol, or logo which

22  is likely to cause confusion or to cause mistake or to deceive persons into the

23  erroneous belief that Defendants, their businesses, or their goods or services are

24  sponsored, licensed, authorized or endorsed by Lions Gate or *Dirty Dancing* or are

25  connected or affiliated in some way with Lions Gate or *Dirty Dancing*;

26  b.  Falsely implying Lions Gate's sponsorship, association,

27  connection, affiliation, or endorsement of Defendants' businesses or engaging in any

28  act or series of acts which, either alone or in combination, constitutes unfair

-17-

1   methods of competition with Lions Gate, and from otherwise interfering with or

2   injuring the NOBODY PUTS BABY IN A CORNER trademark, or the goodwill

3   associated with any of the foregoing;

4                c.       Engaging in any act that is likely to dilute the distinctive

5   quality of the NOBODY PUTS BABY IN A CORNER trademark and/or injures

6   Lions Gate's business reputation;

7                d.       Representing or implying that Defendants are in any way

8   sponsored by, affiliated, connected or associated with, or endorsed or licensed by,

9   Lions Gate or *Dirty Dancing*; or

10               e.       Knowingly assisting, inducing, aiding, or abetting any

11  other person or business entity in engaging in or performing any of the activities

12  referred to in paragraphs 2(a) to (d) above.

13        3.     Ordering that Defendants permanently remove all reference to the

14  NOBODY PUTS BABY IN A CORNER trademark, the Infringing Artwork, and

15  any other mark, name, symbol, or logo that is confusingly similar to the NOBODY

16  PUTS BABY IN A CORNER trademark from Defendants' and their affiliates'

17  websites, Facebook, and Twitter pages, YouTube, and any and all other social

18  networking sites;

19        4.     Ordering that Defendants permanently remove and destroy all

20  marketing, advertising material, and television commercials comprising the

21  Advertising Campaign or other materials featuring the NOBODY PUTS BABY IN

22  A CORNER trademark or a modification thereof, the Infringing Artwork, or any

23  other name, mark, logo, design, or the like confusingly similar thereto;

24        5.     Granting an award of damages suffered by Lions Gate according to

25  proof at the time of trial;

26        6.     Ordering that Defendants account to Lions Gate for any and all profits

27  earned as a result of Defendants' acts of infringement and unfair competition in

28  violation of Lions Gate's rights under the Lanham Act, Cal. Bus. & Prof. Code  §§

14247, 17200, *et seq.*, and the common law;

7.     Granting an award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

8.     Granting an award of punitive damages for the willful and wanton nature of Defendants' aforesaid acts;

9.     For pre-judgment interest on any recovery by Lions Gate;

10.     Granting an award of Lions Gate's costs, expenses, and attorneys' fees; and

11.     Granting such other and further relief as is just and proper.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated:  July 2, 2015          By /s/ Jill M. Pietrini
                                    Jill M. Pietrini

                                    Attorneys for Plaintiff  Lions Gate Entertainment Inc.

## <u>JURY DEMAND</u>

Lions Gate demands a trial by jury of all issues triable by jury.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated:  July 2, 2015          By /s/ Jill M. Pietrini
                                    Jill M. Pietrini

                                    Attorneys for Plaintiff  Lions Gate Entertainment Inc.

SMRH:439822706.2

-19-

# EXHIBIT A



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Jul 2 03:21:39 EDT 2015*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout | Please logout when you are done to release system resources allocated for you.

Start | List At: [          ] OR | Jump | to record: [          ] **Record 1 out of 3**

TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

## NOBODY PUTS BABY IN A CORNER

| | |
|---|---|
| **Word Mark** | **NOBODY PUTS BABY IN A CORNER** |
| **Goods and Services** | IC 016. US 002 005 022 023 029 037 038 050. G & S: (Based on intent to use) Address books; appointment books; art papers; art pictures; autograph books; binders; book covers; bookmarks; books relating to motion pictures, music, dancing, and theatrical productions; calendars; clipboards; coloring books; decals; decorative paper centerpieces; paper door hangers; dry erase writing boards and writing surfaces; folders; framed art prints; gift cards without magnetic encoding; gift wrapping paper; greeting cards; kits containing party supplies, namely, paper napkins, paper decorations, paper or plastic plates, cups and table covers, and plastic utensils, namely, forks, spoons and knives; lithographs; magazines relating to motion pictures, music, dancing, and theatrical productions; money clips; note cards; notebooks; paper bags; paper banners; paper coasters; paper emblems; paper flags; paper napkins; paper party decorations; paper place mats; pencil cases; photograph albums; photographs mounted as life-size cardboard cutouts; poster books; scrapbook albums; sheet music; song books; stationery; souvenir programs relating to theatrical productions; temporary tattoo transfers; trading cards; writing instruments; (Based on use in commerce) Blank journals; postcards; posters; stickers. FIRST USE: 19870000. FIRST USE IN COMMERCE: 19870000 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 86387237 |
| **Filing Date** | September 6, 2014 |
| **Current Basis** | 1A;1B |

| | |
|---|---|
| **Original Filing Basis** | 1A;1B |
| **Published for Opposition** | March 31, 2015 |
| **Owner** | (APPLICANT) Lions Gate Entertainment Inc. CORPORATION DELAWARE 2700 Colorado Avenue, Suite 200 Santa Monica CALIFORNIA 90404 |
| **Attorney of Record** | Jill M. Pietrini |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Jul 2 03:21:39 EDT 2015*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start   List At: [        ]  OR  Jump  to record: [        ]  **Record 2 out of 3**

TSDR | ASSIGN Status | TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*

# NOBODY PUTS BABY IN A CORNER

| | |
|---|---|
| **Word Mark** | **NOBODY PUTS BABY IN A CORNER** |
| **Goods and Services** | IC 025. US 022 039. G & S: (Based on Intent to Use) Clothing, namely, aprons, baby bibs of cloth or plastic, bandanas, beach cover-ups, bicycle gloves, bolo ties, cardigans, culottes, do rags, dresses, jackets, jeans, jerseys, leggings, lingerie, loungewear, mock turtle necks, neckties, neckwear, outerwear in the nature of wraps, overalls, overcoats, pants, ponchos, rainwear, robes, sarongs, sashes, scarves, shawls, shorts, skirts, skiwear, skorts, sleepwear, socks, sports bras, suits, surf wear, suspenders, sweat bands, sweatpants, sweaters, swimwear, tennis wear, track pants, undergarments, vests, wetsuits, wind resistant jackets, windshirts, and yoga pants; wrist bands made of cloth, leather or imitation leather; belts; headwear; footwear; (Based on Use in Commerce) Clothing, namely, t-shirts, hooded shirts, infantwear, maternity shirts, shirts, sweatshirts, and tank tops. FIRST USE: 19870000. FIRST USE IN COMMERCE: 19870000 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 86387239 |
| **Filing Date** | September 6, 2014 |
| **Current Basis** | 1A;1B |
| **Original Filing Basis** | 1A;1B |
| | December 16, 2014 |

| | |
|---|---|
| **Published for Opposition** | |
| **Owner** | (APPLICANT) Lions Gate Entertainment Inc. CORPORATION DELAWARE 2700 Colorado Avenue, Suite 200 Santa Monica CALIFORNIA 90404 |
| **Attorney of Record** | Jill M. Pietrini |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST |
|---|---|---|---|---|---|---|---|---|---|
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC | | | | | |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Jul 2 03:21:39 EDT 2015*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At: [          ] OR  Jump  to record: [          ]   **Record 3 out of 3**

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

## NOBODY PUTS BABY IN A CORNER

| | |
|---|---|
| **Word Mark** | NOBODY PUTS BABY IN A CORNER |
| **Goods and Services** | IC 021. US 002 013 023 029 030 033 040 050. G & S: (Based on Intent to Use) Candle holders; charms for attachment to beverage glassware for identification purposes; coasters not of paper and not table linen; cocktail platters; cocktail shakers; containers for household or kitchen use; cookie jars; cutting boards; decanters; decorative ceramic tiles not for use as building materials; decorative plates; dinnerware; drinking steins; flasks; hair brushes; hair combs; lunch bags not of paper; lunch boxes with thermal containers; meal trays; napkin holders; pet feeding dishes; tea canisters; thermal insulated containers for food or beverage for domestic use; thermal insulated sleeves for beverage cans; travel mugs; (Based on Use in Commerce) Beverageware; plastic water bottles sold empty. FIRST USE: 20121200. FIRST USE IN COMMERCE: 20121200 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 86387238 |
| **Filing Date** | September 6, 2014 |
| **Current Basis** | 1A;1B |
| **Original Filing Basis** | 1A;1B |
| | December 16, 2014 |

| | |
|---|---|
| Published for Opposition | |
| Owner | (APPLICANT) Lions Gate Entertainment Inc. CORPORATION DELAWARE 2700 Colorado Avenue, Suite 200 Santa Monica CALIFORNIA 90404 |
| Attorney of Record | Jill M. Pietrini |
| Type of Mark | TRADEMARK |
| Register | PRINCIPAL |
| Live/Dead Indicator | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT B



# Nobody puts your old 401(k) in the corner.

Get step-by-step rollover assistance.

We know bringing your retirement assets together can be a hassle. It's why we have rollover consultants on hand to help you with the paperwork and assist in transitioning from your old provider. How easy is that?

Get up to $600 when you roll over your old 401(k).
Call TD Ameritrade at 800-454-9272 or
go to tdameritrade.com/rollover for details.


you got this.

A rollover is not your only alternative when dealing with old retirement plans. Please visit tdameritrade.com/rollover for more information on rollover alternatives.

All investments involve risk, and successful results are not guaranteed. **Offer valid through 04/30/2015. Funding of $25,000–$99,999 receives $100; funding of $100,000–$249,999 receives $300; and funding of $250,000 or more receives $600.** Cash bonus subject to twelve-month funding duration condition. See Web site for details and other restrictions/conditions. This is not an offer or solicitation in any jurisdiction where we are not authorized to do business. TD Ameritrade, Inc. member FINRA/SIPC. TD Ameritrade is a trademark jointly owned by TD Ameritrade IP Company, Inc. and The Toronto-Dominion Bank. © 2015 TD Ameritrade IP Company, Inc. All rights reserved. Used with permission.

TD Ameritrade (TD Ameritrade) | Facebook                                                    https://www.facebook.com/tdameritrade/photos/a.466174911491.960...

## facebook · Sign Up

Email or Phone     Password
☑ Keep me logged in     Log In
Forgot your password?

### Timeline Photos

Back to Album · TD Ameritrade's Photos · TD Ameritrade's Page                    Previous · Next



**TD Ameritrade**
Nobody puts your old 401k in a corner. Take that baby and roll it over to an IRA.
Then show us your retirement happy dance. http://amtd.us/HcJ2

October 13, 2014

Album: Timeline Photos
Shared with: 🌐 Public

👍 Hortencia Lopez, Suzi Lilith Berry, Betty Falcon and 820     **Top Comments ▾**
others like this.

🗐 58 shares

Open Photo Viewer
Download
Embed Post

**Dorothy Reddy Baker** I have a 401k and have been considering
moving it into something else. I want to retire in 2 years.
👍 1 · October 14, 2014 at 2:38pm

🔲 3 Replies

**Tonita Haynes** Keep receiving 401k info from my job in the mail and I
know absolutely nothing about it.. Coworkers say don't do it the
company doesn't match whatever that means!!! Help!!!
👍 1 · October 14, 2014 at 2:12pm

🔲 5 Replies

**Jan Toussaint** I " Definitely Did " and have never been happier 😊 !!!
I 💜 the freedom of being able to make my own investment choices
and not having hidden fees/redemption fees/and commission ( I pay no
commission ) sucked out of my portfolio unlike what happens in a 401k
. I will be " Happy Dancing " to the beat of my own investment drum
worry free 😊 !
October 15, 2014 at 7:59am · Edited

🔲 2 Replies

**Robert Uselton** Ha you have too many documents and hoops to jump
thru to rollover anything.
October 14, 2014 at 11:56am

🔲 1 Reply

 **Oneal Webb** It's not time for that yet...



3/10/2015 2:26 PM

TD Ameritrade on Twitter: "Nobody puts your old 401k in a corner. Take... https://twitter.com/tdameritrade/status/521673242112



