Kyle C. Bisceglie (*Pro Hac Vice* granted)
Andrew B. Lustigman (*Pro Hac Vice* to be filed)
Matteo J. Rosselli (*Pro Hac Vice* to be filed)
OLSHAN FROME WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
Telephone: (212) 451-2300
Facsimile: (212) 451-2222

Laura K. Christa (SBN 097319)
CHRISTA & JACKSON
1901 Avenue of the Stars #1100
Los Angeles, CA 90067
Telephone: (310) 282-8040
Facsimile: (310) 282-8421

*Attorneys for Defendants*
*TD Ameritrade Holding Corporation, and*
*TD Ameritrade Services Company, Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONS GATE ENTERTAINMENT INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>TD AMERITRADE HOLDING CORPORATION, a Delaware corporation, TD AMERITRADE SERVICES COMPANY, INC., a Delaware corporation, HAVAS WORLDWIDE NEW YORK, INC., a Delaware corporation, and DOES 1-10, inclusive,<br><br>Defendants. | NO.: 15-CV-05024 DDP<br><br>The Honorable Dean D. Pregerson<br><br>**DEFENDANTS TD AMERITRADE HOLDING CORPORATION AND TD AMERITRADE SERVICES COMPANY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT**<br><br>Hearing Date:  November 16, 2015<br>Hearing Time: 10:00 a.m.<br>Courtroom:  Courtroom : 3 |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 2

    The Parties ...................................................................................................... 2

    The Allegedly Infringing Advertisement ...................................................... 4

PROCEDURAL HISTORY ................................................................................. 4

ARGUMENT ....................................................................................................... 6

    I      THE COURT LACKS PERSONAL JURISDICTION
             OVER TD AMERITRADE HOLDING CORPORATION ............. 6

          A.    Legal Standard ................................................................... 6

          B.    TD Ameritrade Holding Is Not Subject to General
               Jurisdiction in California .................................................... 6

          C.    TD Ameritrade Holding Is Not Subject to Specific
               Jurisdiction in California .................................................... 8

    II     LIONS GATE'S CLAIMS FAIL AS A MATTER OF
             LAW .................................................................................... 11

          A.    Legal Standard ................................................................. 12

          B.    The Doctrine of Copyright Preemption ............................. 12

          C.    Lions Gate's Claims are Preempted by Copyright
               Law .................................................................................. 14

CONCLUSION .................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

<u>220 Labs, Inc. v. Babaii</u>,
  No. CV 08-6125 PSG, 2008 WL 5158863 (C.D. Cal. Dec. 8, 2008) ................ 17

<u>Advanced Skin & Hair, Inc. v. Bancroft</u>,
  858 F. Supp. 2d 1084 (C.D. Cal. 2012) ................................................. 9

<u>Ashcroft v. Iqbal</u>,
  556 U.S. 662 (2009) ...................................................................... 12

<u>Bell Atl. Corp. v. Twombly</u>,
  550 U.S. 544 (2007) ...................................................................... 12

<u>Bubble Genius LLC v. Smith</u>,
  No. CV 15-0066 PA, 2015 WL 4399483 (C.D. Cal. July 17, 2015) ................ 10

<u>Daimler AG v. Bauman</u>,
  134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) ........................................ 1, 7

<u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>,
  539 U.S. 23 (2003) .................................................................*passim*

<u>Deckers v. J.C. Penney</u>,
  45 F. Supp. 3d 1181, 1183 (C.D. Cal. 2014).......................... 12, 13, 17

<u>Element Spirits, Inc. v. Iconic Brands, Inc.</u>,
  No. CV 15-02692 DDP, 2015 WL 5470297 (C.D. Cal. Sept. 17,
  2015) ......................................................................................... 17

<u>Endemol Entertainment B.V. v. Twentieth Television Inc.</u>,
  48 U.S.P.Q.2d 1524 (C.D.Cal.1998) ................................................. 15

<u>Farmers Ins. Exchange v. Portage La Prairie Mutual Ins. Co.</u>,
  907 F.2d 911 (9th Cir. 1990)........................................................... 9

<u>G.S. Rasmussen & Assoc., Inc. v. Kaliita Flying Serv., Inc.</u>,
  958 F.2d 896 (9th Cir. 1992)......................................................... 12

**DEFENDANTS TD AMERITRADE HOLDING CORPORATION AND TD
AMERITRADE SERVICES COMPANY, INC.'S MEMORANDUM IN
SUPPORT OF THEIR MOT. TO DISMISS THE COMPLAINT**

Goodyear Dunlop Tires Operations, S.A. v. Brown,
    131 S.Ct. 2846 (2011) ................................................................ 6

Hanson v. Denckla,
    357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ........................... 9

Havas Worldwide New York, Inc. v. Lions Gate Entertainment Inc.,
    No. 1:15-cv-5018-KBF-AJP ..................................................... 4, 5

Helicopteros Nacionales de Columbia S.A. v. Hall,
    466 U.S. 408 (1984) ................................................................ 7

Idema v. Dreamworks,
    162 F. Supp. 2d, 162 F.Supp.2d 1129 (C.D. Cal. 2001) ..................... 16

Laws v. Sony Music Entertainment, Inc.,
    448 F.3d 1134 (9th Cir. 2006) ............................................. 14, 16

Lightfoot v. Cendant Mortgage Corp.,
    769 F.3d 681 (9th Cir. 2014) ...................................................... 6

Martinez v. Aero Caribbean,
    764 F.3d 1062 (9th Cir. 2014) ................................................... 6

Mehr v. FIFA,
    No. 14-cv-3879-PJH, 2015 WL 4366044 (N.D. Cal. July 16, 2015) .......... 6

Mercado Latino, Inc. v. Indio Prods., Inc.,
    No. CV 13-01027 DDP, 2013 WL 5352713 (C.D. Cal. Sept. 24,
    2013) ................................................................................. 12

Motown Record Corp. v. George A. Hormel & Co.,
    657 F. Supp. 1236 (C.D. Cal. 1987) ........................................... 18

National Basketball Ass'n v. Motorola, Inc.,
    105 F.3d 841 (2d Cir. 1997) ..................................................... 15

Pebble Beach Co. v. Caddy,
    453 F.3d 1151 (9th Cir. 2006) .................................................... 8

Pro Search Plus, LLC v. VFM Leonardo, Inc.,
    No. SACV 12-2102-JLS, 2013 WL 6229141 (C.D. Cal. Dec. 2,
    2013) ................................................................................. 16

**DEFENDANTS TD AMERITRADE HOLDING CORPORATION AND TD
AMERITRADE SERVICES COMPANY, INC.'S MEMORANDUM IN
SUPPORT OF THEIR MOT. TO DISMISS THE COMPLAINT**

Ricketts v. Haah,
      No. 2:13-cv-00521-ODW, 2013 WL 3242947 (C.D. Cal. June 26,
      2013) ............................................................................................... 16

Salt Optics, Inc. v. Jand, Inc.,
      No. SACV 10-0828, 2010 WL 4961702 (C.D. Cal. Nov. 19, 2010) ................. 18

SCG Characters LLC v. Telebrands Corp.,
      No. CV1500374DDPAGRX, 2015 WL 4624200 (C.D. Cal. Aug. 3,
      2015) ............................................................................................ 6, 8

Senne v. Kansas City Royals Baseball Corp.,
      No. 14-cv-00608, 2015 WL 2412245 (N.D. Cal. May 20, 2015) ....................... 7

Shaw v. Lindheim,
      919 F.2d 1353 (9th Cir. 1990) ............................................................. 12

Sher v. Johnson,
      911 F.2d 1357 (9th Cir.1990) ................................................................. 6

United States ex rel. Berge v. Board of Trustees of the Univ. of Ala.,
      104 F.3d 1453 (4th Cir. 1997) ............................................................. 15

Yumul v. Smart Balance, Inc.,
      No. CV 10-00927 MMM, 2011 WL 1045555 (C.D. Cal. Mar. 14,
      2011) ............................................................................................... 12

## STATUTES & OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b) ....................................... 1, 2, 6, 12

Copyright Act of 1976, 17 U.S.C. §§ 101 et seq..............................................passim

California Bus. & Prof. Code §§ 17200 et seq. ................................................ 5, 18

15 U.S.C. § 1125.............................................................................5, 13, 17

37 C.F.R. § 202.1(a) ........................................................................... 16

H.R. No. 94-1476 at 131, reprinted in 1976 U.S.C.C.A.N...................................... 15

**DEFENDANTS TD AMERITRADE HOLDING CORPORATION AND TD
AMERITRADE SERVICES COMPANY, INC.'S MEMORANDUM IN
SUPPORT OF THEIR MOT. TO DISMISS THE COMPLAINT**

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

<u>**INTRODUCTION**</u>

This dispute centers on certain advertisements for financial retirement services offered by TD Ameritrade.  In 2014, Havas Worldwide New York produced an advertisement for TD Ameritrade that includes the tagline "Nobody puts your old 401(k) in a corner" under a cartoon graphic of a slender man in white shirt and tie with closely-cropped hair holding a rotund piggy bank above his head. In animated versions of the advertisement, the man encounters the piggy bank in the rain and then lifts the piggy bank over his head as the rain stops, the sun shines, and birds sing.

In July 2015—after the nearly six-month print and television run of the ad had concluded—Lions Gate, a film studio, brought the instant action for damages, claiming vague and unspecified harm to its alleged intellectual property rights in elements of the motion picture *Dirty Dancing*, but not otherwise alleging any instances in which a consumer had actually been confused into believing that TD Ameritrade's financial retirement services have anything at all to do with Lions Gate or *Dirty Dancing*.  Defendants TD Ameritrade Holding and TD Ameritrade Services now seek dismissal on two grounds:

<u>First</u>, pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant TD Ameritrade Holding Corporation seeks to be dismissed from this action because it is not subject to personal jurisdiction in California.  In short, TD Ameritrade Holding is merely a holding company that acts as the parent to the TD Ameritrade family of companies.  It does not do any business itself in California and had no involvement whatsoever in the advertisements that are the subject of this action. Under <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014), TD Ameritrade Holding cannot be dragged into court in California merely because it is the parent of operating entities that are subject to jurisdiction here.  Accordingly,

TD Ameritrade Holding should be eliminated as a defendant.

<u>Second</u>, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants TD Ameritrade Holding Corporation and TD Ameritrade Services Company, Inc. separately move to dismiss the Complaint as preempted by the Copyright Act of 1976, 17 U.S.C. §§ 101 <u>et</u> <u>seq</u>.[1]   Where, as here, claims are premised on the unauthorized reproduction of elements of a creative work, they are governed by the Copyright Act, and all other claims brought to vindicate essentially the same rights are preempted. <u>See</u> 17 U.S.C. § 301; <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 28 (2003). Whether, and to what extent, such elements of a creative work are entitled to protection is the exclusive domain of the Copyright Act, and a plaintiff cannot attempt to circumvent or expand upon those rights by bringing claims under unfair competition and trademark statutes.

For the reasons set forth below, Defendants respectfully request: (i) pursuant to Federal Rule of Civil Procedure 12(b)(2), that all claims against TD Ameritrade Holding be dismissed for lack of personal jurisdiction; and (ii) pursuant to Federal Rule of Civil Procedure 12(b)(6), that all of Lions Gate's claims be dismissed as preempted by the Copyright Act.

## STATEMENT OF FACTS[2]

<u>The Parties</u>

TD Ameritrade Services Company, Inc. ("**TD Ameritrade Services**") is a Delaware corporation with its principal place of business in Omaha, Nebraska.

---

[1]  Defendant Havas Worldwide New York, Inc. adopts the TD Ameritrade Defendants' arguments in support of dismissal on grounds of copyright preemption.

[2] The facts set forth below are taken from the Complaint dated July 2, 2015 (the **"Complaint"** or **"Cmpl."**), which is annexed as Exhibit 1 to the accompanying Declaration of Kyle C. Bisceglie, dated October 13, 2015 (the **"Bisceglie Declaration"** or **"Bisceglie Decl."**) and the accompanying Declaration of Lea Stendahl (the **"Stendahl Declaration"** or **"Stendahl Decl."**).

TD Ameritrade Services provides marketing and advertising services to non-party affiliate TD Ameritrade, Inc., a New York corporation and leading provider of securities brokerage services and technology-based financial services to retail investors, traders and independent registered investment advisors.  (Id. at ¶ 3-4). One of the many services TD Ameritrade, Inc. offers is individual retirement accounts and retirement plan rollovers.  (Id.).

TD Ameritrade Holding Corporation ("**TD Ameritrade Holding**") (together with TD Ameritrade Services, the "**TD Ameritrade Defendants**") is a Delaware corporation with its principal place of business in Omaha, Nebraska.  TD Ameritrade Holding is the parent company to TD Ameritrade Services and TD Ameritrade, Inc.  (Stendahl Decl. at ¶ 2).  TD Ameritrade Holding does not do business in California, nor is it authorized to do so.  (Id. at ¶¶ 5-6).

Plaintiff Lions Gate Entertainment Inc. ("**Plaintiff**" or "**Lions Gate**") is a film studio with its principal place of business in Santa Monica, California.  (Cmpl. at ¶ 3).  Lions Gate does not allege that it is in the financial services industry. Rather, "Lions Gate is in the business of creating, promoting, and distributing motion pictures and television programs, as well as licensing those properties for various merchandise and promotions and sponsorships."  (Id.).

Lions Gate alleges that it is the owner of the rights in and to the 1987 motion picture *Dirty Dancing*, starring Patrick Swayze and Jennifer Grey.  (Cmpl. at ¶ 10). At the end of *Dirty Dancing*, Swayze says "Nobody puts Baby in a corner," after which there is a final dance scene during which Swayze lifts Grey several times. (Id. at ¶ 15).  Lions Gate now claims that the line "Nobody puts Baby in a corner" is a word mark that it uses in commerce with "motion pictures and various items of merchandise."  (Id. at ¶ 16).

The Allegedly Infringing Advertisement

In 2014, Havas Worldwide New York, Inc. ("**Havas New York**"), a New York-based advertising agency, created an advertising campaign for TD Ameritrade Services, designed to appeal to individual retail investors, entitled "You Got This" (the **"Campaign"**).  (Cmpl. at ¶ 23.)  The Campaign consisted of hundreds of ads addressing various themes in various channels, including short online video, digital display, social media, television print, pages on the TD Ameritrade website, and communications to TD Ameritrade clients.  (Cmpl. at ¶ 23.)

One of the ads created in connection with the Campaign includes the tagline "Nobody puts your old 401(k) in the corner" (or "Nobody puts your old 401(k) in a corner") with a cartoon graphic of a slender man in white shirt and tie with closely-cropped hair holding a rotund piggy bank above his head (the **"Accused Ads"**). In animated versions of the Accused Ads, the man encounters the piggy bank in the rain and then lifts the piggy bank over his head as the rain stops, the sun shines, and birds sing.  (Cmpl. at ¶ 23, Ex. B.)   None of the Accused Ads used the line "Nobody puts Baby in a corner" or used any clip, still, music, dialogue, image, name, staging, wardrobe, cinematographic style or other material from the motion picture *Dirty Dancing*.  (Cmpl. Ex. B.)

**Procedural History**

On June 26, 2015, Havas New York and TD Ameritrade Services filed a declaratory judgment action in the United States District Court for the Southern District of New York captioned *Havas Worldwide New York, Inc. v. Lions Gate Entertainment Inc.*, No. 1:15-cv-5018-KBF-AJP (the **"New York Action"**). (Bisceglie Decl. at ¶ 2.)

On July 2, 2015, in response to the filing of the New York Action, Lions Gate filed the instant Complaint.  The Complaint contains four causes of action, all stemming from the alleged infringement of Lions Gate's purported interests in the

movie *Dirty Dancing,* including the phrase "Nobody puts Baby in a corner," the final dance scene, and other unspecified words and indicia associated with the movie.  (<u>Id</u>.).  Specifically, Lions Gate claims: (1) the Accused Ads constitute false association and unfair competition in violation of 15 U.S.C. § 1125(a) (Cmpl. at ¶¶ 41-47) ("**Count One**"); (2) the "Defendants have been, and are, engaged in 'unlawful, unfair or fraudulent business practices' in violation of §§ 17200 <u>et</u> <u>seq</u>. of the California Bus. & Prof. Code and acts of unfair competition in violation of common law" (<u>id</u>. at ¶¶ 48-53) ("**Count Two**"); (3) the Defendants infringed on Lions Gate's trademarks in violation of 15 U.S.C. §1125(a) and common law (<u>id</u>. at ¶¶ 54-63) ("**Count Three**"); and (4) the Defendants diluted Lions Gate's rights in violation of 15 U.S.C. §1125(c) (<u>id</u>. at ¶¶ 64-71) ("**Count Four**").  Lions Gate seeks an injunction, an award of damages, an accounting "for any and all profits earned as a result of" the Accused Ads, treble damages, punitive damages, and attorneys' fees.  (Cmpl. at ¶¶ 17-19).

On August 7, 2015, Lions Gate filed a motion to dismiss the Amended Complaint in the New York Action, or in the alternative, to transfer venue to this District.  (Bisceglie Decl. at. ¶ 3).

On August 21, 2015, this Court granted an Ex Parte Application, extending the Defendants' time to respond to the Complaint to fourteen (14) days after the New York court rendered its decision on the motion to dismiss, or in the alternative, transfer.  (<u>Id</u>. at. ¶ 4).

On September 29, 2015, Judge Forrest transferred the New York Action to this Court, where it has been assigned to Judge Otero.  (<u>Id</u>. at. ¶ 5).

## **ARGUMENT**

I    <u>The Court Lacks Personal Jurisdiction over Defendant TD AMERITRADE HOLDING CORPORATION</u>

The Complaint must be dismissed as against TD Ameritrade Holding for lack of personal jurisdiction.

A. <u>Legal Standard (12(b)(2))</u>

"Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a suit for lack of personal jurisdiction.  The plaintiff has the burden of establishing that jurisdiction exists."  <u>SCG Characters LLC v. Telebrands Corp.</u>, No. CV1500374DDPAGRX, 2015 WL 4624200, at *2 (C.D. Cal. Aug. 3, 2015) (Pregerson, J.) (citing <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir.1990)). "There are two types of personal jurisdiction: general and specific."  <u>Id</u>.  Because this Court has neither general nor specific personal jurisdiction over TD Ameritrade Holding, the Complaint should be dismissed as against it.

B. <u>TD Ameritrade Holding Is Not Subject to General Jurisdiction in California</u>

"A court may exercise general personal jurisdiction over a defendant when the defendant's contacts are 'so continuous and systematic as to render them essentially at home in the forum state.'"  <u>SCG Characters</u>, 2015 WL 4624200, at *2 (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S.Ct. 2846, 2851 (2011)).  "The standard is a 'demanding one.'"  <u>Mehr v. FIFA</u>, No. 14-cv-3879-PJH, 2015 WL 4366044, at *5 (N.D. Cal. July 16, 2015) (quoting <u>Martinez v. Aero Caribbean</u>, 764 F.3d 1062 (9th Cir. 2014)).  The Ninth Circuit has thus held that "[t]he two places where a corporation is 'essentially at home' and therefore subject to general jurisdiction are its place of incorporation and its principal place of business."  <u>Lightfoot v. Cendant Mortgage Corp.</u>, 769 F.3d 681, 689 (9th Cir. 2014).  "Only in an 'exceptional case' will general jurisdiction be available anywhere else." <u>Martinez</u>, 764 F.3d at 1070.

Lions Gate has failed to allege that TD Ameritrade Holding is subject to general jurisdiction in California. The sole allegation in the Complaint regarding personal jurisdiction over TD Ameritrade Holding is a conclusory statement that "it does business in this District." (Cmpl. at ¶ 4). Not only is this conclusory allegation wholly insufficient to make even a *prima facie* showing of personal jurisdiction, it is factually incorrect.

TD Ameritrade Holding is a Delaware holding company with its principal place of business in Nebraska and acts as the parent entity for the TD Ameritrade family of companies. (Stendahl Decl. at ¶ 2). TD Ameritrade Holding does not itself do business in California, nor is it registered to do so. (Id. at ¶¶ 5-8). TD Ameritrade Holding does not maintain any office in California and has no bank accounts here. (Id. at ¶¶ 5, 7). TD Ameritrade Holding is not "essentially at home" in California and is, thus, not subject to general personal jurisdiction before a California court. See, e.g., Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 410-11, 418-19 (1984).

To the extent that Lions Gate seeks to impute jurisdiction onto TD Ameritrade based on the California activities of its subsidiaries, that argument is foreclosed by the recent decision of the Supreme Court in Daimler AG v. Bauman, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). In Daimler, the Court expressly rejected the theory that the acts of a subsidiary can be imputed to a parent on an agency basis. Id. at 759; see also Senne v. Kansas City Royals Baseball Corp., No. 14-cv-00608, 2015 WL 2412245, at *22 (N.D. Cal. May 20, 2015) ("[T]he Supreme Court held that a foreign parent could not be subject to general jurisdiction based on the contacts with the forum of the subsidiary.").

Lions Gate has thus failed to meet its burden of showing general jurisdiction.

7

C. <u>TD Ameritrade Holding Is Not Subject to Specific Jurisdiction in California</u>

"Specific personal jurisdiction may be found when the cause of action arises out of the defendant's contact or activities in the forum state."  <u>SCG Characters</u>, 2015 WL 4624200, at *2. "The Ninth Circuit has set forth the following three-pronged test to determine whether specific personal jurisdiction exists: '(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.'" <u>SCG Characters</u>, 2015 WL 4624200, at *2 (quoting <u>Schwarzenegger</u>, 374 F.3d at 800-01).  In this case, Lions Gate fails to satisfy each element of this three-pronged test.

1. *TD Ameritrade Holding Does Not Purposefully Avail Itself or Purposefully Direct Activity to California*

Lions Gate has failed to meet its burden of showing that TD Ameritrade Holding purposefully directed conduct towards the State of California sufficient to support specific jurisdiction.  In order to meet the first prong of the test for specific jurisdiction, Lions Gate must show that TD Ameritrade Holding either "(1) purposefully availed [itself] of the privilege of conducting activities in California, . . . or (2) that [it] purposefully directed its activities toward" California.  <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1155-58 (9th Cir. 2006).

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. By taking such actions, a defendant 'purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws.'"  Schwarzenegger, 374 F.3d at 802 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

Lions Gate has failed to show either purposeful availment or conduct directed at California in connection with its claims. The only allegation in the Complaint as to specific jurisdiction is the conclusory allegation that "Defendants are subject to personal jurisdiction in this District because they do business in this District and/or the claims arose in this District."  (Cmpl. at ¶ 7). This is plainly insufficient.  TD Ameritrade Holding is a Delaware holding company with its principal place of business at the company headquarters in Omaha, Nebraska. (Stendahl Decl. at ¶ 2). TD Ameritrade Holding is not registered to do business in California, and it has no offices, bank accounts, or registered agents in California. (Id.) Nor did TD Ameritrade Holding enter into or perform any contract in California relevant to Lions Gate's claims. (See, infra, Point C.2.)

Accordingly, TD Ameritrade Holding cannot be said to "purposefully avail" itself of California or to "purposefully direct" its activities to California.  Lions Gate thus cannot meet the first prong of the Ninth Circuit's test for specific personal jurisdiction.

2. *Lions Gate's Claims Do Not Arise Out Of Any Activities of TD Ameritrade Holding*

Lions Gate also fails to meet its burden of showing that its claims arise out of any California-related activity of TD Ameritrade Holding.  "An action arises out of contacts with [California] if, 'but for' those contacts, the cause would not have arisen."  Farmers Ins. Exchange v. Portage La Prairie Mutual Ins. Co., 907 F.2d 911, 914 (9th Cir. 1990).  In other words, there must be a "direct nexus between the claims being asserted and the defendant's activities in the forum."  Advanced Skin & Hair, Inc. v. Bancroft, 858 F. Supp. 2d 1084, 1090 (C.D. Cal. 2012).

9

Here, Lions Gate fails to allege any California-related activity by TD Ameritrade Holding—and certainly cannot allege that any acts of TD Ameritrade Holding relate to the pending claims.  Lions Gate's claims arise solely out of the Accused Ads, which TD Ameritrade Holding neither created nor published. (Stendahl Decl. at ¶ 10). The Accused Ads did not advertise for TD Ameritrade Holding itself, or for any products, goods, or services offered by TD Ameritrade Holding. (Id.). Nor did TD Ameritrade Holding execute or perform *any* contract or activities relevant to Plaintiff's claims—in California or elsewhere.  Rather, the relevant contract is between TD Ameritrade Services and Havas New York, and such contract is subject to New York law and the jurisdiction of New York courts. And, moreover, the contracting entity—TD Ameritrade Services—has been sued in its own right and does not contest personal jurisdiction in this action.

Accordingly, Lions Gate has further failed to meet its burden of showing that its claims arise out of any activities of TD Ameritrade Holding.

### 3. The Exercise of Jurisdiction over TD Ameritrade Holding Would Be Unreasonable

It would also be unreasonable to force TD Ameritrade Holding to defend itself in California, especially considering it has nothing to do with Lions Gate's claims and its subsidiary TD Ameritrade Services is already named as a defendant in this action. "[T]he third 'reasonableness' prong is satisfied when the following factors weigh in favor of the exercise of jurisdiction over a nonresident defendant: (1) The extent of purposeful interjection into the forum state; (2) The burden on the defendant of defending in the forum; (3) The extent of conflict with the sovereignty of defendant's state; (4) The forum state's interest in adjudicating the dispute; (5) The most efficient judicial resolution of the controversy; (6) The importance of the forum to plaintiff's interest in convenient and effective relief; and (7) The existence of an alternative forum."  Bubble Genius LLC v. Smith, No. CV 15-0066 PA (FFMX), 2015 WL 4399483, at *3-4 (C.D. Cal. July 17, 2015).

10

The weight of these factors heavily favors dismissal of the Complaint as against TD Ameritrade Holding for lack of personal jurisdiction.  For the reasons stated above, TD Ameritrade Holding has not purposefully interjected itself into California: it does not do business in California, it is not registered to do business in California, and it does not have a bank account in California.  (Stendahl Decl. at ¶¶ 5-10).  Second, the burden on TD Ameritrade Holding of defending itself would be significant because all relevant witnesses and evidence are located primarily on the East Coast (with some in Nebraska).  Moreover, if Lions Gate had a cognizable claim against TD Ameritrade Holding, it would be free to pursue such claims in a number of other jurisdictions.

Lions Gate has failed to meet any of the three prongs required to establish that the Court has personal jurisdiction over TD Ameritrade Holding. Accordingly, the Complaint against TD Ameritrade Holding should be dismissed in its entirety.

## II   LIONS GATE'S CLAIMS FAIL AS A MATTER OF LAW

Lions Gate's claims are all premised on Defendants' alleged copying of creative elements of the movie *Dirty Dancing*—specifically, the line (and purported mark) "Nobody puts Baby in a corner" and a dance lift between Swayze and Grey. Each of these elements is a "work[] of authorship fixed in [a] tangible medium," and thus comes within the subject matter of the Copyright Act.  Accordingly, the claims raised in the Complaint would be copyright claims if Lions Gate could plead facts supporting the copying of protectable elements under the Copyright Act. Lions Gate has not and cannot so plead, and it cannot circumvent its lack of protection under the Copyright Act by pleading trademark misappropriation, dilution, and unfair competition claims instead.  As set forth below, Lions Gate is expressly preempted from doing so.

A. <u>Legal Standard (12(b)(6))</u>

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (<u>quoting</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "If a claim is preempted by federal law, it fails to state a claim upon which relief can be granted under Rule 12(b)(6)." <u>Yumul v. Smart Balance, Inc.</u>, No. CV 10-00927 MMM, 2011 WL 1045555, at *5 (C.D. Cal. Mar. 14, 2011). <u>See also</u> <u>Deckers v. J.C. Penney</u>, 45 F. Supp. 3d 1181, 1183 (C.D. Cal. 2014) ("A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.")

B. <u>The Doctrine of Copyright Preemption</u>

Section 301 of the Copyright Act expressly preempts "***all*** legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a) (emphasis added). Preemption under § 301 is "both explicit and broad." <u>G.S. Rasmussen & Assoc., Inc. v. Kaliita Flying Serv., Inc.</u>, 958 F.2d 896, 904 (9th Cir. 1992).

The interaction between the Copyright Act and the Lanham Act and related state law claims is complex, especially in the context of attribution rights stemming from copyrighted works. In sum, copyright substantially preempts the field, at least to the extent the material alleged to have been copied is from an intangible creative work and is distributed as part of a creative work. <u>See</u> 17 U.S.C. § 301; <u>Dastar Corporation v. Twentieth Century Fox Film Corporation</u>, 539 U.S. 23  (2003); <u>Shaw v. Lindheim</u>, 919 F.2d 1353, 1364-65 (9th Cir. 1990) (declining to "expand the scope of the Lanham Act to cover cases in which the Federal Copyright Act provides an adequate remedy"); <u>Mercado Latino, Inc. v. Indio Prods., Inc.</u>, No. CV 13-01027 DDP, 2013 WL 5352713, at *1 (C.D. Cal. Sept. 24, 2013) (Pregerson, J.).

In <u>Dastar</u>, the Supreme Court held that Twentieth Century Fox could not

12

bring Lanham Act § 1125(a) and state law unfair competition claims based on alleged copying of a formerly copyrighted television series. 539 U.S. at 37-38. Dastar's alleged wrongdoing was to take a creative work, copy and modify the work, and produce its own creative work therefrom. Id. at 26-27. The Supreme Court found that the phrase "origin of goods," as used in the Lanham Act, refers to the producers of tangible goods that are offered for sale. Id. at 37. The Court, accordingly, refused to extend the phrase "origin of goods" to the author of the intangible ideas, concepts, or communications that may be embodied in those goods. Id. The Court reasoned that the Lanham Act (and its common law foundations) were "*not* designed to protect originality or creativity" (Id.), and applying such laws to "communicative products" would cause a "conflict with the law of copyright, which addresses the subject specifically." Id. at 33.

While the work copied by Dastar had lost copyright protection due to its age, id. at 26, the reasoning of the Supreme Court applies with equal force to any work or element of a work that is subject to the scope of the Copyright Act, but is expressly denied protection thereunder. See, e.g., Deckers v. J.C. Penney, 45 F. Supp. 3d 1181, 1185 (C.D. Cal. 2014) (dismissing passing-off claim under Dastar where copyright status was not relevant); Dastar, 539 U.S. at 33 ("In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying."). See, also, Point C.1 infra. There is no distinction in the Copyright Act between elements of works in the public domain because their copyright term has expired and elements in the public domain for other reasons. In either case, the line between works (or elements of works) that are protected and those in the public domain has been carefully drawn by Congress in the Copyright Act and cannot be expanded by application of other laws. "The rights of a . . . copyright holder are part of a carefully crafted bargain, under which, once the . . . copyright monopoly has expired, the public may use the invention or work at will

and without attribution." <u>Dastar</u>, 539 U.S. at 333-34 (citations omitted).

C. <u>Lions Gate's Claims are Preempted by Copyright Law</u>

Lions Gate's allegations fall squarely within the subject matter of the Copyright Act, but are not afforded protection under the Copyright Act.  In an effort to avoid effort to avoid this inconvenient fact, Lions Gate has attempted to plead its copyright claims under the guise of trademark and unfair competition law.

The Ninth Circuit has adopted a two-part test under which a claim may be preempted by copyright law: (1) the work in which the alleged right is asserted comes within the "subject matter" of the Copyright Act, as defined by 17 U.S.C. §§ 102 or 103;[3] and (2) the alleged right asserted is equivalent to any of the rights specified in 17 U.S.C. § 106.[4]  <u>Laws v. Sony Music Entm't, Inc.</u>, 448 F.3d 1134, 1137 (9th Cir. 2006).

---

[3] Section 102 of the Copyright Act sets forth the very broad "[s]ubject matter of copyright," <u>i.e.</u>, "works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated."  17 U.S.C. § 102.  Such works include: "(1) literary works; (2) musical works, including any accompanying words; (3) dramatic works, including any accompanying music; (4) pantomimes and choreographic works; (5) pictorial, graphic, and sculptural works; (6) motion pictures and other audiovisual works; (7) sound recordings; and (8) architectural works."  <u>Id.</u>  Section 103 extends the "subject matter of copyright" to "compilations and derivative works."

[4] Section 106 provides a copyright holder with the exclusive rights to (1) "reproduce the copyrighted work"; (2) "prepare derivative works"; (3) "distribute copies" of the copyrighted works; (4) "perform the copyrighted work publicly"; (5) "display the copyrighted work publicly"; and (6) "perform the copyrighted work publicly by means of a digital audio transmission."

14

### 1. *The Alleged Misappropriated Elements of Dirty Dancing Come Within the Subject Matter of the Copyright Act*

The "subject matter of copyright" is broader than the scope of works protected by the Copyright Act. It is well-established that copyright preemption may apply to uncopyrightable elements of a copyrighted work, such as those at issue here. "As long as a work fits within one of the general subject matter categories of sections 102 and 103, the bill prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify. . . ." H.R. No. 94-1476 at 131, reprinted in 1976 U.S.C.C.A.N. at 5747. See also Endemol Entertainment B.V. v. Twentieth Television Inc., 48 U.S.P.Q.2d 1524, 1526 (C.D.Cal.1998) ("the shadow actually cast by the Act's preemption is notably broader than the wing of its protection"); United States ex rel. Berge v. Board of Trustees of the Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir. 1997) (finding that "scope and protection are not synonyms," and holding that uncopyrightable ideas that make up copyrightable works are within subject matter of copyright); National Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 849 (2d Cir. 1997) ("claims based on the copying of excerpts from [a book] were preempted even with respect to information that was . . . not copyrightable.").

Here, each of Lions Gate's claims boils down to the alleged copying of various elements of the movie *Dirty Dancing*, including the line (and purported mark) "Nobody puts Baby in a corner," a dance lift between Swayze and Grey, and unspecified other words and indicia associated with the movie. Each element at issue here is a "work[] of authorship fixed in [a] tangible medium," and comes within the subject matter of the Copyright Act. See 17 U.S.C. § 102. Thus, the first prong of the two-part test for copyright preemption is satisfied here.

Notwithstanding the foregoing, Lions Gate's allegations are insufficient to state a claim of copyright infringement. Putting aside the lack of pleading the

copyright registration elements necessary for subject matter jurisdiction,[5] Lions Gate has alleged the use of only unprotected, vague ideas from the movie (such as the idea of a dance lift and unspecified "other words and indicia"), along with a single line of dialog which itself is not copyrightable.  See 37 C.F.R. § 202.1(a) (disallowing registration for "[w]ords and short phrases such as names, titles, and slogans").   Moreover, if Lions Gate were to add a copyright claim, it would conclusively establish the applicability of preemption to its remaining trademark and unfair competition claims. See Pro Search Plus, LLC v. VFM Leonardo, Inc., No. SACV 12-2102-JLS (ANx), 2013 WL 6229141, at *10 (C.D. Cal. Dec. 2, 2013) ("[T]he addition of the copyright claim resolves any ambiguity about the Lanham Act claim and makes clear that it should be dismissed under Dastar.").

### 2. Lions Gate's Alleged Rights Are Equivalent To Rights Enumerated In The Copyright Act

The second prong of the copyright preemption test considers whether the asserted rights are equivalent to any of the exclusive rights of a copyright holder, as specified in 17 U.S.C. § 106. Sony Music, 448 F.3d at 1137-38. Analyzing this prong, the Court "should not rely merely on a laundry list of the alleged elements of the [ ] claims at issue, such that the mere possibility of an extra element protects a claim from preemption." Idema v. Dreamworks, 162 F. Supp. 2d, 162 F.Supp.2d 1129, 1190 (C.D. Cal. 2001) (internal quotation marks omitted). Rather, the Court is to "engage in a fact-specific inquiry into the actual allegations underlying the claims at issue in the case, so as to determine whether the gravamen of the [] claim asserted is the same as the rights protected by the Copyright Act." Id.

In applying this second prong of the Ninth Circuit's test, "courts have found preemption when the claim is predicated on the unauthorized reproduction of

---

[5] Ricketts v. Haah, No. 2:13-cv-00521-ODW (CWx), 2013 WL 3242947, at *2 (C.D. Cal. June 26, 2013) ("In order to file a copyright-infringement suit, the copyright owner must first register or file an application to register his copyright.").

creative work." <u>220 Labs, Inc. v. Babaii</u>, No. CV 08-6125 PSG, 2008 WL 5158863, at *8 (C.D. Cal. Dec. 8, 2008); <u>Element Spirits, Inc. v. Iconic Brands, Inc.</u>, No. CV 15-02692 DDP, 2015 WL 5470297, at *6 (C.D. Cal. Sept. 17, 2015) (accounting claim "is preempted by the Copyright Act because it depends on resolution of the copyright infringement claim"); <u>Dastar</u>, 539 U.S. at 37.

Lions Gate's claims are based on the same alleged infringing conduct. In each of Counts One, Two, Three, and Four, Lions Gate alleges:  Defendants copied elements of the movie *Dirty Dancing*, made slight modifications to those elements, and then passed them off as their own original content in the Accused Ads; such acts caused confusion, mistake, or deception as to Defendants' services originating with or being endorsed by Lions Gate; and such acts have harmed Lions Gate, its marks, the movie *Dirty Dancing*, Lions Gate's licensing program, and its goodwill and reputation.[6]   Lions Gate seeks, in essence, to hold Defendants liable for unauthorized use of elements of Lions Gate's creative property.  The crux of each claim alleges that by using elements that are similar to elements of the movie *Dirty Dancing*, Defendants imply that Lions Gate has approved, licensed, endorsed, sponsored, authorized, or is associated with the TD Ameritrade Defendants' products, services, and business.

In Count One, Lions Gate asserts claims of false association and unfair competition under Lanham Act § 1125(a)—the same statute at issue in <u>Dastar</u>.  As set forth in <u>Dastar</u>, a § 1125(a) claim would apply to the physical misappropriation

---

[6] Lions Gate has not clearly articulated whether it is raising a claim of "passing off" or "reverse passing off." Regardless, it is a distinction without a difference for purposes of copyright preemption analysis. In <u>Deckers Outdoor Corp. v. J.C. Penney Co., Inc.</u>, 45 F. Supp. 3d 1181 (C.D. Cal. 2014), for example, the court found the distinction between passing-off and reverse passing-off claims was immaterial when applying <u>Dastar</u>, and held that a "passing-off" claim was preempted under <u>Dastar</u>. <u>Id.</u> at 1185.

17

of a creative work, for instance, where a pirate simply "bought some [] videotapes" of a television series "and merely repackaged them as its own." Id. at 31.  Where, instead, a defendant is alleged to have taken "a creative work . . . copied it, made modifications (arguably minor), and produced its very own series of videotapes," id., the plaintiff's remedy, if any, is defined with reference to the Copyright Act. Here, the Complaint alleges that Defendants "modified the iconic quote from the Dirty Dancing movie" (Cmpl. ¶ 25) and featured these "adulterated taglines with a reenactment or representation" of a dance lift from the film (id. ¶ 26).  Such claims are no different than those found to be preempted by the Supreme Court in Dastar.

In Count Two, Lions Gate asserts claims for unfair competition both under California Business and Professions Code § 17200 and under California common law.  (Cmpl. at ¶¶ 48-53).  Lions Gate specifically alleges that "Defendants misappropriated and used Lions Gate's intellectual property at no cost and without the authorization or consent of Lions Gate."  (Cmpl. at ¶ 51).  Unfair competition claims are routinely dismissed where, as here, they merely restate a claim of infringement for unauthorized use of a creative work.  See, e.g., Motown Record Corp. v. George A. Hormel & Co., 657 F. Supp. 1236, 1239-40 (C.D. Cal. 1987) (preempting unfair competition claim under § 17200 where "[t]he essence of plaintiffs complaint is derived from defendants alleged unauthorized use of a copyrighted work"); Salt Optics, Inc. v. Jand, Inc., No. SACV 10-0828, 2010 WL 4961702, at *8 (C.D. Cal. Nov. 19, 2010) (unfair competition claim preempted where plaintiff "does not clearly alleged how its state law unfair competition claim is 'qualitatively different from [its] copyright claim'").

In Counts Three and Four, Lions Gate asserts federal and state claims for trademark infringement and dilution.  (Cmpl. at ¶¶ 54-63).  However, Lions Gate owns no federal or state trademark registration for the alleged mark. And rather than describe trademark use, the Complaint repeatedly refers to various aspects of

18

the *Dirty Dancing* movie, its stars, and the allegedly famous concluding dance scene: "The Advertising Campaign was intentionally designed to create an association with the *Dirty Dancing* motion picture…."   (Cmpl. at ¶ 24); "[t]he Infringing Artwork was intentionally designed to be virtually identical to the Dance Lift [and] creates a false association with Lions Gate and the *Dirty Dancing* motion picture" (Id. at ¶ 26); and "Defendants' actions are intentional and were designed to capitalize on the goodwill, recognition, and fame associated with the Dirty Dancing motion picture. . . ."   (Id. at ¶ 56.)   While termed "trademark claims," these are inadequate copyright claims in disguise.   In <u>Dastar</u>, the Supreme Court expressly rejected the application of trademark law to such "communicative products," as this would "cause[] the Lanham Act to conflict with the law of copyright, which addresses the subject specifically." <u>Id.</u> at 33.   Accordingly, Lions Gate's trademark infringement and dilution claims are likewise preempted by the Copyright Act, as they are an express end-around aimed at evading the limited protection afforded by the Copyright Act.

In sum, Lions Gate's claims must be dismissed, since they come squarely within the "subject matter" of the Copyright Act and assert rights that are essentially the equivalent of those contained within the Copyright Act.

<u>**CONCLUSION**</u>

Based on the foregoing, the Defendants respectfully request that the Court dismiss the Complaint as against TD Ameritrade Holding for lack of personal jurisdiction, and dismiss the Complaint in its entirety for failure to state a claim as a matter of law.

Dated: Los Angeles, California
       October 13, 2015

By: _____
    Kyle C. Bisceglie (*Pro Hac Granted*)
    Andrew B. Lustigman
    Matteo J. Rosselli
    OLSHAN FROME WOLOSKY LLP
    Park Avenue Tower
    65 East 55th Street
    New York, New York 10022
    Telephone: (212) 451-2300
    Facsimile: (212) 451-2222
    alustigman@olshanlaw.com

    Laura K. Christa (SBN 097319)
    CHRISTA & JACKSON
    1901 Avenue of the Stars #1100
    Los Angeles, CA 90067
    Telephone: (310) 282-8040
    Facsimile: (310) 282-8421
    lchrista@christalaw.com

    *Attorneys for Defendants*
    *TD Ameritrade Holding Corporation*
    *and TD Ameritrade Services*
    *Company, Inc.*

20