SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JILL M. PIETRINI (Cal. Bar No. 138335)
jpietrini@sheppardmullin.com
WHITNEY WALTERS-SACHS (Cal. Bar No. 237781)
wwalters-sachs@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  (310) 228-3700 / Facsimile:  (310) 228-3701

Attorneys for Plaintiff
LIONS GATE ENTERTAINMENT INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LIONS GATE ENTERTAINMENT INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>TD AMERITRADE HOLDING CORPORATION, a Delaware corporation, TD AMERITRADE SERVICES COMPANY, INC. a Delaware corporation, HAVAS WORLDWIDE NEW YORK, INC., a Delaware corporation and DOES 1-10, inclusive,<br><br>          Defendants. | Case No. 15-CV-05024-DDP-E<br><br>Assigned for all purposes to the Hon. Dean D. Pregerson<br><br>**PLAINTIFF LION GATE ENTERTAINMENT INC.'S OPPOSITION TO DEFENDANTS HAVAS WORLDWIDE NEW YORK, INC.'S MOTION TO DISMISS THE COMPLAINT**<br><br>**[Declaration of Whitney Walters-Sachs filed concurrently herewith]** |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ..................................................................................... 1

II. STATEMENT OF FACTS ....................................................................... 4

III. HAVAS' MOTION TO DISMISS FOR LACK OF JURISDICTION
SHOULD BE DENIED .......................................................................... 8

    A. Havas Failed To Comply With L.R. 7-3 ....................................... 8

    B. The New York Court Already Considered—And Properly
Rejected—The Same Jurisdictional Challenges Advanced By
Havas .............................................................................................. 9

    C. Havas Is Subject To Personal Jurisdiction ................................. 11

        1. Havas Is Subject To General Jurisdiction ...................... 12

        2. Havas Is Also Subject To Specific Jurisdiction ............ 14

            a. Havas Purposefully Directed Activities At California ........ 16

            b. Lions Gate's Claims Arise Out Of And Are Related
To Havas' Activities In The Forum ................................... 18

            c. The Exercise Of Jurisdiction Is Reasonable ....................... 19

    D. At The Very Least, Jurisdictional Discovery Is Warranted ................... 21

IV. HAVAS' MOTION TO DISMISS BASED ON COPYRIGHT
PREEMPTION MUST ALSO BE DENIED .................................... 24

V. CONCLUSION ................................................................................... 24

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## <u>Cases</u>

4

*Adobe Sys. v. Accoladian Res., LLC*
5
 2014 U.S. Dist. LEXIS 103123 (N.D. Cal. July 28, 2014) ........................ 16, 19

6

*Alcatel-Lucent USA, Inc. v. Dugdale Communications, Inc.*
 2009 WL 3346784 (C.D. Cal. Oct. 13, 2009) ...................................... 9

7

8

*Atlanta Gas Light Co. v. Semaphore Advertising Co.*
 747 F. Supp. 715 (S.D. Ga. 1990) ................................................ 18, 21

9

*Benitez-Allende v. Alcan Aluminio Do Brasil, S.A.*
10
 857 F.2d 26 (1st Cir. 1988) ........................................................ 13

11

*Blundell v. County of L.A.*
12
 2009 U.S. Dist. LEXIS 71918 (C.D. Cal. Aug. 12, 2009) ................................. 8

13

*Brayton Purcell LLP v. Recordon & Recordon*
14
 606 F.3d 1124 (9th Cir. 2010) ............................................. 11, 14, 17, 18

15

*Bridgeport Music, Inc. v. Still N The Water Pub*
16
 327 F.3d 472 (6th Cir. 2003) ................................................... 15, 16

17

*Burger King Corp v. Rudzewicz*
 471 U.S. 462 (1985) ......................................................... 19

18

19

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*
 788 F.2d 535 (9th Cir. 1986) .................................................... 21

20

21

*DirectTV, Inc. v. EQ Stuff, Inc.*
 207 F. Supp.2d 1077 (C.D. Cal. 2002) (Pregerson, J.) ............................... 11, 14

22

*Dole Food Co. v. Watts*
23
 303 F.3d 1104 (9th Cir. Cal. 2002) ................................................ 18, 19

24

*Dos Santos v. Telemundo Commn's Grp., LLC*
25
 2012 WL 9503003 (C.D. Cal. Dec. 19, 2012).................................... 15

26

*Harris Rutsky & Co. v. Bell & Cement*
27
 328 F.3d 1122 (9th Cir. 2003).................................................. 18, 22

28

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Int'l Oddities v. Scott Record*
   109 U.S.P.Q.2D (BNA) 1373 (C.D. Cal. July 22, 2013) ................................. 16

*Int'l Shoe Co. v. Washington*
   326 U.S. 310 (1954) .................................................................... 12

*Laub v. U.S. DOI*
   342 F.3d 1080 (9th Cir. 2003) .......................................................... 22

*Mattel, Inc. v. MCA Records, Inc.*
   296 F.3d 894 (9th Cir. 2002) ........................................................... 19

*Mavrix Photo, Inc. v. Brand Techs., Inc.*
   647 F.3d 1218 (9th Cir. 2011) ...................................................... 16, 18

*McDonough v. Fallon McElligott Inc.*
   1996 U.S. Dist. LEXIS 15139 (S.D. Cal. Aug. 5, 1996) ................................ 15

*Orchid Biosciences, Inc. v. St. Louis Univ.*
   198 F.R.D. 670 (S.D. Cal. 2001) ....................................................... 21

*Panavision Int'l, L.P. v. Toeppen*
   141 F.3d 1316 (1998) .......................................................... 11, 12, 18

*Quest Nutrition, LLC v. Bd. of Supervisors of LSU Agric. & Mech. College*
   2014 U.S. Dist. LEXIS 94024 (C.D. Cal. July 8, 2014) ................................. 21

*Rio Prop., Inc. v. Rio Int'l Interlink*
   284 F.3d 1007 (9th Cir. 2002) .......................................................... 15

*Schwarzenegger v. Fred Martin Motor Co.*
   374 F.3d 797 (9th Cir. 2004) ........................................................ 12, 16

*Sidco Indus. Inc. v. Wimar Tahoe Corp.*
   768 F. Supp. 1343 (D. Or. 1991) ....................................................... 15

*Singer v. Live Nation Worldwide, Inc.*
   2012 WL 123146 (C.D. Cal. Jan. 13, 2012) ............................................... 8

*Superbalife, Int'l v. Powerpay*
   2008 WL 4559752 (C.D. Cal. Oct. 7, 2008) .............................................. 9

*uBID v. GoDaddy Grp.*
   623 F.3d 421 (7th Cir. 2010) ....................................................... 4, 15

-iii-

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Vermeulen v. Renault, U.S.A., Inc.*
  985 F.2d 1534 (11th Cir. 1993) ................................................................. 13, 15

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*
  704 F.3d 668 (9th Cir. 2012) ................................................................. 11, 14, 16

*Yahoo! Inc. v. La Ligue Contre Le Racisme*
  433 F.3d 1199 (9th Cir. 2006) (en banc) ........................................................ 16

## <u>Statutes</u>

Cal.Civ. Proc.§ 410.10 ............................................................................. 11

Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* .................................................24

## <u>Other Authorities</u>

Fourteenth Amendment ........................................................................... 11

Local Rule 7-3 .................................................................................. 8, 9

# I.   <u>INTRODUCTION</u>

This dispute between Plaintiff Lions Gate Entertainment Inc. ("Lions Gate") and Defendants Havas Worldwide New York, Inc. ("Havas"), TD Ameritrade Holding Corporation ("TD Ameritrade Holdings"), and TD Ameritrade Services Company, Inc. ("TD Ameritrade Services") concerns an advertising campaign that Defendants intentionally designed to create a false association with Lions Gate's motion picture *Dirty Dancing* and NOBODY PUTS BABY IN A CORNER trademark (the "Advertising Campaign"). This Court has personal jurisdiction over Havas, as noted by the New York Court, and therefore Havas' motion to dismiss must be denied. Havas apparently does not like the decision of the New York Court and seeks a "do over" in this Court. This Court should reach the same result as the New York Court and find that Havas is subject to personal jurisdiction in California. The backdrop of this dispute is set forth below.

On June 26, 2015, Havas and TD Ameritrade Services filed a declaratory judgment action against Lions Gate in U.S. District Court for the Southern District of New York ("New York Action"), attempting to preempt Lions Gate's filing of an infringement action in California, which they knew would be imminent if the parties' settlement discussions proved unsuccessful (which they did). Lions Gate responded to Defendants' improper filing quickly—commencing this case only 6 days later on July 2, 2015—and on July 17, 2015, Lions Gate filed a motion to dismiss or transfer Defendants' preemptive declaratory relief New York case to this Court.

Rather than oppose Lions Gate's motion, Havas and TD Ameritrade Services amended their complaint on July 28, 2015. On August 7, 2015, Lions Gate again moved to dismiss or to transfer the New York Action to this Court on the grounds that the amended complaint still failed to satisfy the requirements of the Declaratory Judgment Act, constituted forum shopping, and was an improper attempt to preempt Lions Gate's infringement action in California and to secure procedural and substantive advantages. Days later, Defendants sought *ex parte* relief from this Court,

seeking to extend their time to respond to the instant complaint until after the New York Court decided Lions Gate's motion. The basis for Defendants' request was their assertion that:

> The issues underlying the motion to dismiss, or in the alternative, to transfer venue, in the New York Action *will undoubtedly be identical* to issues that would be raised in a motion to dismiss in the instant action.

(Dkt. 14 at 7:2-4; *see also* Defendants' Reply in Support of *Ex Parte* Application, Dkt. No. 19 at 2:9-10 (arguing against having "two different federal judges decide the <u>same</u> issue based on the <u>same</u> facts for the <u>same</u> parties" (emphasis in original).) The Court agreed, noting that it was logical to wait for the New York Court's ruling. Specifically this Court held:

> Because the content of Defendants' answer or other response to the complaint will presumably mirror or incorporate the arguments currently before the New York court if that case is dismissed or transferred here, it is logical to wait until after that court rules on Plaintiff's motion before requiring a responsive pleading here.

(Dkt. 21 at 2:18-23.)

The Court entered an order granting Defendants' time to respond to the complaint in this action to 14 days after the ruling on Lions Gate's motion to dismiss, effectively staying this case pending a ruling from the New York Court.

Thereafter, Havas and TD Ameritrade Services filed their opposition to Lions Gate's motion, arguing that the declaratory action should proceed in New York under the first-filed doctrine, and that the dispute could not be litigated in California because this Court lacks personal jurisdiction over Havas. The New York Court disagreed with Havas on both fronts. First, the New York Court held that the first-filed rule did not apply because Defendants' declaratory judgment action was "plainly filed as a preemptive strike—and [wa]s therefore an improper anticipatory filing" and that "[Havas and TD Ameritrade Services'] early arrival at the courthouse steps will not be rewarded with procedural advantage and frustration of [Lions Gate's] pursuit of the claims in California." (SDNY Opinion and Order at 4, 7, **Ex C** to the Declaration

of Whitney Walters-Sachs ("Walters Decl.").)  As to Havas' contention that this Court lacks personal jurisdiction over it, the New York Court held that "***it is more likely than not that Havas is subject to jurisdiction in California***."  (SDNY Opinion and Order at 7 (emphasis added); Walters Decl. ¶ 9.)  The New York Court based its determination on the following findings:

- Despite separate incorporation, it does appear that Havas Worldwide (New York) operates within a nationwide presence and may well be synergistically linked to the operations of the separate California [Havas] offices.  (*Id.* at 7);

- The materials before the Court indicate that Havas Worldwide has five North American offices, one in New York and two in California (San Francisco and San Diego).  (*Id.*);

- Despite the separate offices, the Havas enterprise is self-described as "one of the world's largest communications groups," and "offers a single business model … and integrated structure that responds with a single voice to clients' new expectations." (*Id.* at 7-8 (emphasis in original), *quoting* Havas.);

- [Havas] states that "100% of all communications disciplines [are] contained under one roof."  (*Id.* at 8 (emphasis in original), *quoting* Havas.);

- Various entities within the larger corporate structure partner with Californian businesses.  (*Id.*);

- [Defendant Havas'] New York office has California clients.  (*Id.*);

- It appears that Havas's business model indicates that its New York office's interactions with California are not "solely as a result of random, fortuitous, or attenuated contacts," but rather, [that] it established a continuing relationship" with California subsidiaries, business partners, and clients.  (*Id., quoting Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475, 487 (1985));

- Havas (New York) created "over 100 different ads in various channels, including short online video, digital display, social media, television print, pages on the TD Ameritrade website and communications to TD Ameritrade clients."  (*Id., quoting* Nancy Wynne, General Counsel of Havas); and

- The campaign was "designed to appeal to individual retail investors" … [and] "it is easy to infer that … [this] national marketing campaign is intended to reach as large an audience as possible." (*Id., quoting* Havas' declaratory judgment complaint and *uBID v. GoDaddy Grp.*, 623 F.3d 421, 428 (7th Cir. 2010).)[1]

Now, after having urged this Court to stay this case pending a ruling by the New York Court on "**undoubtedly [] identical" issues**," Havas moves this Court for a second bite at the apple, finding itself dissatisfied with the determination of the New York Court on an identical issue that the parties already litigated.  Havas offers nothing in this Motion to alter the analysis, relying on the same bald assertions that were already considered—and properly rejected as a legal matter—by the New York Court.  Moreover, Havas fails to dispute a single finding of the New York Court, tacitly admitting all of those facts as true.

This Court should reject Havas' jurisdictional challenge, just as the New York Court did, because the allegations and evidence before the Court are more than sufficient to show a *prima facie* case of general and/or specific personal jurisdiction over Havas, which is all that is required to defeat Havas' Motion.  To the extent the Court has any doubts regarding whether it has personal jurisdiction over Havas, Lions Gate should be permitted to conduct jurisdictional discovery.

II.     **STATEMENT OF FACTS**

The factual record before the Court is essentially the same as that presented to the New York Court.  The only difference is that, subsequent to the issuance of the New York Court's ruling, Lions Gate uncovered ***additional facts supporting the exercise of personal jurisdiction over Havas***, which it was unaware of when the

---

[1]      Having made such extensive findings on the record before it with respect to Havas' connection with California, the New York Court anticipated that Havas would raise a personal jurisdiction defense in California only "***if there remain[ed] a serious issue***." (SDNY Opinion and Order at 7, Walters Decl. **Ex. C** (emphasis added).) Because the facts presented to the Court in this Motion are the same as those considered—and rejected—by the New York Court, there is no "serious issue" as whether Havas is subject to personal jurisdiction in California—it is.

1  parties first litigated this issue in New York.  (*See* Walters Decl. ¶ 20, **Ex. J**.)  Havas,

2  by contrast, offers nothing new in its Motion to alter the factual and legal analysis

3  already performed by the New York Court.[2]

4      Havas first raised its jurisdictional challenge in opposition to Lions Gate's

5  motion to dismiss Havas and TD Ameritrade Services' amended complaint filed in

6  the New York Action.  Relying on an affidavit of Havas' General Counsel Nancy

7  Wynne, Havas argued to the New York Court that it was not subject to personal

8  jurisdiction in California by virtue of the following facts (supported only by the

9  assertions of Ms. Wynne):  (i) Havas "is not present in, nor does it do any business in,

10  California"; (ii) Havas "does not maintain any office in California, has no employee

11  located there, and has no bank account there"; and (iii) Havas "is not 'essentially at

12  home' in California and is, thus, not subject to general jurisdiction before a California

13  court."  (*See* Walters Decl. ¶ 6, **Ex. A**.)  As an initial and obvious matter, Ms. Wynne

14  does not have the power to determine whether Havas is subject to general jurisdiction

15  in this Court.  Havas attempted to minimize the impact of the fact that it has multiple

16  affiliates with at least 8 local offices throughout the State of California (in San

17  Francisco, San Diego, and Los Angeles (*see* Walters Decl. ¶¶ 7, 15, **Exs. B, F**), with

18  Ms. Wynne's assertion that "Havas New York is a separate and distinct entity from

19  Havas Worldwide San Francisco, Inc., which separate and distinct entity has offices in

20  San Francisco, California, and [from] Havas Edge, which separate and distinct entity is

21  located in San Diego."  (*See* Walters Decl. **Ex. A**.)  Finally, attempting to defeat

22  specific jurisdiction, Havas argued that:  (i) it "did not perform any services relating

23  to the challenged advertisements in California"; (ii) "[t]he advertisements were

24  developed and created far from California, primarily at Havas New York's offices in

25  New York"; (iii) "Havas New York personnel involved in the creation and production

26

27  [2]    For the Court's convenience, Lions Gate attaches as **Exhibit D** to the Walters
   Declaration a redline, which reflects the minor differences between the Wynne
28  Affidavit that was submitted to, and considered by the New York Court, and the
   Wynne Declaration that Havas has submitted in support of this Motion.

-5-

of the advertisements interacted with the client TD Ameritrade Services through TD Ameritrade's personnel located in New Jersey, Nebraska, and Illinois"; and (iv) "Havas New York did not disseminate the advertisements."  (*Id.* **Ex. A** at 24-25.)

In response, relying on various publicly-available documents as evidence, including Havas' own public statements about the unified nature of its business, Lions Gate presented the New York Court with the following facts, ***none of which Havas even attempts to dispute in this Motion***:  (i) Havas holds itself out as "*one of the world's largest global communications groups* … *[o]perating in over 100 countries* … [e]mploying 16,000 people … [with] [t]wo major divisions [Havas Creative Group (Havas' direct parent) and Havas Media Group]," all of which is "*under one roof*," and which operates under "*a single business model* with a simple, agile and *integrated structure* that responds with *a single voice* to clients' new expectations"; (ii) the "Havas Worldwide network" is described as consisting of "*global integrated agencies*" that adhere to a "'*Together' strategy*," "combining the talent, knowledge and professionalism of its best experts across countries, agencies and all the creative disciplines"; (iii) Havas has customers/clients in California for which it is actively engaged in providing advertising services; (iv) Havas is affiliated with local offices all over the country, including 8 offices in California (2 of which are located in Los Angeles, California); (v) Havas created a national advertising campaign for TD Ameritrade Services (which is registered to do business in California), knowing and intending it to be run in California and directed to California customers; and (vi) Havas specifically designed the Advertising Campaign to target investors through various mediums, including online video, digital display, social media, television, print, and direct communications, which were disseminated in California, and to market and sell services to TD Ameritrade customers, including those in California. (*See* Walters Decl. ¶ 7,  **Ex. B** (emphasis added).)

After considering both sides' arguments and evidence, the New York Court held that "***it is more likely than not that Havas is subject to jurisdiction in***

*California*."  (Walters Decl. **Ex. C** at 7 (emphasis added).)  The New York Court's determination is supported by extensive findings set forth in detail above.  (*See supra* at 3-4.)

Despite the New York Court's extensive findings against it, and Havas' prior argument that this Court should not duplicate the efforts of the New York Court on "undoubtedly [] identical issues," Havas informed Lions Gate that it would press a jurisdictional challenge here.  (Walters Decl. ¶ 34.)  Specifically, on October 8, 2015—only 5 days before filing this Motion—Havas informed Lions Gate for the first time that it intended to litigate the very same issue already decided by the New York Court by filing a motion to dismiss Lions Gate's complaint for lack of personal jurisdiction.   (*Id.* ¶ 35, **Ex. O**.)

In its Motion, Havas does not dispute a single factual finding of the New York Court.  In fact, ***Havas does not even mention the ruling of the New York Court***. Rather, relying again on the declaration of its General Counsel Nancy Wynne (just as it did when this issue was litigated in New York), Havas makes the same arguments against a finding of personal jurisdiction that were already considered—and rejected—by the New York Court.  All that Havas has added this time around are the unsupported assertions of Ms. Wynne that Havas:  (i) "is a separate and distinct entity from Havas Worldwide and the two entities maintain separate websites; and (ii) "[a]side from this action, [it] has never sued or been sued in California."  (*See* Dkt. 24-1, Wynne Decl. ¶¶ 10-11.)  The redline attached as **Exhibit D** to the Walters Declaration reflects the minor differences between the Wynne Affidavit submitted to, and considered by, the New York Court, and the Wynne Declaration that Havas has submitted in support of this Motion.

Upon receipt of this Motion, Lions Gate conducted additional research regarding Havas' connections with California.  Again from publicly-available information on the internet, Lions Gate determined that, in addition to the extensive contacts detailed in the papers it filed in the New York Action, Havas also has various

-7-

additional clients that are based in California, for which Havas is currently working on projects and/or for which Havas has recently completed advertising projects.  Such clients include PayPal, Charles Schwab, Jenny Craig, eBay, Live Nation Entertainment, M-Go, Dream Works, Asus, and Oculus VR.  (Walters Decl. ¶¶ 19-20, **Exs. I, J**.)  The record before this Court supporting the exercise of personal jurisdiction over Havas is even more extensive than that which was previously determined by the New York Court to be sufficient to confer jurisdiction over Havas in California.

## III.   HAVAS' MOTION TO DISMISS FOR LACK OF JURISDICTION SHOULD BE DENIED

### A.   Havas Failed To Comply With L.R. 7-3

Havas failed to properly meet and confer with Lions Gate, and its Motion should be denied on this basis.  Local Rule ("L.R.") 7-3 provides:

> [C]ounsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution.  ***The conference shall take place at least seven (7) days prior to the filing on the motion*** . . . [C]ounsel for the moving party shall include in the notice of motion a statement to the following effect:  "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)."

L.R. 7-3 (emphasis added).

The requirements of the L.R. are mandatory and strictly enforced.  *See*, *e.g.*, *Blundell v. County of L.A.*, 2009 U.S. Dist. LEXIS 71918, at *8 (C.D. Cal. Aug. 12, 2009) ("Local rules have the 'force of law' and are binding upon the parties and upon the court[.]" (Pregerson, J.) (quoting *Prof'l Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994)).  Indeed, even when a moving party makes some arguable attempt to observe L.R. 7-3, this District has insisted on more than trivial efforts to comply.  *See, e.g., Singer v. Live Nation Worldwide, Inc.,* 2012 WL 123146, at *1-2 (C.D. Cal. Jan. 13, 2012) (denying motion for summary judgment where "[t]he attempted in-writing 'conference' of counsel is insufficient under these

1  circumstances."); *Alcatel-Lucent USA, Inc. v. Dugdale Communications, Inc.,* 2009

2  WL 3346784, at *4 (C.D. Cal. Oct. 13, 2009) ("The meet and confer requirements of

3  Local Rule 7-3 are in place for a reason, and counsel is warned that nothing short of

4  strict compliance with the local rules will be expected in this Court.  Thus, the motion

5  is also denied for failure to comply with Local Rule 7-3."); *Superbalife, Int'l v.*

6  *Powerpay*, 2008 WL 4559752, at *1-2 (C.D. Cal. Oct. 7, 2008) (brief phone call

7  requesting extension and confirming email insufficient to constitute compliance with

8  L.R. 7-3; thus, motion denied).

9       Havas made no effort to meet and confer regarding the substance of the Motion

10  within the time frame required under the L.R.  Instead, it waited until October 8,

11  2015—only 5 days before filing its Motion—to first inform Lions Gate that it

12  intended to move to dismiss "for lack of personal jurisdiction and, alternatively, for

13  copyright preemption as to [Lions Gate's] state claims," and did not conduct the

14  conference until the following day.  (Walters Decl. ¶¶ 34-35, **Ex. O**.)[3]  Despite

15  Havas' non-compliance, Lions Gate agreed to meet and confer with Havas, without

16  prejudice to Lions Gate's right to raise Defendants' continued failure to comply with

17  the L.R.  .  (Walters Decl. ¶ 36.)  Given Defendants' disregard for the requirements of

18  L.R. 7-3, the Court should deny Havas' Motion on this basis alone.

19       **B.    The New York Court Already Considered—And Properly**
            **Rejected—The Same Jurisdictional Challenges Advanced By Havas**
20

21       The jurisdiction issues raised by Havas in this Motion are, in Havas' own

22  words, "unequivocally [] identical" to issues that were already raised in, considered,

23  and properly rejected by the New York Court.  There is no reason—factual or legal—

24

25  ---

26  [3]    In their statement of compliance, Havas misleadingly suggest that the parties'
       October 9, 2015 conference was part of an ongoing meet and confer process, stating
27  that "this motion is made following the conference of counsel pursuant to L.R. 7-3
       which ***concluded*** on October 9, 2015.  (*See* Notice of Motion at 1 (emphasis added).)
       In actuality, October 9, 2015 (4 days before the Motion was filed) was the ***only*** day
28  on which the parties met and conferred, and Defendants admitted at that time they had
       failed to comply with the L.R.  (Walters Decl. ¶ 37.)

1  to depart from the ruling of New York Court on these "unequivocally [] identical"

2  issues, and Havas offers none in its Motion.

3       In fact, Havas' Motion is more notable for what it does *not* say, than for what it

4  says.  First, it fails to reference the extensive findings of the New York Court, which

5  support a determination that "***it is more likely than not that Havas is subject to***

6  ***jurisdiction in California***."  Havas does not mention that ruling at all.  Havas' Motion

7  also fails to dispute a single finding of the New York Court, tacitly admitting as true

8  all of those facts, which support the exercise of jurisdiction over Havas.  Havas

9  likewise fails to offer any new facts that would undermine the factual findings or legal

10 conclusions of the New York Court.  The only new "facts" it offers—namely, that (i)

11 "is a separate and distinct entity from Havas Worldwide and the two entities maintain

12 separate websites; and (ii) "[a]side from this action, [it] has never sued or been sued

13 in California" (*see* Dkt. 24-1, Wynne Decl. ¶¶ 10-11)—in no way alter the analysis.

14 The first additional "fact" is belied by Havas' own public statements, in which it

15 consistently refers to the "Havas Worldwide Network" (which Havas is the

16 headquarters of), as being "made up of 11,000 employees in 120 cities and 75

17 countries, with 316 offices [that] provide[] advertising, marketing, corporate

18 communications, and digital and social medial solutions to clients."  (*See, e.g.*, .

19 (Walters Decl. ¶ 13; **Ex. E**.)  That these two entities may "maintain separate websites"

20 is hardly relevant when these companies publicly claim to operate as ***one unit*** and

21 some of ***the same high level corporate executives*** make up the leadership teams of

22 both of these purportedly distinct entities.  (*Id.*)  Finally, the supposed fact that Havas

23 has never sued or been sued in California before does not affect the analysis one way

24 or another, particularly when all of the other facts found by the New York Court

25 support the exercise of jurisdiction over Havas.  It bears noting that when Havas'

26 declaratory judgment action was transferred to California by order of the New York

27 Court, Havas did not immediately dismiss its action.  Rather, it was only after Lions

28

-10-

1  Gate urged Havas to do so on two separate occasions that Havas finally agreed to

2  dismiss its declaratory judgment case.  (Walters Decl. ¶ 14.)

3       In sum, the New York Court already considered all of the arguments Havas

4  now seeks to re-litigate in this Court.  Consistent with the ruling of the New York

5  Court, this Court should reject these arguments for the reasons discussed in further

6  detail below.

7       **C.   <u>Havas Is Subject To Personal Jurisdiction</u>**

8       When a defendant challenges jurisdiction, the plaintiff need only make a *prima*

9  *facie* showing that the Court has personal jurisdiction.  *Brayton Purcell LLP v.*

10 *Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010); *DirectTV, Inc. v. EQ*

11 *Stuff, Inc.*, 207 F. Supp.2d 1077, 1079 (C.D. Cal. 2002) (Pregerson, J.).  In

12 determining whether the plaintiff has met this burden, the Court "must take the

13 allegations in the plaintiff's complaint as true and resolve disputed jurisdictional facts

14 in the plaintiff's favor."  *EQ Stuff*, 207 F. Supp.2d at 1079; *see also Wash. Shoe Co. v.*

15 *A-Z Sporting Goods Inc.,* 704 F.3d 668, 672 (9th Cir. 2012) ("[T]he court resolves all

16 disputed facts in favor of the plaintiff."); *Brayton*, 606 F.3d at 1128 ("For purposes of

17 plaintiff's prima facie jurisdictional showing, uncontroverted allegations in…[the]

18 complaint must be taken as true, and conflicts between the facts contained in the

19 parties' affidavits must be resolved in…[plaintiff's] favor.") (citations omitted).

20      Courts perform a two-step analysis to determine whether the exercise of

21 personal jurisdiction over a nonresident defendant is proper.  The first step involves

22 an analysis of the forum state's long arm statute.  California's long arm statute

23 provides for personal jurisdiction to the full extent permissible under the Fourteenth

24 Amendment to the U.S. Constitution.  *See* Cal.Civ.Proc.Code § 410.10; *Panavision*

25 *Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (1998).  Thus, the jurisdictional analysis

26 turns on the second step, which is to determinate whether the assertion of personal

27 jurisdiction would violation due process.  *Id.*

28

A court's assertion of personal jurisdiction over a defendant comports with due process if the defendant has sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1954). Minimum contacts may be established by either general or specific jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-03 (9th Cir. 2004); *Panavision*, 141 F.3d at 1320.

### 1.    Havas Is Subject To General Jurisdiction

General jurisdiction exists if the defendant's contacts with the forum are "substantial" or "continuous and systematic."  *Int'l Shoe*, 326 U.S. at 316; *see also Schwarzenegger*, 374 F.3d at 801 (plaintiff must show that defendant engaged in "'continuous and systematic general business contacts' that 'approximate physical presence' in the forum state.") (citations omitted).  A "finding of general jurisdiction permits a defendant to be hailed into court in the forum state to answer for activities anywhere in the world."  *Schwarzenegger*, 374 F.3d at 801.

As the New York Court properly determined, "Havas' business model indicates that its New York office's interactions with California are not 'solely as a result of random, fortuitous, or attenuated contacts,' but rather, it 'established a continuing relationship' with Californian subsidiaries, business partners, and clients."  (SDNY Opinion and Order at 8, Walters Decl. **Ex. C**.)  In this regard, all of the following key facts—relied upon by the New York Court in rejecting Havas' jurisdictional challenge—are undisputed:

- Havas operates within a nationwide presence that is self-described as being synergistically linked to the operations of other Havas offices throughout the country, including in California.  Havas represents itself as 'one of the world's largest communications groups,' and 'offers a single business model … and <u>integrated</u> structure that responds with a <u>single voice</u> to clients' new expectations."  (*See* SDNY Opinion and Order at 8, Walters Decl. **Ex. C**; Walters Decl. ¶ 13, **Ex. E**.)

-12-

- Havas Worldwide has 5 North American offices, 1 in New York (its headquarters), and 2 in California (San Francisco and San Diego). Although Havas maintains that it is "a separate and distinct" from its local offices in San Francisco and San Diego, Havas (on its own website) holds itself out as having a connection to those California entities, providing links to both Havas Edge in San Diego and Havas Worldwide in San Francisco. This belies any suggestion that these companies are "separate and distinct." (*See* SDNY Opinion and Order at 8, Walters Decl. **Ex. C**; Walters Decl. ¶¶ 16-18, **Ex. G**.)

- Havas Worldwide and Havas share some of the ***same high level corporate executives***, which make up the leadership teams of both entities. (Walters Decl. ¶ 18, **Ex. H**.)

- There are two additional Havas offices in Los Angeles. (Walters Decl. ¶¶ 15-16; **Ex. F**.)

- Havas publicly represents that "'100% of all communications disciplines [are] contained under <u>one roof</u>." (SDNY Opinion and Order at 8, Walters Decl. **Ex. C** (emphasis in original), *quoting* Havas; Walters Decl. ¶ 13; **Ex. E**.)

- Various entities within the larger corporate structure partner with Californian businesses. (SDNY Opinion and Order at 8, Walters Decl. **Ex. C**); and

- Havas has California clients. (SDNY Opinion and Order at 8, Walters Decl., **Ex. C**; Walters Decl. ¶¶ 19-20, **Ex. I, J**.)

Thus, despite its representations to the Court about its purported lack of contact with California, it is undisputed that Havas' extensive, self-proclaimed, synergistic connections to offices throughout the world, which include 8 local offices in California. Havas' unsupported, conclusory assertions that it is "separate and distinct" from other Havas entities in California are insufficient to defeat jurisdiction, particularly in light of the extensive evidence of a synergy among them. *See, e.g.*, *Benitez-Allende v. Alcan Aluminio Do Brasil, S.A.*, 857 F.2d 26, 30 (1st Cir. 1988) ("[A] truly interstate business may not shield itself from suit by a careful but formalistic structuring of its business dealings."); *see also Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1548-49 (11th Cir. 1993) (finding that, although

defendant's busines partner was not an alter ego, the fact that "distribution system created by their alliance … contemplated a nationwide network" and that defendant "had a large hand in directing [the advertising] campaign" supported jurisdiction). Moreover, Havas is currently working on projects (or recently completed projects) for various clients based in California.  (*See* Walters Decl. ¶¶ 19-20, **Exs. I, J**.)

On this record, there is more than enough evidence to support a *prima facie* case of general jurisdiction over Havas.

### 2.  Havas Is Also Subject To Specific Jurisdiction

Even if the Court disagrees with the New York Court and finds that there is no general jurisdiction over Havas, there is specific jurisdiction.  Specific jurisdiction is proper if:  (1) defendant purposefully directs activities at the forum or a resident thereof; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable.  *See Brayton*, 606 F.3d at 1128; *Wash. Shoe,* 704 F.3d at 672.  Specific personal jurisdiction may be exercised when the "nature and quality" of the defendant's contacts with the forum state are significant in relation to the specific cause of action.  *EQ Stuff, Inc.*, 207 F. Supp.2d at 1080 (Pregerson, J.) (citing *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).

Here, the allegations and evidence before the Court are more than sufficient to show a *prima facie* case of specific personal jurisdiction over Havas.  It is undisputed that Havas created a national advertising campaign for TD Ameritrade Services, knowing and intending it to be run in California and directed to California consumers. (*See* Dkt. 24-1, Wynne Decl. ¶ 12; Walters Decl. ¶ 21; **Ex. K**.)  Havas specifically designed the Advertising Campaign to target investors through various mediums, including online video, digital display, social media, television, print, and direct communications disseminated in California, and to market and sell services to TD Ameritrade Services' customers, including those in California.  (Dkt. 24-1, Wynne Decl. ¶12.)  Because Havas purposefully directed conduct towards California and

-14-

1  infringed Lions Gate's rights there, it is subject to jurisdiction.[4]  In addition, Havas

2  has, or services, customers in California.  (Walters Decl. ¶¶ 19-20, **Exs. I, J**.)

3       The cases cited by Plaintiffs are not to the contrary.  (*See* Mot. at 9:1-19.)  The

4  court in *McDonough v. Fallon McElligott Inc.*, 1996 U.S. Dist. LEXIS 15139, at *5

5  (S.D. Cal. Aug. 5, 1996) found no personal jurisdiction because defendant placed the

6  infringing ad in only one national magazine and had no other connection to California

7  including, *inter alia,* no clients in California.  By contrast, Havas and TD Ameritrade

8  do not dispute that the infringing advertisements were marketed in national (and

9  possibly local) publications, television, internet videos, and advertising that were

10  directed to TD Ameritrade's customers in California.  It is also undisputed that Havas

11  also has significant connections to California, including a number of large clients and

12  offices in the state.  Similarly, the court in *Dos Santos v. Telemundo Commn's Grp.,*

13  *LLC*, 2012 WL 9503003, at *7 (C.D. Cal. Dec. 19, 2012), found no purposeful

14  direction because there was "no basis to conclude that the [content creator] acted with

15  a desire or goal of appealing California and exploiting the market for commercial

16  gain…."  Again, Havas admits that Defendants' stated goal was to distribute the

17  infringing ads directly to TD Ameritrade's customers, including those in

18  California.  Finally, in *Bridgeport Music, Inc. v. Still N The Water Pub*, 327 F.3d 472,

19  480-84 (6th Cir. 2003), the Sixth Circuit refused to exercise jurisdiction over a

20  licensee that merely had knowledge that composition was "likely" to be distributed

21

---

22  [4]    *See*, *e.g.*, *Rio Prop., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir.
   2002) (jurisdiction proper in Nevada where infringer "ran radio and print
23  advertisements" in Las Vegas, injuring plaintiff in "its principal place of business and
   the capital of the gambling industry"); *uBID, Inc. v. GoDaddy Group, Inc.,* 623 F.3d
24  421, 428 (7th Cir. 2010) (jurisdiction over defendant established notwithstanding lack
   of evidence that defendant "specifically targets Illinois customers in its advertising,"
25  as "it is easy to infer that [defendant's] national marketing campaign is intended to
   reach as large an audience as possible, including the 13 million potential customers  in
26  the nation's fifth most populous state."); *Vermeulen*, 985 F.2d at 1548-49 (jurisdiction
   over foreign car designer established where defendant had a "large hand in directing
27  [advertising] campaign" of car); *Sidco Indus. Inc. v. Wimar Tahoe Corp.*, 768 F.
   Supp. 1343, 1348 (D. Or. 1991) (jurisdiction proper where advertisements distributed
28  directly to consumers in plaintiff's forum).

nationally, but found exercise of jurisdiction proper over another licensee that understood that its "recordings would be distributed nationwide, 'in all 50 states' pursuant to the parties' agreement.  Here, Havas and TD Ameritrade expressly contracted for "nationwide" advertising including advertising directly aimed at California residents, and thus, are akin to the licensee over whom the Sixth Circuit in *Bridgeport* exercised its jurisdiction.

On these facts, all three requirements of the specific jurisdiction test are readily met.

### a. Havas Purposefully Directed Activities At California

In infringement cases, courts analyze the first prong of the specific jurisdiction test by "applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Wash. Shoe,* 704 F.3d at 672 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).[5]  The "effects" test requires that the defendant:  "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011).  There is no requirement that the defendant have any physical contacts with the forum.  *See, e.g.*, *Schwarzenegger*, 374 F.3d at 803.  Furthermore, even a single act is sufficient to give rise to specific jurisdiction over a nonresident defendant under the "effects test." *See Yahoo*!, 433 F.3d at 1210.  The evidence establishes that Havas committed intentional acts, expressly aimed at California, that caused harm to Lions Gate, which Havas knew (or at least should have known) was likely to be felt in California.

---

[5]    *See also Schwarzenegger*, 374 F.3d at 802; *Adobe Sys. v. Accoladian Res., LLC*, 2014 U.S. Dist. LEXIS 103123, at *6 (N.D. Cal. July 28, 2014) ("In copyright and trademark infringement actions, the Ninth Circuit has set forth a 'purposeful direction' analysis."); *Int'l Oddities v. Scott Record*, 109 U.S.P.Q.2D (BNA) 1373, 1378-79 (C.D. Cal. July 22, 2013) ("Because plaintiff has alleged trademark infringement, unfair competition, and false advertising, which are 'tort-like cause[s] of action,' the Court applies the purposeful direction framework….").

The intentional act element is satisfied where the defendant performs an act with the intent to perform an actual, physical act. *Brayton*, 606 F.3d at 1128. It is indisputable that Havas committed an intentional act by creating the Advertising Campaign using the intellectual property at the heart of this dispute—namely, adulterated versions of the iconic quote from the motion picture *Dirty Dancing*, coupled with a reenactment or representation of the dance lift depicted at the film's climax when its stars Patrick Swayze and Jennifer Grey have their last dance together.

The record before the Court likewise reflects that Havas' intentional acts were expressly aimed at California. *See Brayton*, 606 F.3d at 1129. As the New York Court properly found, Havas created the nationwide Advertising Campaign for TD Ameritrade Services—consisting of "over 100 different ads in various channels, including short online video, digital display, social media, television print, pages on the TD Ameritrade website and communications to TD Ameritrade clients—which was "intended to reach as large an audience as possible." (SDNY Opinion and Order at 8, Walters Decl. **Ex. C**.) This Advertising Campaign was "designed to appeal to individual retail investors" (Dkt. 24-1, Wynne Decl. ¶ 12), the vast majority of whom more than likely reside in California, where TD Ameritrade (for whom Havas created the Advertising Campaign) maintains approximately 20% of its branch offices nationwide. (Walters Decl. ¶ 21, **Ex. K**.) In addition, Defendants specifically targeted Californian customers, by disseminating the Advertising Campaign in California, using intellectual property known to belong to Lions Gate, a California-based corporation. (*Id.* ¶ 21.)[6] On these facts, the second prong of the "effects" test is easily satisfied.[7]

---

[6]    Havas' assertion that it did not, itself, disseminate the Advertising Campaign (Mot. at 8:20-23, Wynne Decl. ¶ 15) is of no consequence. In developing the Advertising Campaign, Havas was acting as TD Ameritrade's agent, and was charged with developing an advertising campaign designed to carry out its client's business objective, which was to target "individual retail investors," including those residing in California. (Walters Decl. ¶ 21, **Ex. K**.) While Havas may not have played a deciding role "in determining whether and where to use the Accused Ads (Mot. at 8:23-24), it can hardly be heard to argue that it did not know of TD Ameritrade's

-17-

Havas' intentional acts also had foreseeable effects in California.  *See Brayton*, 606 F.3d at 1131 (The "effects test" "is satisfied when defendant's intentional act has 'foreseeable effects' in the forum.").  It was entirely foreseeable that Havas' use of taglines and images intentionally designed to create an association with *Dirty Dancing* and the NOBODY PUTS BABY IN A CORNER trademark would cause harm to Lions Gate—as the owner of all right, title, and interest in and to the movie and the trademarks DIRTY DANCING and NOBODY PUTS BABY IN A CORNER—which maintains its principal place of business in California.  *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. Cal. 2002) ("[W]hen a forum in which a plaintiff corporation has its principal place of business is the same forum toward which defendants expressly aim their acts, the 'effects' test permits that forum to exercise personal jurisdiction."); *Mavrix*, 647 F.3d at 1231 (holding that, in determining the foreseeable harm to a corporation, economic harm can be suffered "both where the bad acts occurred and where the corporation has its principal place of business.").

> **b.     Lions Gate's Claims Arise Out Of And Are Related To Havas' Activities In The Forum**

The second prong of the test for specific jurisdiction requires that the claim be one that arises out of or relates to the defendant's activities in the forum.  *Panavision*, 141 F.3d at 1320.  This requires a showing of "but for" causation.  *Id.* at 1322.  Lions Gate's trademark infringement, dilution, false association, and unfair competition

---

intended market, or that it did not develop the Advertising Campaign with that market in mind.  To suggest otherwise would mean that Havas created, developed, and implemented the Advertising Campaign with no understanding whatsoever of the target audience for the Campaign, which an experienced firm like Havas would not do.

[7]     *See, e.g., Harris Rutsky & Co. v. Bell & Cement*, 328 F.3d 1122, 1131-32 (9th Cir. 2003) (upholding jurisdiction where acts of interference that took place in London were directed at California-based company); *see also Atlanta Gas Light Co. v. Semaphore Advertising Co.*, 747 F. Supp. 715, 722 (S.D. Ga. 1990) (holding that defendant advertising agency subject to jurisdiction where it "purposefully entered into contracts with Georgia television stations to air commercials on behalf of defendant Central from which defendant [advertising agency] profited financially").

claims are based on, and would not have arisen "but for," the conduct of Havas.  In conjunction with the TD Ameritrade Defendants, Havas used Lions Gate's intellectual property without authorization so as to capitalize on the goodwill, recognition, and fame associated with *Dirty Dancing* and the NOBODY PUTS BABY IN A CORNER trademark and to cause the public to falsely or incorrectly believe that Lions Gate approved, licensed, endorsed, sponsored, authorized, or is associated with, the Advertising Campaign or TD Ameritrade's services.  Accordingly, Lions Gate's claims arise out of, and are related to, Havas' conduct directed at California.  *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899 (9th Cir. 2002) (affirming district court exercise of jurisdiction because plaintiff's trademark claims would not have arisen "but for" defendants' "coordinated plan to distribute the [infringing] song in the United States (including California)," conduct that was "expressly aimed at, and…caused harm in, California, [plaintiff's] principal place of business.").

### c.   The Exercise Of Jurisdiction Is Reasonable

If plaintiff makes a *prima facie* showing that the first two prongs are satisfied, the burden shifts to defendant to "present a compelling case" that the exercise of jurisdiction would be unreasonable and therefore violate due process.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985); *Dole Food Co.*, 303 F.3d at 1114; *Adobe Sys. v. Accoladian Res., LLC*, 2014 U.S. Dist. LEXIS 103123, at *11 (N.D. Cal. July 28, 2014).  Courts consider seven factors when determining whether defendant has met its burden:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food*, 303 F.3d at 1114.

Havas argues that these factors "heavily favor dismissal," citing the very same "facts" that it contends establish that did not purposefully avail itself of the privilege

of conducting activity in California or purposefully direct its activities toward California—namely, that it purportedly does no business in California, is not registered to do business in California, and has no office, employees, or bank account in California.  (Mot. at 10:8-13.)  This argument is entirely circular.  For the Court to arrive at this prong, it must already have made a determination that Lions Gate established a *prima facie* case that:  (i) Havas purposefully directed activities at the forum or a resident thereof and (2) the claim arises out of or relates to Havas' forum-related activities.  Thus, Havas' reiteration of the very same "facts" that it argues negate such a determination does nothing to advance the ball, and falls far short of presenting a "compelling case" that the exercise of jurisdiction would be unreasonable and violate due process.

Equally unavailing is Havas' reliance on the purported convenience of its witnesses or that it "already provided Lions Gate with an alternative forum for resolving this dispute by bringing the New York Action in the Southern District of New York" (*See* Mot. at 10:13-17.)  The New York Court already rejected Havas' convenience arguments and issued an order transferring its declaratory judgment action to California, holding that it was "plainly filed as a preemptive strike—and [wa]s therefore an improper anticipatory filing" that could not be used to "frustrate[e] … [Lions Gate's] pursuit of the claims in California."  (SDNY Opinion and Order at 4, 7, Walters Decl. **Ex. C**.)

In any event, a review of the relevant factors shows that the exercise of personal jurisdiction over Havas would be far from unreasonable.  Havas purposefully directed itself into California to a large extent by acting on behalf of various California-based clients and in conjunction with various California affiliates, with which it operates "under one roof," presenting "a single business model with a simple, agile and integrated structure that responds with a single voice to clients' new expectations."  (Walters Decl. ¶ 13, **Ex. E** (emphasis added).)  It also undertook to create, design, and implement an Advertising Campaign for a client whose presence

-20-

in California is extensive and well-known, using assets known to belong to a California-based entertainment company.  (*See id.* ¶ 21.)[8]  Havas touts itself as "one of the largest integrated marketing communications agencies in the world" (Dkt. 24-1, Wynne Decl. ¶ 2); thus it undoubtedly has the resources to defend itself in California, where it has at least 8 offices throughout the State.  (Walters Decl. ¶¶ 15-17, **Ex. F, G.**)  Finally, this Court has an overwhelming interest in adjudicating this dispute because Lions Gate maintains its principal place of business here, the intellectual property at issue resides here, and, as the New York Court correctly determined, California is the most convenient and efficient forum in which to resolve this dispute.

### D.    At The Very Least, Jurisdictional Discovery Is Warranted

To the extent the Court concludes that a *prima facie* case of jurisdiction has not yet been established, Lions Gate should be given the opportunity to conduct jurisdictional discovery.  "Courts are afforded a significant amount of leeway in deciding whether parties may conduct discovery relating to jurisdictional issues while a motion to dismiss is pending." *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672 (S.D. Cal. 2001); *see also Quest Nutrition, LLC v. Bd. of Supervisors of LSU Agric. & Mech. College*, 2014 U.S. Dist. LEXIS 94024, at *17 (C.D. Cal. July 8, 2014) ("A court has broad discretion to permit discovery to aid in determining whether it has in personam jurisdiction.").  Jurisdictional discovery "should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)) (quoting *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)).  The Ninth Circuit has reversed for an abuse of discretion where, as here,

---

[8]     *See also Atlanta Gas Light Co.*, 747 F. Supp. at 722 (holding that exercise of jurisdiction was "reasonable": "In the instant case, defendant [advertising agency] initiated the business transactions with Georgia television stations … 'When a nonresident engages in some activity with or in the forum, even a significant single transactions, whether he be physically present there or not, and as a result business is transacted or a tortious injury occurs, a jurisdictional 'contact' exists between that nonresident and the forum.'") (citations omitted).

-21-

1    further discovery "might well" have established a basis for personal jurisdiction.

2    *Harris*, 328 F.3d at 1135; *see also Laub v. U.S. DOI*, 342 F.3d 1080, 1093 (9th Cir.

3    2003) (abuse of discretion to fail to grant discovery where "jurisdictional facts are

4    contested or more facts are needed.")

5         If the motion to dismiss is not denied outright, jurisdictional discovery is

6    warranted.  Lions Gate served Havas with its first set of requests for the production of

7    documents on August 28, 2015, prior to the time that Havas first argued (in pleadings

8    filed in New York on September 8, 2015) that it was not subject to personal

9    jurisdiction in California.  Nonetheless, numerous discovery requests already

10   propounded by Lions Gate are directly relevant to the jurisdictional inquiry.

11        By way of example, Lions Gate sought—and Havas agreed to produce—all

12   organizational charts and other documents that reflect the organization and

13   operational structure of Havas and all of its related entities.  (*See, e.g.,* Walters Decl.

14   ¶¶ 22-23, **Ex. L**, Request Nos. 80-81.)  This information is relevant to further test the

15   veracity of the statements in Ms. Wynne's declaration that Havas is "separate and

16   distinct" from various other Havas entities located in California.  As the New York

17   Court correctly noted, Ms. Wynne's testimony in this regard has already been uncut

18   by various public statements by Havas, including the "Contact Us" portion of ***Havas'***

19   ***own website*** in which Havas holds itself as having a connection to California,

20   providing links to both its offices at Havas Edge Headquarters in San Diego and

21   Havas Worldwide San Francisco.  (*See* **Exs. C, G**.)  Lions Gate anticipates that Ms.

22   Wynne's conclusory testimony in this regard may be further undercut by documents

23   reflecting the organizational and operational structure of Havas and its California-

24   based affiliates – once such documents are produced by Havas.

25        In addition, various discovery requests seek all of the advertising or

26   promotional material constituting the Advertising Campaign and/or featuring the

27   infringing advertisements, and documents regarding the drafting, selection,

28   publication, and/or approval of the Advertising Campaign and its various elements.

(*See, e.g.,* Walters Decl. ¶ 24, **Ex. L**, Request Nos. 2, 11-25, 44-52, 57-63, 91-92, 101, 105-106.)  These requests are relevant to determine, among other things, the extent to which Defendants targeted California consumers, sought to capitalize on Lions Gate's intellectual property located in California, and/or performed any services relating to the challenged advertisements in California.

The discovery requests addressed to the intended audience for the Advertising Campaign, the geographic regions targeted by the Advertising Campaign, any studies, polls, or market research related to the Advertising Campaign, any marketing and advertisement plans for the Advertising Campaign, and any publicity related thereto, are all germane to the same jurisdictional question.  ( Walters Decl. ¶ 25, **Ex. L**, Request Nos. 26-29, 36, 68, 83-84.)  So, too, are the requests asking Havas to identify any third parties engaged by Havas to assist on the Campaign, and all persons within the agency who were involved with the Advertising Campaign (many of whom may have been in California, particularly since Havas asserts publicly that it works with other Havas offices throughout the country interchangeably).  (Walters Decl. ¶ 25, **Ex. L**, Request Nos. 37-43, 85-90.)

Although Havas has acknowledged the relevance of all of the above categories of requests by agreeing to produce documents responsive thereto, Havas has not produced a single responsive document to date.  (Walters Decl. ¶ 26.)  As a result, Lions Gate has been largely deprived of evidence that would further support its *prima facie* showing of personal jurisdiction over Havas.  Accordingly, to the extent that the Court concludes that more facts are necessary in order to establish a *prima facie* case of personal jurisdiction over Havas, Lions Gate should be given leave to obtain and review the discovery that it previously propounded that is relevant to the jurisdictional dispute, and to conduct additional jurisdictional discovery, as necessary.

1

2

**IV.  <u>HAVAS' MOTION TO DISMISS BASED ON COPYRIGHT PREEMPTION MUST ALSO BE DENIED</u>**

3

In the alternative, Havas has moved to dismiss the complaint as preempted by

4

the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*  As Havas did in its Motion,

5

Lions Gate respectfully refers the Court to the accompanying opposition to the motion

6

to dismiss of TD Ameritrade Holdings and TD Ameritrade Services for the reasons

7

why none of Lions Gate's claims is preempted by the Copyright Act.  Lions Gate

8

adopts, and incorporates by reference herein, all of the arguments set forth in those

9

opposition papers.

10

**V.  <u>CONCLUSION</u>**

11

For the foregoing reasons, Havas' motion should be denied in its entirety.  To

12

the extent the Court has any doubts regarding whether it has personal jurisdiction over

13

Havas, Lions Gate should be permitted to conduct jurisdictional discovery.

14

Respectfully submitted,

15

SHEPPARD MULLIN RICHTER & HAMPTON LLP

16

17

Dated:  October 26. 2015      By  <u>*/s/ Jill M. Pietrini*</u>

18

Jill M. Pietrini
Whitney Walters-Sachs
Attorneys for Plaintiff

19

LIONS GATE ENTERTAINMENT INC.

SMRH:473498305.4

20

21

22

23

24

25

26

27

28

-24-