1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2   Including Professional Corporations
   JILL M. PIETRINI (Cal. Bar No. 138335)
3  jpietrini@sheppardmullin.com
   WHITNEY WALTERS-SACHS (Cal. Bar No. 237781)
4  wwalters-sachs@sheppardmullin.com
   1901 Avenue of the Stars, Suite 1600
5  Los Angeles, California 90067-6055
   Telephone:  (310) 228-3700
6  Facsimile:  (310) 228-3701

7  Attorneys for Plaintiff Lions Gate
   Entertainment Inc.

8

9                UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12  LIONS GATE ENTERTAINMENT        Case No. 15-CV-05024-DDP-E
    INC., a Delaware corporation,
13                                   **FIRST AMENDED COMPLAINT
              Plaintiff,             FOR FALSE ASSOCIATION,
14                                   UNFAIR COMPETITION,
         v.                          TRADEMARK INFRINGEMENT,
15                                   TRADEMARK DILUTION, AND
    TD AMERITRADE HOLDING            COPYRIGHT INFRINGEMENT**
16  CORPORATION, a Delaware
    corporation, TD AMERITRADE       **DEMAND FOR JURY TRIAL**
17  SERVICES COMPANY, INC. a
    Delaware corporation, TD
18  AMERITRADE, INC., a New York
    corporation, AMERIVEST
19  INVESTMENT MANAGEMENT,
    LLC, a Delaware limited liability
20  company, HAVAS WORLDWIDE
    NEW YORK, INC., a Delaware
21  corporation and DOES 1-10, inclusive,

22            Defendants.

23

24        Plaintiff Lions Gate Entertainment Inc. ("Lions Gate"), for its first amended

25  complaint against defendants TD Ameritrade Holding Corporation ("TD Ameritrade

26  Holding"), TD Ameritrade Services Company, Inc. ("TD Services"), TD

27  Ameritrade, Inc. ("TD Ameritrade"), Amerivest Investment Management, LLC

28  ("Amerivest"), and Havas Worldwide New York, Inc. ("Havas") (collectively,

"Defendants"), and Does 1-10, alleges as follows:

## JURISDICTION

1.     This action arises under the trademark and unfair competition laws of the United States, 15 U.S.C. § 1051, *et seq.*, the Copyright Act of 1976, 17 U.S.C. § 501, *et seq.*, and under California statutory and common law of unfair competition. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b), and § 1367, 15 U.S.C. § 1121, and 17 U.S.C. § 501.

2.     Venue is proper under 28 U.S.C. §§ 1391(a), (b) and (c) in this case because Defendants are deemed to reside in this District for venue purposes and are subject to personal jurisdiction in this District, and/or a substantial part of the events or omissions giving rise to the instant claims occurred in this District.

## PARTIES

3.     Lions Gate is, and at all relevant times was, a Delaware corporation having its principal place of business in Santa Monica, California.  Lions Gate is in the business of creating, promoting, and distributing motion pictures and television programs, as well as licensing those properties for various merchandise and promotions and sponsorships.

4.     On information and belief, TD Ameritrade Holding is, and at all relevant times was, a Delaware corporation having its principal place of business in Omaha, Nebraska, and it does business in this District.

5.     On information and belief, TD Services is, and at all relevant times was, a Delaware corporation having its principal place of business in Omaha, Nebraska. TD Services does business in this District and is registered to do business in California.

6.     On information and belief, TD Ameritrade is, and at all relevant times was, a New York corporation having its principal place of business in Omaha, Nebraska.  TD Ameritrade does business in this District and is registered to do business in California.

7.    TD Ameritrade operates at least 23 branches in California, the most of any state in the U.S., including branches in Beverly Hills, Encino, Irvine, Long Beach, Mission Viejo, Pasadena, Santa Barbara, Santa Monica, and Thousand Oaks.

8.    On information and belief, Amerivest is, and at all relevant times was, a Delaware limited liability company having its principal place of business in Omaha, Nebraska.  Amerivest does business in this District and is registered to do business in California.

9.    On information and belief, Havas is, and at all relevant times was, a Delaware corporation having its principal place of business in New York, New York, and it does business in this District.

10.    Havas has held itself out publicly as one of the world's largest global communications groups, claiming to operate in over 100 countries and employing 16,000 people.

11.    Havas operates offices in both San Francisco, California and San Diego, California, and is affiliated with local offices throughout the U.S., including 8 offices in California, 2 of which are located in Los Angeles.  Havas, frequently partners and does business with its affiliates in California.  Havas has held itself out publicly as operating with its affiliates "under one roof" and under a "single business model with a simple, agile and integrated structure that responds with a single voice to clients' new expectations."

12.    Havas has customers and clients in California for which it is actively engaged in providing advertising services.  Havas is currently working on projects or has recently completed projects for the following companies based in California: PayPal, Charles Schwab, Jenny Craig, eBay, Live Nation Entertainment, M-Go, DreamWorks, Asus, and Oculus VR.

13.    Defendants are subject to personal jurisdiction in this District because they do business in this District and/or the claims arose in this District.

14.    The true names, identities and capacities, whether individual, associate,

-3-

1   corporate or otherwise, of Defendants DOES 1 to 10, inclusive, and each of them

2   ("the DOE Defendants"), are unknown to Lions Gate at this time, who therefore

3   sues the DOE Defendants by such fictitious names.  When the true names and

4   capacities or participation of the DOE Defendants are ascertained, Lions Gate will

5   amend this complaint to assert their true names, identities, and capacities.  Lions

6   Gate is informed and believes and thereon alleges that each of the DOE Defendants

7   sued herein is responsible for the wrongful acts alleged herein, and is therefore

8   liable to Lions Gate in some manner for the events and happenings alleged in this

9   complaint.  Lions Gate is informed and believes and thereon alleges that at all times

10   herein mentioned, the DOE Defendants were and are doing business and/or residing

11   in this District.

12                                           **FACTS**

13   **Lions Gate's Business And Trademarks**

14       15.    Lions Gate is a leading global entertainment company with a strong and

15   diversified presence in the motion picture and television industry.  Lions Gate has

16   produced and distributed motion pictures, television shows, and related

17   entertainment products, and has also been involved in motion picture financing,

18   licensing, production, and distribution services.

19       16.    Lions Gate's motion picture and television library includes more than

20   15,000 titles, including the highly successful motion picture *Dirty Dancing*, starring

21   the late Patrick Swayze and Jennifer Grey.

22       17.    *Dirty Dancing* is a world famous, Oscar-winning film, which was

23   released in 1987 and became a massive box office hit, with hundreds of millions of

24   dollars in worldwide earnings reported.  Two soundtracks from *Dirty Dancing* have

25   each achieved Platinum sales levels (more than 1 million units sold) and continue to

26   have strong sales worldwide.  In recent years, the film was named one of the Top 10

27   Date Movies of all time, among numerous other accolades, and its appeal to

28   generations of fans has proven that its message of love conquering all is universal

1  and timeless.  *Dirty Dancing* is iconic and well known for the dance scenes and for

2  certain lines or quotes in the motion picture.

3      18.    Numerous works have been created, released, and distributed in

4  connection with the motion picture *Dirty Dancing*.  For example, in or about 1987,

5  there was a Dirty Dancing Live in Concert tour in the United States along with the

6  release of a related video.  In or about 1988, a *Dirty Dancing* television series was

7  aired on the CBS network.  The film has also been adapted for the stage, where it

8  premiered in Sydney, Australia in November 2004.  Since then, the stage adaptation

9  has been continuously produced and has toured internationally throughout Europe,

10  Asia, Australia, and South Africa, and is currently on its second North American

11  tour.

12      19.    In December 2006, a *Dirty Dancing* reality television series premiered

13  on the Women's Entertainment Network in which contestants competed for best

14  dancer status.  In 2007, to mark the film's 20th anniversary, Lions Gate re-released

15  *Dirty Dancing* in theaters with a newly re-mastered print and bonus features, and

16  released worldwide a 20th anniversary edition DVD to the home entertainment

17  market, and a 20th anniversary soundtrack album, again to phenomenal success.  To

18  pay further tribute to this cult classic, Lions Gate also celebrated the 25th

19  anniversary of *Dirty Dancing* just a few years back, and future plans for additional

20  exploitation of this valuable property have been announced and are being closely

21  followed by fans and industry executives alike.

22      20.    During the last 25 years, Lions Gate and its predecessors in interest

23  have been able to capitalize on the popularity and recognition of its *Dirty Dancing*

24  intellectual property rights and have enjoyed a great deal of success in the

25  exploitation of those rights worldwide.

26      21.    One of the most (if not the most) famous lines of *Dirty Dancing* is

27  "Nobody puts Baby in a corner."  This quote, said by Swayze at the climax of the

28  film, has become unquestionably famous.  Indeed, the American Film Institute voted

"Nobody puts Baby in a corner" as one of the top 100 Most Popular Quotes from a motion picture.  By virtue of the popularity of the *Dirty Dancing* motion picture and related properties  and the significant publicity generated by them, among other things, this quote has developed secondary meaning, and become famous, and is unmistakably associated with the *Dirty Dancing* motion picture.  The "Nobody puts Baby in a corner" quote is said by Swayze before the final dance scene between Grey and Swayze, which ends in Swayze lifting Grey over his head and spinning her (the "Dance Lift").  Promotional materials and merchandise for the aforementioned Lions Gate-licensed stage adaptation of the *Dirty Dancing* motion picture feature a still silhouette of the Dance Lift, as shown below (the "Promotional Materials"):



22.     Lions Gate owns all right, title, and interest in, and to the copyright in, the *Dirty Dancing* motion picture.

23.     Lions Gate owns all right, title, and interest in and to the trademark DIRTY DANCING, as well as various other trademarks associated with the *Dirty Dancing* motion picture.  These additional marks include, but are not limited to, the trademark NOBODY PUTS BABY IN A CORNER for use with motion pictures and various items of merchandise.

24.     Not only does Lions Gate have common law trademark rights in the DIRTY DANCING and NOBODY PUTS BABY IN A CORNER trademarks dating

back to 1987, it also has registered the DIRTY DANCING trademark on the Principal Register of the United States Patent & Trademark Office ("PTO") and in numerous countries throughout the world.  Lions Gate owns pending federal applications to register the NOBODY PUTS BABY IN A CORNER trademark, which have been approved by the PTO.  Lions Gate's trademark applications to register NOBODY PUTS BABY IN A CORNER are based on actual use of the mark for certain goods and on an intent to use the mark for the remaining goods identified in the applications.

25.     Lions Gate possesses extensive goodwill and reputation in these trademarks, as the film has been released globally for nearly three decades, and its popularity is proven by the revenue generated from the film itself, merchandising, the soundtracks, and the musical stage show version of the film.

26.     Lions Gate has expressly licensed the use of the DIRTY DANCING and NOBODY PUTS BABY IN A CORNER trademarks for the manufacturing, marketing, and sale of a variety of merchandise through approved licensees.  Lions Gate also licenses elements from *Dirty Dancing* to third parties, who use *Dirty Dancing* to advertise, market, or promote their goods and services.

27.     Lions Gate's licensees are currently selling a variety of merchandise derived from and related to *Dirty Dancing*, including merchandise bearing and/or using the DIRTY DANCING and NOBODY PUTS BABY IN A CORNER trademarks, and are offering services under the DIRTY DANCING and NOBODY PUTS BABY IN A CORNER trademarks, throughout the United States.

28.     By virtue of the popularity of *Dirty Dancing*, the significant sales of licensed merchandise, promotions with third parties, and the significant publicity relating to *Dirty Dancing*, among other things, Lions Gate's DIRTY DANCING and NOBODY PUTS BABY IN A CORNER trademarks have developed secondary meaning and are famous.

29.     Lions Gate's goods and services offered under the DIRTY DANCING

1   and NOBODY PUTS BABY IN A CORNER trademarks have come to be known to

2   the purchasing public as conforming to certain standard of quality.  As a result, the

3   DIRTY DANCING and NOBODY PUTS BABY IN A CORNER trademarks and

4   the goodwill associated with them are of tremendous value to Lions Gate and its

5   authorized licensees and business partners.

6   **Defendants And Their Infringing Actions**

7       30.     Havas created an advertising campaign on behalf of TD Ameritrade

8   Holding, TD Services, TD Ameritrade, and Amerivest during 2014, which consisted

9   of advertisements in various channels, including, but not limited to, an online video,

10  digital display, social media, television, and print (the "Advertising Campaign").

11      31.     The Advertising Campaign was disseminated nationally through a

12  variety of media, including online video, digital display, social media, television,

13  print, and email, and was meant to reach as large an audience as possible.  The

14  Advertising Campaign was generally published and displayed in California and was

15  directly distributed to California residents, in accordance with Defendants' plans

16  and intentions.  Approximately 20% of TD Ameritrade's nationwide branch offices

17  are in California.  Emails sent as part of the Advertising Campaign included in their

18  fine print a link to TD Ameritrade's online privacy statement, which includes

19  information expressly directed to email recipients that reside in California.

20      32.     The Advertising Campaign intentionally copied the *Dirty Dancing*

21  motion picture, and was intentionally designed to create an association with Lions

22  Gate and its commercial activities by marketing TD Ameritrade's goods and

23  services with phrases such as:

24      • "Nobody puts your old 401k in a corner.  Take that baby and roll it

25          over to an IRA.  Then show us your retirement happy dance."

26          (Facebook)

27      • "Nobody puts your old 401k in a corner.  Take that baby and roll it

28          over to an IRA.  Do a #retirement happy dance."  (Twitter)

- "Nobody puts your old 401k in the corner," "TD Ameritrade: Old 401(k) in a Corner," and "Don't let your old 401(k) to sit [sic] in the corner …"  (YouTube)
- "Nobody puts your old 401(k) in a corner" (spoken), and "Nobody puts your old 401(k) in the corner." (written) (National television advertisement)

33.    Because these taglines modified the iconic quote from the *Dirty Dancing* movie and Lions Gate's NOBODY PUTS BABY IN A CORNER trademark, Lions Gate may never have approved or licensed them, had Defendants sought Lions Gate's consent at the outset.

34.    Defendants featured these adulterated taglines with a reenactment or representation of the Dance Lift, namely, a still and/or moving image of a man lifting a piggy bank over his head after the piggy bank ran into the man's arms.  The reenacted Dance Lift copied and was intentionally designed to be virtually identical to the Dance Lift, particularly as depicted in the Promotional Materials, which again is the iconic and ultimate scene in the film in which Swayze lifts Grey above his head during their last dance together.  Defendants also included the phrase "[b]ecause retirement should be the time of your life" with the adulterated taglines, a reference to the hit song "(I've Had) the Time of My Life" by Bill Medley and Jennifer Warnes (the "Song"), which is included on the *Dirty Dancing* soundtrack and plays during the ultimate scene in *Dirty Dancing* that includes the Dance Lift. Defendants' reenactment of the Dance Lift and reference to the Song furthered the false association with Lions Gate and its commercial activities already created by their unauthorized use of the NOBODY PUTS BABY IN A CORNER trademark. Documents showing examples of Defendants' infringement and improper commercial exploitation of Lions Gate's intellectual property rights associated with *Dirty Dancing* are attached hereto as **Exhibit A**.

35.    Defendants' use of the NOBODY PUTS BABY IN A CORNER

trademark or a modification thereof – used alone and with other allusions to the motion picture, such as the Dance Lift and the reference to the Song – has caused and is likely to cause people to falsely or incorrectly believe that Lions Gate has approved, licensed, endorsed, sponsored, and/or authorized, or is associated with, TD Ameritrade's products and/or services.

36.    Confusion has occurred, or at a minimum, is likely given the near identicalness of NOBODY PUTS BABY IN A CORNER trademark and Defendants' use of the phrase "Nobody puts your old 401k in a corner," which confusion – or the likelihood thereof – is exacerbated by the use of the phrase in close proximity to the words "baby" and "dance," the reenacted Dance Lift, and the reference to the Song.

37.    On information and belief, the Advertising Campaign ran from October 2014 through April 12, 2015.  The Advertising Campaign did not stop until Lions Gate learned of it and notified Defendants of their infringement, as described below. The Advertising Campaign or elements thereof may still be viewed on social media websites.

38.    On April 2, 2015, Lions Gate sent a letter to TD Ameritrade Holding and TD Ameritrade, demanding that they cease and desist their use of Lions Gate's intellectual property associated with the *Dirty Dancing* motion picture.

39.    On April 9, 2015, Havas responded on behalf of itself and TD Ameritrade Holding, taking the untenable position that Lions Gate did not have enforceable trademark rights in the line "Nobody puts Baby in a corner," and further claiming that the Advertising Campaign was "so clearly parodic in nature—so as to avoid any confusion, infringement, or other claim."   Defendants have since walked back from their meritless claim of parody after their initial response to Lions Gate's demand letter.

40.    To the extent there was any doubt, Defendants' parody argument – meritless as it is – nevertheless made it clear that Defendants intended to draw a

connection or association with Lions Gate and its commercial activities and deceive customers into believing that the Advertising Campaign was a Lions Gate-licensed, authorized, or sponsored work, when, in fact, it was not.

41.     On April 9, 2015, Havas asserted that "all materials within our control have been pulled off or are in the process of being pulled off media …"  However, on information and belief, an additional television advertisement(s) ran on April 12, 2015 and the Advertising Campaign or elements thereof still resides on social media websites.  Further, Havas refused to make any monetary payment to Lions Gate to compensate Lions Gate for its lost license fees for Defendants' unauthorized use of Lions Gate's intellectual property, despite knowing that Lions Gate has expressly licensed the use of the DIRTY DANCING and NOBODY PUTS BABY IN A CORNER trademarks for the manufacturing, marketing, and sale of a variety of merchandise through approved licensees, and had licensed aspects of *Dirty Dancing* to third parties for use in promoting, marketing, or advertising their goods and services—just as TD Ameritrade did.

42.     Between April 2015 and June 2015, Lions Gate continued to attempt to negotiate a settlement of its claims arising out of Defendants' unauthorized copying of *Dirty Dancing's* iconic quote and use of Lions Gate's trademarks.  Despite Lions Gate's good faith attempt to settle the case, Defendants refused to compensate Lions Gate for their unauthorized use, resting, instead, on their indefensible position that they were free to exploit Lions Gate's intellectual property, without any consequence to them or consideration to Lions Gate.

43.     Specifically, the following letters were sent between the parties from April 2015 to June 2015:

| DATE | AUTHOR | RECIPIENT(S) |
|---|---|---|
| 4/2/15 | Lions Gate<br><br>(Whitney Walters-Sachs of Sheppard, Mullin, Richter & | TD Ameritrade Holding Corporation and TD Ameritrade, Inc.<br><br>(Ellen L.S. Koplow, Esq., |

| | | | |
|---|---|---|---|
| 1 | | Hampton, LLP) | Executive Vice President, General Counsel, and Secretary of TD Ameritrade) |
| 3 | 4/9/15 | Havas Worldwide New York, Inc. (Nancy R. Wynne, General Counsel, on behalf of Havas and TD Ameritrade Holding Corporation) | Lions Gate (Whitney Walters-Sachs of Sheppard, Mullin, Richter & Hampton, LLP) |
| 7 | 4/15/15 | Lions Gate (Whitney Walters-Sachs of Sheppard, Mullin, Richter & Hampton, LLP) | TD Ameritrade Holding Corporation and TD Ameritrade, Inc. (Helen Odem, Esq., Counsel, Intellectual Property) Havas Worldwide New York, Inc. (Nancy R. Wynne, General Counsel) |
| 12 | 4/21/15 | TD Ameritrade Holding Corporation and Havas Worldwide New York, Inc. (Andrew Baum of Foley & Lardner LLP) | Lions Gate (Whitney Walters-Sachs of Sheppard, Mullin, Richter & Hampton, LLP) |
| 16 | 6/3/15 | Lions Gate (Whitney Walters-Sachs of Sheppard, Mullin, Richter & Hampton, LLP) | TD Ameritrade Holding Corporation, TD Ameritrade, Inc., and Havas Worldwide New York, Inc. (Andrew Baum of Foley & Lardner LLP) |
| 20 | 6/18/15 | Lions Gate (Whitney Walters-Sachs of Sheppard, Mullin, Richter & Hampton, LLP) | TD Ameritrade Holding Corporation, TD Ameritrade, Inc., and Havas Worldwide New York, Inc. (Andrew Baum of Foley & Lardner LLP) |

44.    In its June 3, 2015 letter, Lions Gate requested Defendants to engage in earnest in settlement discussions, and expressly stated to Defendants that if a resolution could not be reached, Lions Gate would file an infringement action in U.S. District Court for the Central District of California.

45.     On June 8, 2015, the parties discussed this dispute by telephone at Defendants' request, and Defendants presented Lions Gate with a settlement offer. Defendants expressly agreed not to file a declaratory judgment action without first contacting Lions Gate.  Lions Gate promised the same with respect to filing an infringement action.  This agreement was confirmed in writing by the parties through a series of emails sent on June 8, 2015.

46.     In its June 18, 2015 letter, Lions Gate presented a counteroffer to Defendant and requested a response to its counteroffer to settle by June 25, 2015.

47.     On June 26, 2015, rather than respond to Lions Gate's settlement offer, and less than 24 hours after the deadline to respond to Lions Gate's settlement counteroffer, Defendants rushed to the courthouse and filed a preemptive declaratory judgment complaint in the Southern District of New York (the "New York Lawsuit").  Defendants did so despite the parties' agreement that they would not unilaterally terminate settlement talks and file a lawsuit without advance notice to the other side.

48.     Defendants' decision to violate the parties' agreement and rush to the courthouse is the quintessence of forum shopping, designed to gain home court and substantive law advantages, and force Lions Gate to litigate thousands of miles from its principal place of business.  All of this was done knowing that if the parties could not resolve their dispute, Lions Gate's choice of forum—which is entitled to great deference—would be in this District in Los Angeles, California.

49.     On September 29, 2015, and pursuant to Lions Gate's motion to transfer, the Hon. Katherine B. Forrest transferred the New York Lawsuit to the Central District of California pursuant to 28 U.S.C. § 1404(a).  In her opinion and order, Judge Forrest also held that Havas is more likely than not subject to jurisdiction in California.

50.     On October 19, 2015, Defendants voluntarily dismissed without prejudice pursuant to Fed.R.Civ.P. 41(a)(1) all of their claims alleged in the  New

York Lawsuit, rendering the New York Lawsuit terminated.

**FIRST CAUSE OF ACTION**

**(False Association and Unfair Competition—15 U.S.C. § 1125(a))**

51.     Lions Gate repeats and realleges each and every allegation of paragraphs 1 through 50, above, as though fully set forth herein.

52.     Defendants' unauthorized use of the NOBODY PUTS BABY IN A CORNER trademark or a modification of it – used alone and in conjunction with the reenacted Dance Lift, the reference to the Song, and other words and indicia associated with the *Dirty Dancing* motion picture – in conjunction with Defendants' businesses and the Advertising Campaign as alleged herein, constitutes a false designation of association, affiliation or sponsorship, and unfair competition in violation of 15 U.S.C. § 1125(a).  Defendants' activities falsely imply, indicate, or suggest that their activities and the Advertising Campaign are associated, affiliated, or connected with, or approved or sponsored by, Lions Gate and its commercial activities.

53.     As a direct and proximate result of Defendants' wrongful acts, Lions Gate has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, licensing program, and related goodwill.  Defendants may continue to conduct or renew, unless restrained, their use of NOBODY PUTS BABY IN A CORNER trademark or other trademarks confusingly similar thereto – used alone and in conjunction with the reenacted Dance Lift, the reference to the Song, and other words and indicia associated with the *Dirty Dancing* motion picture – thereby causing irreparable damage to Lions Gate.  Lions Gate has no adequate remedy at law and is entitled to an injunction restraining Defendants, their officers, members, agents, servants, and employees, and all persons acting in concert with Defendants, from engaging in further acts of false designation of association, sponsorship, affiliation, or connection, and acts of unfair competition.

54.     Lions Gate is further entitled to recover from Defendants the actual

1   damages that Lions Gate has sustained, is sustaining, and/or is likely to sustain as a

2   result of Defendants' wrongful acts.  Lions Gate is presently unable to ascertain the

3   full extent of the monetary damages that it has suffered and/or is likely to sustain by

4   reason of Defendants' acts of false designation of association, sponsorship,

5   affiliation, or connection, and unfair competition.

6          55.    Lions Gate is further entitled to recover from Defendants the gains,

7   profits, and advantages that Defendants have obtained as a result of their wrongful

8   acts.  Lions Gate is presently unable to ascertain the extent of the gains, profits, and

9   advantages that Defendants have realized by reason of their acts of false designation

10  of association, sponsorship, affiliation, or connection, and unfair competition.

11         56.    Because of the willful nature of Defendants' wrongful acts, Lions Gate

12  is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C.

13  § 1117.

14         57.    Lions Gate is also entitled to recover its attorneys' fees and costs of suit

15  pursuant to 15 U.S.C. § 1117.

16                          **<u>SECOND CAUSE OF ACTION</u>**

17                    **(Statutory and Common Law Unfair Competition)**

18         58.     Lions Gate repeats and realleges each and every allegation of

19  paragraphs 1 through 57, above, as though fully set forth herein.

20         59.    By reason of the foregoing, Defendants have been, and are, engaged in

21  "unlawful, unfair or fraudulent business practices" in violation of §§ 17200 *et seq.*

22  of the California Bus. & Prof. Code and acts of unfair competition in violation of the

23  common law.

24         60.    Lions Gate invested substantial time, skill, and money in developing its

25  *Dirty Dancing* property rights, including the NOBODY PUTS BABY IN A

26  CORNER trademark.

27         61.    Defendants misappropriated and used Lions Gate's intellectual property

28  at no cost and without the authorization or consent of Lions Gate, causing

                                        -15-

1   substantial injury to Lions Gate.

2       62.    Defendants' acts complained of herein are unlawful within the meaning

3   of § 17200 *et seq*. of the California Bus. & Prof. Code in that they constitute

4   practices that are forbidden by federal, state, and/or common law.  Such practices

5   are likewise unfair within the meaning of the statute, as they violate the spirit of

6   trademark law, and the resulting harm to Lions Gate from these practices outweighs

7   any benefit (to the extent there is any at all).  Finally, Defendants' acts complained

8   of herein are fraudulent as used in § 17200, as members of the public are likely to be

9   deceived by such acts.

10      63.    Defendants' acts complained of herein have damaged and will continue

11  to damage Lions Gate irreparably.  Lions Gate has no adequate remedy at law for

12  these wrongs and injuries.  The damage to Lions Gate includes harm to its

13  reputation and goodwill associated with its NOBODY PUTS BABY IN A

14  CORNER trademark that money cannot compensate.  Lions Gate is therefore

15  entitled to:  (a) injunctive relief restraining and enjoining Defendants and their

16  officers, members, agents, servants, and employees, and all persons acting

17  thereunder, in concert with, or on their behalf, from using the NOBODY PUTS

18  BABY IN A CORNER trademark or any mark, name, symbol, or logo which is

19  confusingly similar thereto – alone or with the Dance Lift, reference to the Song,

20  and other words or indicia associated with *Dirty Dancing* – in connection with the

21  marketing or sale of any goods or services by Defendants; (b) Lions Gate's actual

22  damages sustained as a result of Defendants' wrongful acts; (c) an accounting of

23  Defendants' profits earned from the Advertising Campaign; (d) the award of

24  Defendants' unjust profits, as well as sums sufficient to compensate Lions Gate for

25  all harm suffered as a result of Defendants' conduct; and (e) punitive damages.

26                          **THIRD CAUSE OF ACTION**

27      **(Trademark Infringement—15 U.S.C. § 1125(a) and Common Law)**

28      64.    Lions Gate repeats and realleges each and every allegation of

-16-

paragraphs 1 through 63, above, as though fully set forth herein.

65.     Lions Gate owns all right, title, and interest in and to the NOBODY PUTS BABY IN A CORNER trademark.  Through its approved licensees, Lions Gate markets and sells merchandise using this trademark and other trademarks associated with *Dirty Dancing*.

66.     Defendants have used in commerce, without Lions Gate's permission or authorization, the NOBODY PUTS BABY IN A CORNER trademark, or a mark confusingly similar thereto, in a manner that is likely to cause confusion or mistake and to deceive purchasers as to Lions Gate's affiliation, connection, or association with, or approval or sponsorship of, Defendants, their businesses, and/or the Advertising Campaign.

67.     Defendants' actions are intentional and designed to capitalize on the goodwill, recognition, and fame of the NOBODY PUTS BABY IN A CORNER trademark.

68.     Defendants' acts constitute infringement of the NOBODY PUTS BABY IN A CORNER trademark in violation of the common law and under 15 U.S.C. § 1125(a).

69.     As a direct and proximate result of Defendants' wrongful acts, Lions Gate has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, motion picture, licensing program, and goodwill.  Unless restrained, Defendants may continue to use or resurrect their use of the NOBODY PUTS BABY IN A CORNER trademark or marks confusingly similar thereto and will cause irreparable damage to Lions Gate.  Lions Gate has no adequate remedy at law and is entitled to an injunction restraining Defendants, their officers, members, agents, servants, and employees, and all persons acting in concert with Defendants, from engaging in further acts of infringement.

70.     Lions Gate is further entitled to recover from Defendants the actual damages that Lions Gate has sustained, is sustaining, and/or is likely to sustain as a

1  result of Defendants' wrongful acts.

2      71.    Lions Gate is further entitled to recover from Defendants the gains,

3  profits, and advantages that Defendants have obtained as a result of their wrongful

4  acts.

5      72.     Because of the willful nature of Defendants' wrongful acts, Lions Gate

6  is entitled to an award of punitive damages under the common law, and treble

7  damages and increased profits under 15 U.S.C. § 1117.

8      73.    Lions Gate is also entitled to recover its attorneys' fees and costs of suit

9  pursuant to 15 U.S.C. § 1117, as this is an exceptional case.

10                          **FOURTH CAUSE OF ACTION**

11        **(Dilution—15 U.S.C.§ 1125(c); Cal. Bus. & Prof. Code § 14247)**

12     74.    Lions Gate repeats and realleges each and every allegation of

13  paragraphs 1 through 73, above, as though fully set forth herein.

14     75.    Lions Gate has used the NOBODY PUTS BABY IN A CORNER

15  trademark to identify its products and services before Defendants began using the

16  NOBODY PUTS BABY IN A CORNER trademark, or a mark confusingly similar

17  thereto, in the Advertising Campaign and in conjunction with their businesses.  The

18  NOBODY PUTS BABY IN A CORNER trademark is inherently distinctive and has

19  acquired distinctiveness through Lions Gate's extensive, continuous, and exclusive

20  use of it.

21     76.    The NOBODY PUTS BABY IN A CORNER trademark is famous and

22  distinctive within the meaning of 15 U.S.C. § 1125(c)(1) and § 1127 and Cal. Bus.

23  & Prof. Code § 14247.   The NOBODY PUTS BABY IN A CORNER trademark

24  was famous and distinctive before Defendants' first use of such trademark or a

25  modification of it.

26     77.    Defendants' unauthorized use of the NOBODY PUTS BABY IN A

27  CORNER trademark or modification of it is likely to dilute the distinctive quality of

28  the NOBODY PUTS BABY IN A CORNER trademark in violation of 15 U.S.C.

§ 1125(c) and Cal. Bus. & Prof. Code § 14247.

78.   Defendants' acts complained of herein are likely to damage Lions Gate irreparably.  Lions Gate has no adequate remedy at law for such wrongs and injuries.  The damage to Lions Gate includes potential harm to its trademarks, goodwill, and reputation that money cannot compensate.  Lions Gate is, therefore, entitled to a preliminary and permanent injunction enjoining Defendants' use of the NOBODY PUTS BABY IN A CORNER trademark or any marks dilutive thereof.

79.   Lions Gate is further entitled to recover from Defendants the actual damages sustained by Lions Gate as a result of Defendants' wrongful acts.  Lions Gate is presently unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendants' acts of dilution.

80.   Lions Gate is further entitled to recover from Defendants the gains, profits, and advantages Defendants have obtained as a result of their wrongful acts.  Lions Gate is presently unable to ascertain the extent of the gains, profits, and advantages Defendants have realized by reason of Defendants' willful acts of dilution.

81.   Because of the willful nature of Defendants' actions, Lions Gate is entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118.

## FIFTH CAUSE OF ACTION
### (Copyright Infringement)

82.    Lions Gate repeats and realleges each and every allegation of paragraphs 1 through 81, above, as though fully set forth herein.

83.   Lions Gate is the owner of the copyright in the *Dirty Dancing* motion picture.  At all times relevant to the complaint, Lions Gate is and has been the sole exclusive authorized licensor of the *Dirty Dancing* motion picture in the United States.  The *Dirty Dancing* motion picture is an original work of authorship fixed in a tangible medium of expression owned by Lions Gate and is copyrightable subject matter under the laws of the United States.  The *Dirty Dancing* motion picture was

1  publicly distributed bearing a copyright notice.

2      84.    The *Dirty Dancing* motion picture is the subject of a valid copyright

3  registration issued by the U.S. Copyright Office and owned by Lions Gate.  The

4  copyright is registered and identified in the following copyright registration:

| Description | Reg. Date | Reg. No. | Status |
|---|---|---|---|
| Dirty dancing / a Linda Gottlieb production ; directed by Emile Ardolino. | April 7, 1988 | PA 378-802 | Registered |

9  Such registration is valid and subsisting and has been assigned to Lions Gate

10  through mergers and acquisitions and assignments.  A true and correct copy of the

11  above copyright registration is attached hereto as **Exhibit B**.

12      85.    Defendants had access to the *Dirty Dancing* motion picture through its

13  international theatrical and home entertainment releases, among other publications

14  of the *Dirty Dancing* motion picture and authorized derivatives thereof.

15      86.    Defendants' Advertising Campaign copies and is substantially similar

16  to original elements of the *Dirty Dancing* motion picture.

17      87.    Upon information and belief, Defendants were at all material times

18  aware that their use of material substantially similar to original elements of the *Dirty*

19  *Dancing* motion picture and, in the absence of a valid license agreement authorizing

20  Defendants to use said materials and/or to edit, alter and/or otherwise modify said

21  materials without Lions Gate's prior written approval, would constitute copyright

22  infringement.  Lions Gate has not granted to Defendants any such right or license.

23      88.    Defendants' acts constitute infringement of Lions Gate's copyrights

24  described above in violation of 17 U.S.C. § 501.

25      89.    Lions Gate is informed and believes and on that basis alleges that

26  Defendants had full knowledge that their acts are wrongful and unlawful and have

27  continued to infringe said copyrights, throughout the United States and various other

28  territories of the world.

90.     By reason of the foregoing, Lions Gate has suffered damages in an amount to be determined at trial, and is entitled, at its election, to either (a) all damages suffered by Lions Gate, along with all gains, profits and advantages derived by Defendants from the acts of infringement, plus exemplary and punitive damages in amounts to be proven at trial, or (b) statutory damages as provided for in the Copyright Act of the United States.

91.     Lions Gate is also entitled to attorneys' fees under the Copyright Act.

## PRAYER FOR RELIEF

WHEREFORE, Lions Gate prays that this Court enter judgment against Defendants as follows:

1.     Finding that Defendants have violated 15 U.S.C. § 1125(a) and the common law; have violated Cal. Bus. & Prof. Code § 17200 and the common law by engaging in unlawful, unfair, and fraudulent business practices and other acts of unfair competition; have infringed the NOBODY PUTS BABY IN A CORNER trademark under the common law and 15 U.S.C. § 1125(a); have violated 15 U.S.C. § 1125(c)(1) and Cal. Bus. & Prof. Code § 14247; and have infringed Lions Gate's copyright under 17 U.S.C. § 501;

2.     Ordering that Defendants and their officers, members, agents, servants, directors, employees, partners, representative, assigns, successors, related companies, and attorneys, and all persons in active concert or participation with Defendants or with any of the foregoing, be enjoined preliminarily during the pendency of this action and permanently thereafter from:

a.     Using, promoting, advertising, publicizing, distributing, and posting the NOBODY PUTS BABY IN A CORNER trademark for any goods or services, or any other mark, name, symbol, or logo which is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that Defendants, their businesses, or their goods or services are sponsored, licensed, authorized or endorsed by Lions Gate or its commercial activities or are connected

1    or affiliated in some way with Lions Gate or its commercial activities;

2                      b.      Falsely implying Lions Gate's sponsorship, association,

3    connection, affiliation, or endorsement of Defendants' businesses or engaging in any

4    act or series of acts which, either alone or in combination, constitutes unfair

5    methods of competition with Lions Gate, and from otherwise interfering with or

6    injuring the NOBODY PUTS BABY IN A CORNER trademark, or the goodwill

7    associated with any of the foregoing;

8                      c.      Engaging in any act that is likely to dilute the distinctive

9    quality of the NOBODY PUTS BABY IN A CORNER trademark and/or injures

10   Lions Gate's business reputation;

11                     d.      Copying, distributing, performing, displaying, or preparing

12   derivative works based upon the *Dirty Dancing* motion picture, or engaging in any

13   act in violation of Lions Gate's copyrights, including, but not limited to, inducing,

14   causing, or materially contributing to the infringing conduct of any third party

15   copying, distributing, performing, displaying, or preparing derivative works based

16   upon the *Dirty Dancing* motion picture;

17                     e.      Representing or implying that Defendants are in any way

18   sponsored by, affiliated, connected or associated with, or endorsed or licensed by,

19   Lions Gate its commercial activities; or

20                     f.      Knowingly assisting, inducing, aiding, or abetting any

21   other person or business entity in engaging in or performing any of the activities

22   referred to in paragraphs 2(a) to (e) above.

23            3.      Ordering that Defendants permanently remove all reference to the

24   NOBODY PUTS BABY IN A CORNER trademark and any other mark, name,

25   symbol, or logo that is confusingly similar to the NOBODY PUTS BABY IN A

26   CORNER trademark from Defendants' and their affiliates' websites, Facebook, and

27   Twitter pages, YouTube, and any and all other social networking sites;

28            4.      Ordering that Defendants permanently remove and destroy all

marketing, advertising material, and television commercials comprising the Advertising Campaign or other materials copying the *Dirty Dancing* motion picture or featuring the NOBODY PUTS BABY IN A CORNER trademark or a modification thereof, or any other name, mark, logo, design, or the like confusingly similar thereto;

5.     Granting an award of damages suffered by Lions Gate according to proof at the time of trial;

6.     Ordering that Defendants account to Lions Gate for any and all profits earned as a result of Defendants' acts of infringement and unfair competition in violation of Lions Gate's rights under the Lanham Act, Cal. Bus. & Prof. Code §§ 14247, 17200, *et seq.*, the Copyright Act, and the common law;

7.     Granting an award of statutory damages under the Copyright Act;

8.     Granting an award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

9.     Granting an award of punitive damages for the willful and wanton nature of Defendants' aforesaid acts;

10.     For pre-judgment interest on any recovery by Lions Gate;

11.     Granting an award of Lions Gate's costs, expenses, and attorneys' fees; and

12.     Granting such other and further relief as is just and proper.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated: November 3, 2015          By /s/ Jill M. Pietrini
                                                    Jill M. Pietrini

                                                    Attorneys for Plaintiff  Lions Gate
                                                    Entertainment Inc.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **JURY DEMAND**

Lions Gate demands a trial by jury of all issues triable by jury.

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated:  November 3, 2015

By  /s/ Jill M. Pietrini
     Jill M. Pietrini

     Attorneys for Plaintiff  Lions Gate
     Entertainment Inc.

SMRH:473444689.3

.

# EXHIBIT A



# Nobody puts your old 401(k) in the corner.

Get step-by-step rollover assistance.

We know bringing your retirement assets together can be a hassle. It's why we have rollover consultants on hand to help you with the paperwork and assist in transitioning from your old provider. How easy is that?

Get up to $600 when you roll over your old 401(k). Call TD Ameritrade at 800-454-9272 or go to tdameritrade.com/rollover for details.



A rollover is not your only alternative when dealing with old retirement plans. Please visit tdameritrade.com/rollover for more information on rollover alternatives.

All investments involve risk, and successful results are not guaranteed. **Offer valid through 04/30/2015. Funding of $25,000–$99,999 receives $100; funding of $100,000–$249,999 receives $300; and funding of $250,000 or more receives $600.** Cash bonus subject to twelve-month funding duration condition. See Web site for details and other restrictions/conditions. This is not an offer or solicitation in any jurisdiction where we are not authorized to do business. TD Ameritrade, Inc., member FINRA/SIPC. TD Ameritrade is a trademark jointly owned by TD Ameritrade IP Company, Inc. and The Toronto-Dominion Bank. © 2015 TD Ameritrade IP Company, Inc. All rights reserved. Used with permission.

TD Ameritrade Timeline Photos                                      https://www.facebook.com/tdameritrade/photos/a.14601149441491.960...

facebook   Sign Up

Email or Phone | Password | Log In
☑ Keep me logged in   Forgot your password?

**Timeline Photos**

Back to Album · TD Ameritrade's Photos · TD Ameritrade's Page          Previous · Next



**TD Ameritrade**
Nobody puts your old 401k in a corner. Take that baby and roll it over to an IRA.
Then show us your retirement happy dance. http://amtd.us/HcJ2
October 13, 2014

Album: Timeline Photos
Shared with: 🌐 Public

Open Photo Viewer
Download
Embed Post

👍 Hortencia Lopez, Suzi Lilith Berry, Betty Falcon and 820        Top Comments ▾
others like this.

💬 58 shares

**Dorothy Reddy Baker** I have a 401k and have been considering
moving it into something else. I want to retire in 2 years.
👍 1 · October 14, 2014 at 2:38pm

💬 3 Replies

**Tonita Haynes** Keep receiving 401k info from my job in the mail and I
know absolutely nothing about it.. Coworkers say don't do it the
company doesn't match whatever that means!!! Help!!!
👍 1 · October 14, 2014 at 2:12pm

💬 5 Replies

**Jan Toussaint** I " Definitely Did " and have never been happier 😊 !!!
I 💚 the freedom of being able to make my own investment choices
and not having hidden fees/redemption fees/and commission ( I pay no
commission ) sucked out of my portfolio unlike what happens in a 401k
. I will be " Happy Dancing " to the beat of my own investment drum
worry free 😊 !
October 15, 2014 at 7:59am · Edited

💬 2 Replies

**Robert Uselton** Ha you have too many documents and hoops to jump
thru to rollover anything.
October 14, 2014 at 11:56am

💬 1 Reply

**Oneal Webb** It's not time for that yet...

1 of 2                                                                    3/10/2015 2:26 PM

TD Ameritrade Mobile Trade - Google+   https://www.facebook.com/Ameritrade/posts/photos/...960...



Questions, cant we roll over a potion instead?
And what can TD shear with us about compounding?
October 13, 2014 at 9:26pm

1 Reply

**Mark Newell Douglas** Been doing biz with them for 15 years.
3 · October 13, 2014 at 6:42pm

1 Reply

**Dav West Brook** If I had money toinvest I would need to
1 · October 14, 2014 at 1:12pm

**Mohamed Ahmed Rndan** hi I'm mohamed I'm studying cfa and i'm
from egypt live in dubai
i just want know that if i can open an account can i ?
1 · October 13, 2014 at 8:12pm

**David Bausch** if you had invested in gold just four years ago you
would have doubled your money
2 · October 13, 2014 at 8:27pm

**Sheila Henderson** Thanks cousin
October 15, 2014 at 6:52am

**Diane WaitsmanZophin** I like the Casino!
October 14, 2014 at 10:46am

**Renee Schuster Clepper** Hmmm..makes u wonder ?
October 14, 2014 at 10:12am

**Oneal Webb** Thank you...
Will do so...
October 14, 2014 at 7:18am

**Dede Ramella** looks like Obama has it?
October 13, 2014 at 10:27pm

**Steven Friedman** Not sure it's compliant either
October 13, 2014 at 6:31pm

**Steven Friedman** That is gimicky
October 13, 2014 at 6:31pm

Sign Up     Log In     Mobile      Find Friends     Badges        People     Pages      Places     Games
Locations   About      Create Ad   Create Page      Developers    Careers    Privacy    Cookies    Terms
Help

Facebook © 2015
English (US)



TD Ameritrade: Old 401(k) in a Corner - YouTube                https://www.youtube.com/watch?v=-6s9sqQizyGgQ



# EXHIBIT B

## FORM PA
### UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA

PA   378-802
PAU

EFFECTIVE DATE OF REGISTRATION

| 4 | 7 | 88 |
|---|---|---|
| Month | Day | Year |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1** TITLE OF THIS WORK ▼

"DIRTY DANCING"

PREVIOUS OR ALTERNATIVE TITLES ▼

None

NATURE OF THIS WORK ▼ See instructions

Motion Picture

**2** NAME OF AUTHOR ▼

**a** Dancing Film Productions, Inc.

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ USA

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☒ No
Pseudonymous?   ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for hire" is generally

NATURE OF AUTHORSHIP   Briefly describe nature of the material created by this author in which copyright is claimed. ▼
ENTIRE WORK

**b** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP   Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP   Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**3** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
1987 ◀ Year

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ August   Day ▶ 21   Year ▶ 1987
USA   ◀ Nation

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2.▼

Great American Films Joint Venture
60 Long Ridge Road
Stamford, CT   06907   Attn: Liz Contegni

See instructions before completing this space.

TRANSFER If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.▼

By Written Agreement

APPLICATION RECEIVED
APR 7 1988
ONE DEPOSIT RECEIVED
APR 7 1988   Sept. 22, 88
TWO DEPOSITS RECEIVED

REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE
OFFICE USE ONLY

**MORE ON BACK ▶**
• Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions.   • Sign the form at line 8

DO NOT WRITE HERE
Page 1 of _____ pages

EXAMINED BY ~~on/cc6~~

CHECKED BY

☑ CORRESPONDENCE
   Yes

☐ DEPOSIT ACCOUNT
   FUNDS USED

FOR
COPYRIGHT
OFFICE
USE
ONLY

PA     378-802

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼        Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

   Music and Songs (from various sources)

b. Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                          Account Number ▼

   Vestron Video              DA04 3516

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

   Vestron Pictures, Inc.
   60 Long Ridge Road
   Stamford, CT  06907
   Attn: Liz Contegni
                Area Code & Telephone Number ▶

**7**

Be sure to
give your
daytime phone
number

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☒ owner of exclusive right(s)
☐ authorized agent of
        Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.
Michele Corridor                                     date ▶ April 6, 1988

        Handwritten signature (X) ▼
        Michele Anne Corridor

**MAIL
CERTIFI-
CATE TO**

Name ▼
   Vestron Pictures, Inc.
Number/Street/Apartment Number ▼
   60 Long Ridge Road
City/State/Zip ▼
   Stamford, CT  06907    Attn: Liz Contegni

**Certificate
will be
mailed in
window
envelope**

Have you:
• Completed all necessary
  spaces?
• Signed your application in space
  8?
• Enclosed check or money order
  for $10 payable to Register of
  Copyrights?
• Enclosed your deposit material
  with the application and fee?

MAIL TO: Register of Copyrights,
Library of Congress, Washington,
D.C. 20559

**9**

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in
connection with the application, shall be fined not more than $2,500.

☆U.S. GOVERNMENT PRINTING OFFICE: 1986-491-580/40,007

July 1986—250,000

FORM PA