O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LIONS GATE ENTERTAINMENT INC., a Delaware corporation, | ) ) ) | Case No. CV 15-05024 DDP (Ex) |
| | ) ) | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |
| Plaintiff, | ) ) | |
| v. | ) ) | [Dkt. No. 49] |
| TD AMERITRADE SERVICES COMPANY, INC., a Delaware corporation; TD AMERITRADE, INC., a New York corporation; AMERIVEST INVESTMENT MANAGEMENT, LLC, a Delaware limited liability company; HAVAS WORLDWIDE NEW YORK, INC., a Delaware corporation, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Presently before the Court is the Motion to Dismiss of Defendants TD Ameritrade Services Company, TD Ameritrade, Inc., Amerivest Investment Management, LLC, and Havas Worldwide New York, Inc. (collectively, "Defendants"). (Dkt. No. 49.) After considering the parties' submissions and hearing oral argument, the Court adopts the following Order.

///

## I.    BACKGROUND

This copyright and trademark infringement case arises from Plaintiff Lions Gate Entertainment, Inc.'s intellectual property rights in the movie *Dirty Dancing* that Plaintiff alleges Defendants infringed.  (First Am. Compl. ("FAC") ¶¶ 15, 22, 32.)

Plaintiff Lions Gate is a "global entertainment company" that produces, distributes, finances, licenses, and performs other related activities for movies and television shows.  (<u>Id.</u> ¶¶ 15-16.)  *Dirty Dancing* "is a world famous, Oscar-winning film, which was released in 1987 and became a massive box office hit, with hundreds of millions of dollars in worldwide earnings reported."  (<u>Id.</u> ¶ 17.)  Many scenes and lines from the film are particularly well-known.  (<u>Id.</u>)  The FAC notes in particular the line "Nobody puts Baby in a corner," said by Patrick Swayze to Jennifer Grey in the final climactic scene of the film.  (<u>Id.</u> ¶ 21.)  The line is followed by the final dance between the two main characters, culminating with Swayze lifting Grey over his head (the "dance lift").  (<u>Id.</u>)

Lions Gate claims to own "all right, title and interest in, and . . . the copyright in," the film.  (<u>Id.</u> ¶ 22.)  Lions Gate also claims to own common-law trademark rights in DIRTY DANCING and NOBODY PUTS BABY IN A CORNER, the latter mark being one associated with *Dirty Dancing* the movie and both of which are used in motion pictures, various items of merchandise, and other adaptations of the film.  (<u>Id.</u> ¶ 18-19, 23-24.)  Lions Gate also claims to have registered the trademark DIRTY DANCING and to have applied for trademark registration in NOBODY PUTS BABY IN A CORNER.  (<u>Id.</u> ¶ 24.)  The latter trademark registration is "based on actual use of

the mark for certain goods and on an intent to use the mark for the remaining goods identified in the applications." (Id.)  Plaintiff claims that it has licensed the marks DIRTY DANCING and NOBODY PUTS BABY IN A CORNER for the "manufacturing, marketing, and sale of a variety of merchandise through approved licensees." (Id. ¶ 26.) Further, Plaintiff claims that it "licenses elements from *Dirty Dancing* to third parties, who use *Dirty Dancing* to advertise, market, or promote their goods and services." (Id.)  Plaintiff claims that the trademarks have secondary meaning and are famous, as well as are associated with goodwill and quality, creating high value in the marks for Plaintiff and its licensees. (Id. ¶¶ 28-29.)

Defendants TD Ameritrade, TD Ameritrade Services, and Amerivest (collectively, "TD Defendants") are related financial services organizations. (Id. ¶¶ 4-8.)  Havas Worldwide New York ("Havas New York") is an advertising agency that was hired in 2014 to create a national advertising campaign for the TD Defendants. (Id. ¶¶ 30-31.)  The advertisements consisted of online videos, digital displays, social media, email, television, and print ads. (Id.)  According to Plaintiff's FAC, "[t]he Advertising Campaign was generally published and displayed in California and was directly distributed to California residents, in accordance with Defendants' plans and intentions." (Id. ¶ 31.)  Further, "[a]pproximately 20% of TD Ameritrade's nationwide branch offices are in California" and "[e]mails sent as part of the Advertising Campaign included in their fine print a link to TD Ameritrade's online privacy statement, which includes information expressly directed to email recipients that reside in California." (Id.)

1    Plaintiff claims that the advertising campaign "intentionally
2 copied the *Dirty Dancing* motion picture, and was intentionally
3 designed to create an association with Lions Gate and its
4 commercial activities by marketing TD Ameritrade's goods and
5 services with phrases" that modified the NOBODY PUTS BABY IN A
6 CORNER trademark and quote from *Dirty Dancing*, as well as the
7 signature dance lift. (Id. ¶¶ 32-34.) Essentially, the main line
8 of the advertisement campaign is: "Nobody puts your old 401k in a
9 corner," with an encouragement to enroll in the TD Defendants' IRA
10 plans. (Id. ¶ 32.) The advertisements often included images to
11 conjure up *Dirty Dancing*, such as "a still and/or moving image of a
12 man lifting a piggy bank over his head after the piggy bank ran
13 into the man's arms." (Id. ¶ 34.) Some versions of the
14 advertisements invoked the song, "(I've Had) the Time of My Life,"
15 which played during the final dance scene in the movie, with lines
16 like "[b]ecause retirement should be the time of your life." (Id.)
17 Plaintiff claims that all these uses render consumer confusion
18 likely to occur. (Id. ¶¶ 35-36.)

19    Plaintiff claims that the advertising campaign ran from
20 October 2014 to April 12, 2015, as Plaintiff contacted the TD
21 Defendants about the campaign in April after Plaintiff learned of
22 it. (Id. ¶¶ 37-38.) Havas New York responded to the cease and
23 desist letter on behalf of itself and the TD Defendants, claiming
24 that Plaintiff had no enforceable trademark rights and that
25 Defendants were making a parody. (Id. ¶ 39.) Shortly after an
26 exchange of letters regarding the advertising campaign, Defendants
27 ceased the campaign, but still refused to pay Plaintiff for their
28 alleged infringing use. (Id. ¶ 41.)

4

1   The parties continued communicating about settlement of
2   Plaintiff's potential claims, with Plaintiff stating in June 2015
3   that if settlement discussions did not engage in earnest, it would
4   file a lawsuit in the Central District of California. (Id. ¶ 42-
5   44.)  After the parties failed to settle, Defendants filed a
6   declaratory judgment suit in the Southern District of New York.
7   (Id. ¶¶ 45-47.)  Plaintiff filed a motion to transfer venue in the
8   New York case and also filed its own suit in the Central District
9   of California.  (Id. ¶ 49; see also Compl., dkt. no. 1.)  On
10  September 29, 2015, the New York federal court granted the motion
11  to transfer; shortly thereafter, Defendants voluntarily dismissed
12  their claims in the New York suit.  (FAC ¶¶ 49-50.)  Now,
13  Defendants have filed a Motion to Dismiss for (1) lack of personal
14  jurisdiction over Havas New York; and (2) Copyright Act preemption.

15  **II.  LEGAL STANDARD**

16      **A.   Motion to Dismiss Under Rule 12(b)(2)**

17  Federal Rule of Civil Procedure 12(b)(2) provides that a court
18  may dismiss a suit for lack of personal jurisdiction.  The
19  plaintiff has the burden of establishing that jurisdiction exists,
20  but need only make "a prima facie showing of jurisdictional facts
21  to withstand the motion to dismiss."  Pebble Beach Co. v. Caddy,
22  453 F.3d 1151, 1154 (9th Cir. 2006).  "[U]ncontroverted allegations
23  in [the plaintiff's] complaint must be taken as true, and conflicts
24  between the facts contained in the parties' affidavits must be
25  resolved in [the plaintiff's] favor."  Rio Props., Inc. v. Rio
26  Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).
27  ///
28  ///

**B.   Motion to Dismiss Under Rule 12(b)(6)**

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted requires a court to determine the sufficiency of the plaintiff's complaint and whether it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

In order to survive a 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Dismissal is proper if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

6

1  defendant is liable for the misconduct alleged." <u>Id.</u>  The court

2  need not accept as true "legal conclusions merely because they are

3  cast in the form of factual allegations." <u>Warren v. Fox Family</u>

4  <u>Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003).

5  **III. DISCUSSION**

6      Defendants make two main arguments in support of their Motion

7  to Dismiss.  First, Havas New York claims that it is not subject to

8  personal jurisdiction in California.  (Mot. Dismiss at 1, 7-15.)

9  Havas New York claims there is no general jurisdiction because it

10 "does not have offices, employees, or other contacts" in California

11 and Plaintiff cannot impute separately incorporated sister entities

12 to Havas New York in order to establish jurisdiction.  (<u>Id.</u> at 1,

13 7-10.)  There is no specific jurisdiction either, Havas New York

14 claims, because it "merely produced the advertisements and

15 delivered them to its client, TD Ameritrade Services, outside of

16 California."  (<u>Id.</u> at 1, 10-15.)  Because Havas New York "did not

17 disseminate the advertisements or have any role or authority in

18 determining whether, when, or where they would air," Havas New York

19 claims it "has not purposefully directed any activity toward

20 California."  (<u>Id.</u> at 1-2.)

21     Second, all Defendants argue that four of Plaintiff's causes

22 of action are preempted by the Copyright Act: (1) False Association

23 and Unfair Competition under 15 U.S.C. § 1125(a); (2) Statutory and

24 Common Law Unfair Competition under Cal. Bus. & Prof. Code § 17200

25 et seq.; (3) Trademark Infringement under 15 U.S.C. § 1125(a) and

26 common law; and (4) Trademark Dilution under 15 U.S.C. § 1125(c)

27 and Cal. Bus. & Prof. Code § 14247.  (<u>See</u> Mot. Dismiss at 2, 15-25;

28

FAC ¶¶ 51-81.)  Plaintiff also has a cause of action for copyright infringement that Defendants do not contest.  (FAC ¶¶ 82-91.)

Defendants claim that the trademark and unfair competition claims are preempted by the Copyright Act because the "claims are premised on the unauthorized reproduction of elements of a creative work."  (Mot. Dismiss at 2.)  Defendants argue that the elements are protected by the Copyright Act and a plaintiff cannot bring other claims to vindicate the same rights, much less expand protection beyond the scope of copyright.  (Id. at 2, 17-25.)

Plaintiff responds that there is personal jurisdiction over Havas New York, as strongly suggested by the New York federal court that heard the motion to transfer venue.  (Opp'n at 1.)  At the least, Plaintiff argues, the Court should grant jurisdictional discovery.  (Id. at 1, 14-15.)  Plaintiff claims that there is general jurisdiction over Havas New York because of its corporate relationships with related California entities and California-based clients.  (Id. at 5-6.)  There is also specific jurisdiction here, Plaintiff claims, because Havas New York created the advertisement campaign "knowing and intending it to be run in California and specifically directed to California consumers."  (Id. at 7 (emphasis removed).)  According to Plaintiff, because Havas New York purposefully directed its activities at California, Plaintiff's claims arise out of those activities, and exercise of jurisdiction would be reasonable, this Court should find it has personal jurisdiction over Havas New York.  (Id. at 8-14.)

Second, Plaintiff argues it has alleged clear trademark and unfair competition claims that exist independently from its copyright claim — and that Plaintiff can enforce both of kinds of

1   intellectual property rights.  (Id. at 2, 16-25.)  Plaintiff

2   acknowledges that the trademark and copyright claims derive from

3   one creative work, the film *Dirty Dancing*, but that "courts have

4   consistently held that a single work may simultaneously be

5   protected under copyright and trademark law."  (Id. at 2.)

6        In their Reply, Defendants reiterate that there are no grounds

7   for personal jurisdiction over Havas New York because: "Havas New

8   York is a foreign entity, and contracted with another foreign

9   entity, TD Ameritrade Services, to develop a national advertising

10  campaign; that the Accused Ads were both created for and delivered

11  to TD Ameritrade Services outside of California; and that TD

12  Ameritrade Services distributed the Accused Ads."  (Reply at 1.)

13  As for the copyright preemption issue, Defendants claim that

14  Plaintiff in its Opposition and FAC have "commingle[d] the

15  quote/alleged mark with the film *Dirty Dancing* as a whole" and that

16  there is no real use of the alleged trademark outside of the

17  copyrighted motion picture work.  (Id. at 2.)

18  **A.  Personal Jurisdiction**

19       District courts have the power to exercise personal

20  jurisdiction to the extent authorized by the law of the state in

21  which they sit.  Fed. R. Civ. P. 4(k)(1)(A); Panavision Int'l, L.P.

22  v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).  Because

23  California's long-arm statute authorizes personal jurisdiction

24  coextensive with the Due Process Clause of the United States

25  Constitution, see Cal. Civ. Proc. Code § 410.10, this Court may

26  exercise personal jurisdiction over a nonresident defendant when

27  that defendant has "at least 'minimum contacts' with the relevant

28  forum such that the exercise of jurisdiction 'does not offend

9

traditional notions of fair play and substantial justice.'"
Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th
Cir. 2004) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316
(1945)).  The defendant's contacts with the forum must be of such a
quality and nature that the defendants could reasonably expect
"being haled into court there." World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 297 (1980).  Personal jurisdiction may be
either general or specific.  See Schwarzenegger, 374 F.3d at 801.

### 1. General Jurisdiction

General jurisdiction exists over a nonresident defendant when
"the defendant . . . engage[s] in 'continuous and systematic
general business contacts' that 'approximate physical presence' in
the forum state." Id. (quoting Helicopteros Nacionales de
Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)) (internal
quotation omitted).  The standard for general jurisdiction is
"exacting." Id. Where a defendant is subject to a state's general
jurisdiction, he "can be haled into court in that state in any
action, even if the action is unrelated to those contacts."
Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082,
1086 (9th Cir. 2000).  "Factors to be taken into consideration are
whether the defendant makes sales, solicits or engages in business
in the state, serves the state's markets, designates an agent for
service of process, holds a license, or is incorporated there."
Id.

The Supreme Court has held that general jurisdiction can be
exercised over corporations in the state of incorporation and its
principal place of business, although in an "exceptional case,"
there can be general jurisdiction in other fora.  See Daimler AG v.

1   <u>Bauman</u>, 134 S. Ct. 746, 760-61 & n.19 (2014).  The Supreme Court

2   did not provide much explanation as to those exceptional cases,

3   other than to say that "a corporation's operations in a forum other

4   than its formal place of incorporation or principal place of

5   business may be so substantial and of such a nature as to render

6   the corporation at home in that State."  <u>Id.</u> at 761 n.19.

7        Here, Defendant Havas New York is incorporated in Delaware and

8   has its principal place of business in New York — facts neither

9   party contests.  (Mot. Dismiss at 8; Opp'n at 5-6; FAC ¶ 9.)

10   Instead, Plaintiff contends that this is an "exceptional case"

11   where general jurisdiction can be found outside those paradigmatic

12   categories.  Plaintiff relies on <u>CollegeSource, Inc. v. AcademyOne,</u>

13   <u>Inc.</u>, 653 F.3d 1066, 1074 (9th Cir. 2011), which stated that it

14   considered the "longevity, continuity, volume, economic impact,

15   physical presence, and integration into the state's regulatory or

16   economic markets" of the defendant's contacts with the forum state

17   when determining if general jurisdiction is appropriate.

18        Plaintiff claims that Havas New York has "large California-

19   based clients" and clients "that have a substantial California

20   presence," such as the TD Defendants.  (Opp'n at 6 & n.3 (citing

21   Walters Decl. ¶¶ 18-24); <u>see also</u> FAC ¶ 12.)  Further, Plaintiff

22   argues that Havas New York has "extensive, self-proclaimed

23   connections to offices throughout the world, including 8 sister

24   entities in California with whom Havas has overlapping corporate

25   officers."  (Opp'n at 6 & n.4 (citing Walters Decl. ¶¶ 12-17); <u>see</u>

26   <u>also</u> FAC ¶¶ 10-11.)  The FAC states that "Havas operates offices in

27   both San Francisco, California and San Diego, California, and is

28   affiliated with local offices throughout the U.S., including 8

offices in California, 2 of which are located in Los Angeles."
(FAC ¶ 11.)  Plaintiff claims that Havas New York "frequently
partners and does business with its affiliates in California" and
holds itself out to its clients as "under one roof."  (Id.)

Defendants argue that Plaintiff has its facts wrong.
Defendants claim that Havas New York "does not maintain an office
in San Francisco, San Diego, or anywhere else in California."
(Mot. Dismiss at 9 (citing Wynne Decl. ¶ 3).)  These California
offices instead belong to sister Havas entities.  (Id. (citing
Wynne Decl. ¶¶ 12-13.)  Further, Defendants argue that Plaintiff's
claim about the amount of California clients is incorrect (citing
Wynne Decl. ¶ 18), and regardless of the clients, merely having
California clients is insufficient to find general jurisdiction.
(Mot. Dismiss at 9 (citing CollegeSource, 653 F.3d at 1075).)  The
focus instead is on "where the business activity is performed."
(Id. (quoting Cypers v. Broussard Bros., Inc., No. 3:13-cv-0050,
2013 WL 3480381, at *3 (S.D. Tex. July 9, 2013).)  And Defendants
claim that having sister entities — some of which are in California
— cannot make general jurisdiction, particularly where there is no
agency theory of jurisdiction or allegations of alter ego.  (Mot.
Dismiss at 9-10 (citing Daimler, 134 S. Ct. at 759; Wynne Decl. ¶¶
12-15).)

The Court finds that the question of general jurisdiction over
Havas New York in California is a close one on the factual record
developed here.  On the one hand, Havas New York does extensive
business in California, even apart from its sister entities in
California, and the company holds itself out to the public as a
worldwide firm with internal connections within the different

12

sister offices.  On the other hand, Havas New York does not only or perhaps even primarily deal with clients or do business in California, much less have a physical presence in the state — the sister entities are not grounds for jurisdiction and there is no allegation of alter ego here.

Looking at the Ninth Circuit's factors from <u>CollegeSource</u>, it is unclear how long Havas New York has dealt in California.  There does appear to be some longevity, as the firm has several large institutional clients here, although Havas New York may only be hired for a short time by some of its California clients.  There is some uncertainty in the current record as to the volume of business Havas New York does in California.  There is economic impact on both California clients and Havas New York through Havas New York's California clients, but again the record is not that developed as to this factor.  There does not appear to be any physical presence by Havas New York itself in California other its visits to its clients and meetings with its sister entities.  And there are no facts in the record about Havas New York's integration into the state's regulatory or economic markets here in California, so the Court cannot consider that factor.

Altogether, the Court could see an argument for general jurisdiction in this case, although the record could also benefit from some more development in that regard.  If the Court finds specific jurisdiction, however, it need not rest its decision on this ground or order jurisdictional discovery.

## 2.  Specific Jurisdiction

Specific jurisdiction exists where a case arises out of forum-related acts.  <u>Schwarzenegger</u>, 374 F.3d at 801-02.  The relevant

13

contacts with the forum are those of the defendant, not the
plaintiff or third parties — no matter "how significant the
plaintiff's contacts with the forum may be." Walden v. Fiore, 134
S. Ct. 1115, 1122 (2014) ("[T]he plaintiff cannot be the only link
between the defendant and the forum.  Rather, it is the defendant's
conduct that must form the necessary connection with the forum
State that is the basis for its jurisdiction over him.").  The
Ninth Circuit analyzes specific jurisdiction according to a three-
prong test:

> (1) The non-resident defendant must purposefully direct
> his activities or consummate some transaction with the
> forum or resident thereof; or perform some act by
> which he purposefully avails himself of the privilege
> of conducting activities in the forum, thereby
> invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates
> to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair
> play and substantial justice, i.e. it must be
> reasonable.

Schwarzenegger, 374 at 802.  "If the plaintiff succeeds in
satisfying both of the first two prongs, the burden then shifts to
the defendant to 'present a compelling case' that the exercise of
jurisdiction would not be reasonable." Id. at 802 (citing Burger
King Corp. v. Rudzewicz, 471 U.S. 452, 476-78 (1985)).

        **a.   First Prong: Purposeful Availment & Direction**

To satisfy the first prong of the specific jurisdiction
inquiry, courts examine whether a defendant "either purposefully
availed itself of the privilege of conducting activities in [the
forum state], or purposefully directed its activities toward [the
forum state]." Id.  Different tests are applied depending on
whether the case is based on contract or tort, with "availment"

generally used for contracts and "direction" generally used for torts. Id. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. Id.

"A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere"; this includes situations where activities are directed at residents of the forum even if there are no physical contacts with the forum. Id. at 803; see also World-Wide Volkswagen, 444 U.S. at 297-98 ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.").

This case is not one where Havas New York performed or executed a contract in California, or where it sought the benefits of the laws of California. Therefore, there are no grounds for a purposeful availment analysis, and the Court turns to purposeful direction.

The Ninth Circuit evaluates purposeful direction using a three-part "effects test" taken from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984). See Schwarzenegger, 374 F.3d at 803. "The effects test is satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant

1    knew was likely to be suffered in the forum state."  <u>Love v.</u>
2    <u>Associated Newspapers, Ltd.</u>, 611 F.3d 601, 609 (9th Cir. 2010)

3        Here, Havas New York committed an intentional act in its
4    creation of the advertising campaign.  The parties dispute whether
5    the act was "expressly aimed" at California.  Defendants argue that
6    "alleged knowledge that TD Ameritrade was going to place the
7    Accused Ads nationwide is insufficient to establish that Havas New
8    York expressly aimed activity towards California." (Mot. Dismiss
9    at 11.)  Havas New York did not disseminate the advertisements, did
10   not determine "whether and where to use the Accused Ads," and the
11   advertisements do not advertise Havas New York's business. (<u>Id.</u> at
12   11-12.)  Defendants claim that for the Court to find jurisdiction
13   despite these facts "would result in essentially national or
14   worldwide jurisdiction over any creative agency that delivers its
15   work to any company that operates in more than one state or
16   internationally." (<u>Id.</u> at 12.)

17       In response, Plaintiff argues that Havas New York designed the
18   allegedly infringing advertisement campaign "knowing and intending
19   it to be run in California and specifically directed to California
20   consumers." (Opp'n at 7 (citing Wynne Decl. ¶ 8; Walters Decl. ¶¶
21   22-24; Huerta Decl. ¶¶ 2-5).)  The campaign was nationwide, but
22   Plaintiffs argue that it also targeted California specifically
23   because TD Ameritrade has 20% of its branch offices and many
24   individual retail investors in California. (<u>Id.</u> at 9 & n.7 (citing
25   Wynne Decl. ¶ 8; Walters Decl. ¶¶ 22-23).)  The fact that Havas New
26   York did not disseminate the advertisements is not controlling,
27   Plaintiff argues, because this case is just like <u>Calder v. Jones</u>,
28   465 U.S. 783 (1945).

1      In Calder, the Supreme Court held that a reporter and editor

2   of a national publication — both citizens of Florida — were subject

3   to suit in California because the object of their allegedly

4   libelous article was in California; it did not matter that the

5   reporter and editor did not circulate the publication because they

6   intentionally aimed their actions at California.  Id. at 789; see

7   also Walden, 134 S. Ct. at 1123-24 & n.7 (discussing Calder).  The

8   defendants argued that they could not control their employer's

9   marketing and circulation activity, and that the fact that they

10  could "foresee" the article's circulation in California is not

11  sufficient for jurisdiction.  Calder, 465 U.S. at 789 (defendants

12  also "liken[ed] themselves to a welder employed in Florida who

13  works on a boiler which subsequently explodes in California" and

14  argued that while jurisdiction over the manufacturer may be

15  appropriate, it "should not be applied to the welder who has no

16  control over and derives no direct benefit from his employer's

17  sales in that distant State").  The Supreme Court rejected these

18  arguments, stating that the defendants were "not charged with mere

19  untargeted negligence" but instead intentional tortious conduct

20  expressly aimed at California:

21          Petitioner South wrote and petitioner Calder edited an
            article that they knew would have a potentially devastating
22          impact upon respondent.  And they knew that the brunt of
            that inquiry would be felt by respondent in the State in
23          which she lives and works and in which the National
            Enquirer has its largest circulation.  Under the
24          circumstances, petitioners must "reasonably anticipate
            being haled into court there" to answer for the truth of
25          the statements made in their article.

26  Id. at 789-90.

27      The Court finds this case analogous to Calder.  Havas New York

28  knew it was using Lions Gate's intellectual property — no party

disputes the iconic nature of *Dirty Dancing* or that Havas
originally claimed as a defense that it was merely parodying
Plaintiff's film, indicating its knowledge of the original source —
and Havas New York created an advertisement campaign that targeted
Plaintiff's intellectual property rights in the film.  Havas New
York also knew that the ad would be in one of the largest bases of
population — and relevant consumer population — in the nation for a
nationwide advertising campaign: California.

The alleged harm was felt nationwide, consistent with the
extent of the campaign, but the harm was also targeted toward
California specifically as a major hub of the TD Defendants'
business, the location of Plaintiff's principal place of business,
and the heart of the entertainment industry.  See <u>Rio Props., Inc.</u>
<u>v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1020-21 (9th Cir. 2002)
(where defendant targeted consumers in forum with different kinds
of advertisements and "knowingly injured" the plaintiff in the
forum, which was the plaintiff's principal place of business and
"the capital of the gambling industry").  Therefore, it does not
matter that Havas New York did not distribute the advertisements;
as in <u>Calder</u>, the intentional act, the direct aim to California,
and the knowledge of the harm that would be caused in California
are sufficient to establish purposeful direction.

Havas New York argues that <u>Schwarzenegger</u> puts a different
gloss on <u>Calder</u>.  (Reply at 11.)  <u>Schwarzenegger</u> held there was no
specific jurisdiction in California over an Ohio car company that
ran an unauthorized advertisement using Schwarzenegger's picture
because the creation and publication of the advertisement was
expressly aimed at Ohio, not California — in fact, there was no

evidence that the ad ever ran anywhere outside Ohio.

Schwarzenegger, 374 F.3d at 807.  That case is not analogous to this one because the ads Havas New York created not only used Plaintiff's intellectual property without authorization, but also the ads did run in California with Havas New York's knowledge that the campaign was national, including California.

Havas New York also argues that there is a difference when the advertisements are for the defendant itself, rather than for a different entity that decides to place the ads in a national audience.  (Mot. Dismiss at 12; Reply at 11-12.)  In the latter situation, Havas New York argues, there should be no jurisdiction because there is no attempt by the defendant to exploit the forum for the defendant's business advantage.  In the former situation, a defendant has reached out to the forum with advertisements for its own business, thus personal jurisdiction is appropriate.  (Reply at 12.)  Havas New York cites cases where defendants, working outside of the forum, were not found to be subject to personal jurisdiction based on national distribution by a third party of allegedly infringing work.  (Mot. Dismiss at 12 (citing Bridgeport Music, Inc. v. Still N the Water Pub, 327 F.3d 472, 480-81 (6th Cir. 2003); Dos Santos v. Telemundo Commc'ns Grp., LLC, No. SACV 12-1373 JVS (MLGx), 2012 WL 9503003, at *6-7 (C.D. Cal. Dec. 19, 2012); McDonough v. Fallon McElligott, Inc., No. CIV 95-4037, 1996 WL 753991, at *4-6 (S.D. Cal. Aug. 5, 1996).

None of these cases are persuasive in this case.  Bridgeport lacked any real evidence regarding even nationwide distribution of advertisements.  McDonough found evidence both supporting and opposing specific jurisdiction, and while the court ultimately

19

found no specific jurisdiction, it did so distinguishing <u>Calder</u> on
the basis that there was no evidence that the ad targeted the
forum.

<u>Dos Santos</u> also weighed evidence pointing both ways as to
specific jurisdiction, and ultimately found that there was no
evidentiary basis to find the defendants "acted with a desire or
goal of appealing to California and exploiting the market for
commercial gain, or that they directed Telemundo's broadcasts and
advertising." <u>Dos Santos</u>, No. SACV 12-1373 JVS (MLGx), at * 7.
The last statement of the court in <u>Dos Santos</u> about directing
another defendant's broadcasts and advertising appears a bit in
tension with <u>Calder</u>'s finding that the fact that defendants do not
actually distribute intentionally tortious material does not mean
there is no specific jurisdiction as long as the defendants knew
the material would be distributed in the forum state. <u>Calder</u>, 465
U.S. at 789-90. Therefore, the Court holds that there is express
aiming of intentionally tortious conduct in this case as alleged by
Plaintiff, satisfying the first prong.

### b.   Second Prong: Relation to Forum

"The second requirement for specific jurisdiction is that the
contacts constituting purposeful availment must be the ones that
give rise to the current suit. We measure this requirement in
terms of 'but for' causation." <u>Bancroft</u>, 223 F.3d at 1088.

Here, but for Havas New York's nationwide advertisement
campaign allegedly using Plaintiff's protected intellectual
property, Plaintiff would not have been harmed in its home forum,
California. Thus, the contacts Havas New York has with the forum —

the advertisement campaign using Plaintiff's intellectual property — are also the conduct that gave rise to the suit.

### c.   Third Prong: Reasonableness of Jurisdiction

To determine reasonableness, courts look to seven fairness factors from the Supreme Court's <u>Burger King</u> decision:

> (1) the extent of a defendant's purposeful interjection [into the forum]; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  No one factor is dispositive; a court must balance all seven.

<u>Panavision</u>, 141 F.3d at 1323 (internal citation omitted).

Defendants argue that the exercise of jurisdiction over Havas New York would be unreasonable because it has not reached out to California in any way and defending in California would be a large burden since it is based in New York, which is also the location of "all relevant witnesses and evidence." (Mot. Dismiss at 14.) Plaintiff argues that this showing is not enough to meet the burden that is on Defendant after Plaintiff makes its prima facie case of proper jurisdiction. (Opp'n at 13.)  Plaintiff also address each of the factors:

> Havas purposefully directed itself into California by creating, designing and implementing the Advertising Campaign for a client whose presence in California is extensive, and specifically designed it to target California customers, using assets known to belong to a California-based company.
> In addition, Havas regularly services California-based clients, including by traveling for client meetings. Havas also touts itself as "one of the largest integrated marketing communications agencies in the world," and its public statements confirm that it regularly works with its various California affiliates.  Thus, it undoubtedly has

1    the resources to defend itself in California, where it has
     at least 8 sister offices.
2        Finally, this Court has an overwhelming interest in
     adjudicating this dispute.  Lions Gate maintains its
3    principal place of business here, the intellectual property
     at issue resides here, and, as the New York Court held,
4    California is the most convenient and efficient forum.

5  (Id. at 14 (paragraph breaks inserted).)  Defendants' Reply does

6  not address these points or make further arguments as to the

7  reasonableness of exercising personal jurisdiction.  (Reply at 13

8  n.4.)

9       The Court finds that exercise of personal jurisdiction over

10  Havas New York is reasonable.  The Court described above the extent

11  of Havas New York's purposeful direction to the forum.  There is a

12  burden on Havas New York in defending in California, but the burden

13  is slight considering that Havas New York has related entities and

14  business with clients in California.  There is no conflict with the

15  sovereignty of New York, particularly as this case would be in

16  federal court in either state and the New York federal court

17  transferred the case to this jurisdiction.  This state has a strong

18  interest in adjudicating the dispute because the case concerns the

19  protection of valuable intellectual property owned by a California-

20  based company in one of California's most famous and important

21  industries.

22       As there has already been a case in New York that was

23  transferred here, and Defendants dismissed that case voluntarily,

24  it is most efficient to resolve this dispute in one court and to

25  stop the forum transfers by both parties.  The forum is important

26  to Plaintiff's ability to have convenient and effective relief

27  because Plaintiff is based here and suffered harm to its

28  intellectual property here.  There is another forum available — New

1  York — but the court there already decided it is more convenient
2  and appropriate for the case as a whole to be decided in this
3  forum.  Therefore, the Court holds that exercise of specific
4  personal jurisdiction is reasonable in this case.

5       **B.   Copyright Act Preemption and 12(b)(6)**

6       The Copyright Act preempts rights under common law or state
7  statutes that "are equivalent to any of the exclusive rights within
8  the general scope of copyright as specified by section 106."  17
9  U.S.C. § 301(a).  The Supreme Court has extended this principle of
10 copyright preemption to the Lanham Act and federal trademark
11 protection.  See <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>,
12 539 U.S. 23, 33-38 (2003); <u>see also</u> <u>Mercado Latino, Inc. v. Indio</u>
13 <u>Prods., Inc</u>, No. CV 13-01027 DDP, 2013 WL 2898224, at *4 (C.D. Cal.
14 June 12, 2013) ("To the extent that the Copyright Act provides an
15 adequate remedy, therefore, Lanham Act claims are preempted.").

16      The Ninth Circuit has adopted a two-part test for copyright
17 preemption.  First, the court "determine[s] whether the 'subject
18 matter' of the state law claim falls within the subject matter of
19 copyright as described in 17 U.S.C. §§ 102 and 103."  <u>Laws v. Sony</u>
20 <u>Music Entm't, Inc.</u>, 448 F.3d 1134, 1137 (9th Cir. 2006) (footnotes
21 omitted).  Second, if the court determines the subject matter is
22 within copyright, then the court "determine[s] whether the rights
23 asserted under state law are equivalent to the rights contained in
24 17 U.S.C. § 106, which articulates the exclusive rights of
25 copyright holders."  <u>Id.</u> at 1137-38.

26      **1.   Subject Matter of Copyright**

27      First, the trademark and unfair competition claims must relate
28 to subject matter within the scope of the Copyright Act for

23

preemption to apply.  Section 102 of the Copyright Act extends
copyright protection to "original works of authorship fixed in any
tangible medium of expression."  17 U.S.C. § 102(a); see also id. §
103 (covering compilations and derivative works).  The statute
specifically includes "motion pictures and other audiovisual
works," such as the film *Dirty Dancing*, as well as literary works,
musical works, and choreographic works — all of which may be at
issue here with the song, the screenplay quote, and the dance lift.
Id. § 102.  Therefore, copyrighted and copyrightable subject matter
is involved in Plaintiff's unfair competition and trademark causes
of action.

### 2.    Exclusive Rights of Copyright & *Dastar* Preemption

Second, the right asserted in the state law action must be
equivalent to a right protected under the Copyright Act for
preemption to apply.  Section 106 in the Copyright Act outlines the
exclusive rights of a copyright owner, including reproduction of
the copyrighted work, preparation of derivative works, distribution
of the work, and public performance and display of the work.  17
U.S.C. § 106(1)-(5).  "To survive preemption, the state cause of
action must protect rights that are qualitatively different from
the rights protected by copyright: the complaint must allege an
'extra element' that changes the nature of the action."  Grosso v.
Miramax Film Corp., 383 F.3d 965, 968 (9th Cir. 2004), amended on
denial of reh'g 400 F.3d 658 (9th Cir. 2004).

The same kind of preemption principle applies for federal
Lanham Act causes of action as for state and common-law causes of
action.  In Dastar, the Supreme Court explained that federal
trademark law could not be relied upon to extend copyright or

24

1  patent rights.  <u>Dastar</u>, 539 U.S. at 33–34. Instead, copyright and

2  patent rights expire with those rights' statutory timelines, and

3  not the potentially endless trademark protections.  <u>Id.</u>

4      Further, trademark law is designed to protect the "origin of

5  goods" and prevent consumer confusion as to the source of goods,

6  not to protect "originality or creativity," those being protected

7  by copyright and patent law.  <u>Id.</u> at 37.  Thus, the Court

8  interpreted "origin of goods" in the Lanham Act to refer "to the

9  producer of the tangible goods that are offered for sale, and not

10 to the author of any idea, concept, or communication embodied in

11 those goods."  <u>Id.</u>

12     The Court noted that this did not prevent the plaintiff in

13 that case from raising a claim for false advertising under §

14 43(a)(1)(B) of the Lanham Act, which could occur, for example, if

15 the defendant movie producer "were, in advertising or promotion, to

16 give purchasers the impression that the video was quite different

17 from that series" that the producer had substantially copied.  <u>Id.</u>

18 at 38.  In that situation, the Court explained, there would not be

19 a "reverse passing off" cause of action under § 43(a)(1)(A) for

20 confusion as to the origin of the goods, but instead there could be

21 a cause of action for misrepresentation of the nature,

22 characteristics, or qualities of the goods.  <u>Id.</u>

23     Defendants claim here that the gravamen of Plaintiff's

24 complaint is an alleged violation of the rights in Plaintiff's

25 copyrighted film, *Dirty Dancing*.  (Mot. Dismiss at 20.)  As

26 Defendants see it,

27     Lions Gate alleges that Defendants copied elements of the
       movie *Dirty Dancing*, made modifications to those elements,
28     and then passed them off as their own original content in

1      the Accused Ads; such acts caused confusion, mistake, or
       deception as to Defendants' services originating with or
2      being endorsed by Lions Gate; and such acts have harmed
       Lions Gate, its marks, the movie *Dirty Dancing*, Lions
3      Gate's licensing program, and its goodwill and reputation.

4  (Id. at 20-21.)

5      Defendants claim that Plaintiff's cause of action for false

6  association and unfair competition under § 1125(a) is barred under

7  a plain reading of Dastar, which dealt with the same statutory

8  section in terms of false designation of origin.  (Id. at 21-23.)

9  Defendants argue that other courts have found claims of false

10 association the same as false designation of origin, which was at

11 issue in Dastar, and different from Dastar's carve out for

12 misrepresentation of the nature, characteristics, or qualities

13 provision under § 1125(a)(1)(B).  Plaintiff's second cause of

14 action is for California and common-law unfair competition

15 protection, and Defendants cite cases holding that state and

16 common-law protection is subject to the same result as federal

17 unfair competition law in terms of copyright preemption.  (Id. at

18 23-24.)

19     Defendants group together in their analysis the third and

20 fourth causes of action for trademark infringement and dilution.

21 Defendants explain that for the dilution cause of action,

22 Plaintiff's mark is not famous as an originator or mark of goods,

23 as the statute requires — it is famous as part of the copyrighted

24 film.  (Id. at 24 & n.12.)  Further, the allegations as to these

25 two causes of action, Defendants claim, are really copyright

26 infringement claims and the FAC fails to establish any use of the

27 NOBODY PUTS BABY IN A CORNER mark as an actual trademark.  (Id. at

28 24-25.)

1    Plaintiff puts its arguments differently: "Lions Gate owns
2  trademark rights in NOBODY PUTS BABY IN A CORNER, and Defendants
3  used that mark, or a mark confusingly similar thereto, in
4  advertisements for their financial services in a manner likely to
5  confuse as to their services' association with, or endorsement by,
6  Lions Gate." (Opp'n at 18-19.)  Plaintiff claims that it has made
7  separate copyright infringement claims, and that its discussion of
8  the film, song, and dance lift in relation to the trademark are
9  based on the false association cause of action. (Id. at 19.)
10  Importantly, Plaintiff claims, "a single work may be protected as
11  an original work of authorship under copyright law and as a
12  trademark." (Id. (emphasis omitted) (citing Tristar Pictures, Inc.
13  v. Del Taco, Inc., No. CV 99-07655 DDP, 1999 WL 33260839, at *3
14  (C.D. Cal. Aug. 31, 1999).)  Dastar did not change this fact,
15  Plaintiff argues, citing cases. (Id. at 22-23.)

16    The Court notes that the FAC bleeds together its copyright,
17  trademark, and unfair competition claims — and the facts that
18  support each cause of action — making it challenging for the Court,
19  much less Defendants, to determine the allegedly separate theories
20  underlying the different rights.  As pled and argued, it appears
21  that Plaintiff seeks to use copyright aspects either as a bolster
22  for its trademark and unfair competition claims, or as the real
23  basis of the claims — the latter of which is certainly not
24  permissible.  Further, it is unclear from the FAC what the alleged
25  mark NOBODY PUTS BABY IN A CORNER has been or is intended to be
26  used for in terms of consumer confusion; at oral argument,
27  Plaintiff's counsel represented that the mark had been used on
28  goods such as posters, journals, clothing, and the like since 1987.

27

1  Plaintiff's first cause of action, false association and
2  unfair competition under 15 U.S.C. § 1125(a), involves the same
3  statutory subsection as was involved in <u>Dastar</u>: § 1125(a)(1)(A).
4  <u>See</u> <u>Dastar</u>, 539 U.S. at 31; <u>Lexmark Int'l, Inc. v. Static Control</u>
5  <u>Components, Inc.</u>, 134 S. Ct. 1377, 1384 (2014) ("Section 1125(a)
6  thus creates two distinct bases of liability: false association, §
7  1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."). False
8  association and its related unfair competition is the same claim as
9  that of false designation of origin, just under a different name.
10 Thus, Plaintiff's cause of action would appear barred under <u>Dastar</u>,
11 as detailed in the cases cited by Defendants. (<u>See</u> Mot. Dismiss at
12 21-23.) Therefore, the Court dismisses this cause of action with
13 prejudice because the cause of action is preempted and any
14 amendment would be futile.

15 Plaintiff's second and third causes of action, statutory and
16 common-law unfair competition and trademark infringement under the
17 common law and 15 U.S.C. § 1125(a), face similar problems. These
18 causes of action are based on Defendants essentially copying
19 Plaintiff's intellectual property and slightly changing the words —
20 creating a derivative work, perhaps — and using the changed
21 sentence in advertising its own products. Under standard state and
22 common-law preemption analysis from the Ninth Circuit, the state
23 and common-law claims alleged here are preempted by copyright law
24 because the same rights are asserted in these causes of action as
25 are asserted in the copyright infringement cause of action, namely
26 reproduction and distribution of the copyrighted work and
27 preparation of a derivative work. (<u>See</u> FAC ¶¶ 59-61, 65-68.)
28

For the federal claim, under _Dastar_, the same issue regarding consumer confusion as to the origin or association of the goods arises here for trademark infringement.  Trademark law is designed to protect consumers from, for example, "the Coca-Cola Company's passing off its product as Pepsi-Cola or reverse passing off Pepsi-Cola as its product."  _Dastar_, 539 U.S. at 32.  Thus, if the TD Defendants were to sell posters, journals, and clothing with NOBODY PUTS BABY IN A CORNER on them, or take the goods Lions Gate alleges it produces or licenses and put TD's own mark on it, then there would be a solid origin claim under the Lanham Act, and surely any state and common-law equivalent.  _Dastar_ explicitly provided for that — the distinction it drew for origin claims was between "the producer of the tangible goods that are offered for sale" (allowable) and "the author of any idea, concept, or communication embodied in those goods" (preempted).  _Id._ at 37.

The problem is that nothing like that has occurred here. Plaintiff claims that Defendants have used a slightly altered version of its trademark in advertising for services that Plaintiff argues will cause consumer confusion as to Plaintiff's endorsement or association with those services, even though Plaintiff does not allege it practices or licenses those services.  That is, according to Plaintiff, a consumer viewing the TD advertisements would be confused as to the association of the film company Lions Gate (or at least the movie _Dirty Dancing_) with TD's financial services, even though the advertisements clearly promote TD's financial services and do not mention Lions Gate or _Dirty Dancing_, or attempt to pass off products of TD as from Lions Gate or vice versa. Plaintiffs argue this consumer confusion is caused by the

advertisements' use of Lions Gate's trademark, NOBODY PUTS BABY IN A CORNER.

The Court cannot see how this is different from a copyright infringement claim, or a claim that Defendants have failed to obtain the permission of the author of the "idea, concept, or communication embodied in those goods" Plaintiff claims to have licensed to use its phrase. Cf. Deckers Outdoor Corp. v. J.C. Penny Co., 45 F. Supp. 3d 1181, 1184-86, 1188-89 (C.D. Cal. 2014). Assuming copyrights in the line "Nobody puts Baby in a corner," or in the film *Dirty Dancing*, an unauthorized use of the copyrighted work includes copying the work and distributing it to the public as well as making an unauthorized derivative work — like making an advertisement using copyrighted work and distributing the ad to the public.

That is what happened in this case, as alleged in the FAC. Defendants made an advertisement and used elements from the film *Dirty Dancing*: they used one of the most famous lines, "Nobody puts Baby in a corner," and made a new tag line from it, "Nobody puts your old 401k in a corner; they played on the famous concluding dance scene with images of a man lifting a piggy bank over head; they referenced the famous song playing during that dance with another tag line, "Because retirement should be the time of your life." These actions are potential violations of Plaintiff's copyright in *Dirty Dancing*, but there is no trademark infringement or unfair competition based on trademark infringement.

And while the Court acknowledges that there are instances where a communicative good can be protected under both copyright and trademark, that is not present here. See Tristar Pictures,

30

1   _Inc._, No. CV 99-07655 DDP, at *3.  The problem in this case is that
2   the alleged wrongful conduct is Defendants' unauthorized use of
3   NOBODY PUTS BABY IN A CORNER.  Plaintiff alleges that this would
4   cause consumer confusion as to Lion's Gate's association with the
5   TD Defendants and their services.  But this exact claim and theory
6   can and is made in Plaintiff's copyright infringement cause of
7   action: that the protected elements of _Dirty Dancing_, including the
8   line "Nobody puts Baby in a corner," were publicly used without the
9   authorization of the sole licensor of _Dirty Dancing_, Lions Gate.
10  (FAC ¶¶ 82-88.)

11      The only difference between Plaintiff's copyright and
12  trademark claims is that in the latter claims, Plaintiff's allege
13  that consumers will be confused by the unauthorized use as to Lions
14  Gate's association with the TD Defendants and their services.  But
15  the same _rights_ are alleged in the causes of action — the right to
16  be the exclusive licensor and user of the sentence "Nobody puts
17  Baby in a corner."  Therefore, Plaintiff's trademark infringement
18  and unfair competition causes of action are also dismissed with
19  prejudice because they are preempted by the Copyright Act and so
20  any amendment would be futile.

21      The cases Plaintiff relies on to show there is a separate
22  trademark claim here are not persuasive.  First, this Court's
23  decision in Tristar Pictures was pre-_Dastar_ and so does not answer
24  the questions presented in this case.  Polar Bear Prods., Inc. v.
25  Timex Corp., 384 F.3d 700 (9th Cir. 2004), was post-_Dastar_, but did
26  not deal with _Dastar_ at all or copyright preemption in any
27  significant way.  _Id._ at 721.  It certainly does not stand for the
28  proposition that Plaintiff cites it for: "Trademark claims cannot

be preempted by the Copyright Act." (Opp'n at 17.) Plaintiff's
other cases are inapposite because they involve different factual
scenarios and causes of action, with resulting different theories
of trademark protection and preemption. See, e.g., Ward v. Andrews
McMeel Pub., LLC, 963 F. Supp. 2d 222, 235-36 (S.D.N.Y. 2013)
(trade dress); Profoot, Inc. v. MSD Consumer Care, Inc., No. 11-
7079, 2012 WL 1231984, at *3 (D.N.J. Apr. 12, 2012) (trade dress);
Perfect 10, Inc. v. Google, Inc., No. CV 04-9484 AHM, 2008 WL
4217837, at *8-9 (C.D. Cal. July 16, 2008) (state law causes of
action including publicity and misappropriation).

Plaintiff's strongest cases are Bach v. Forever Living
Products U.S., Inc., 473 F. Supp. 2d 1110 (W.D. Wash. 2007), and
Butler v. Target Corp., 323 F. Supp. 2d 1052 (C.D. Cal. 2004).
Bach involved the defendants' use of the title, character, name,
text, and photographs from the book *Jonathan Livingston Seagull*.
Bach, 473 F. Supp. 2d at 1113. The defendants not only used the
intellectual property associated with the book in their own
materials, but they also stated in advertising their products that
the brand "is the Jonathan brand" and that "Jonathan is really the
basis of what Forever is about." Id. at 1113-14. The court
analyzed whether the plaintiffs' copyright claims preempted their
trademark and trade dress claims and determined that there were
elements of both:

> Plaintiffs' rights in the *name* and *title* of Jonathan
> Livingston Seagull and the *trade dress* of the book cover .
> . . are protected under trademark law, not copyright law,
> because it is the name, title, and trade dress that are the
> source-identifying marks associated with Plaintiffs. And
> Plaintiffs' rights in the JLS *character*, the *photograph*
> that FLP used as its logo, and the portions of the
> copyrighted text used by FLP, are protected under copyright
> law, not trademark law, because the character, *text*, and

32

images in *Jonathan Livingston Seagull* are the artists' creative work.

*Id.* at 1118.  Distinguishing *Dastar*, the court stated that this case did not involve the use of trademark law to prosecute plagiarism of creative work.

This case does not persuade this Court to find that the trademark and copyright claims here can go forward.  NOBODY PUTS BABY IN A CORNER is a part of the *text* of the copyrighted work *Dirty Dancing*.  To the extent Plaintiffs argue it is also a source-identifying mark associated with Lions Gate, the Court notes that cases have held, like *Bach* here, that where copyright and trademark rights are found in the same expressive product, they protect different parts of that good, just like the court described above in *Bach*.  *See also* *Tristar Pictures*, No. CV 99-07655, at *3 (citing *Universal City Studios, Inc. v. Nintendo Co.*, 578 F. Supp. 911 (S.D.N.Y. 1983)).  That is not the case here, particularly where the FAC alleges the trademark claims while relying not only on the alleged mark, but also on other elements from the film *Dirty Dancing*.

*Butler* involved the defendant's use of plaintiffs' copyrighted musical work and sound recording, *Rebirth of Slick (Cool like Dat)*.  *Butler*, 323 F. Supp. 2d at 1054.  The defendant played the sound recording as the soundtrack to its national advertising campaign, and also had ads and signs at stores stating, "Jeans Like That," "Denim Like That," "Shoes Like That," and so on.  *Id.*  The plaintiffs sued for infringement of the right to publicity, unfair business practices, and Lanham Act claims.  *Id.*  Every cause of action based on the defendant's use of the sound recording was held

preempted by the Copyright Act.  _Id._ at 1060.  However, the right
of publicity, unfair business practices based on the use of the
plaintiffs' identity, and the Lanham Act claim based on false
endorsement through use of the plaintiffs' identity were all found
not preempted.  _Id._

The opinion never mentions _Dastar_, but this makes sense once
the causes of action are examined.  The plaintiffs in _Butler_ were
not like Plaintiff here and claiming solely that the use of a
famous line, "Cool like Dat," as modified and used in advertising
was a violation of the plaintiffs' trademark rights in using that
phrase.  Instead, the plaintiffs in _Butler_ claimed that the use of
something so closely associated to their famous persona was a
misappropriation of their publicity and a false endorsement where
the "mark" for Lanham Act purposes is their celebrity identity.
Such a theory of Lanham Act and unfair business practices causes of
action is not similar to the one espoused by Plaintiff in this
case, and not necessarily covered by _Dastar_.

Lastly, Plaintiff has a dilution cause of action under both
federal and state law.  (FAC ¶¶ 74-81 (citing 15 U.S.C. §§
1125(c)(1), 1127; Cal. Bus. & Prof. Code § 14247).)  These causes
of action have the same elements: (1) the mark must be famous and
distinctive; (2) the defendant must use the mark in commerce; (3)
defendant's use must begin after the mark is famous; and (4)
defendant's use must be likely to cause dilution, such as by (a)
blurring or (b) tarnishment.  _Jada Toys, Inc. v. Mattel, Inc._, 518
F.3d 628, 634 (9th Cir. 2007).  These causes of action require the
defendant to be using a mark that is identical or nearly so to the
plaintiff's mark.  _Id._

1     Plaintiff's FAC pleads that the mark NOBODY PUTS BABY IN A

2  CORNER is famous and distinctive, and was such before Defendants

3  ever used it in their ads.  Plaintiff claims that Defendants have

4  used the mark in Defendants' ads, but that is not the same as

5  alleging that Defendants use Plaintiff's mark, or a mark nearly

6  identical to it, as the mark for Defendants' own goods — which

7  would be an allegation that appears clearly contradicted by the

8  facts of this case.  Thus, it does not appear that as pled,

9  Defendants have used the mark in commerce in the sense that the law

10  requires.  There does not appear to be any dispute or contrary

11  facts that Plaintiff could plead to show that Defendants used the

12  allegedly famous mark as Defendants' own mark or to identify

13  Defendants' services.  Therefore, while not perhaps preempted by

14  the Copyright Act, the Court finds that the dilution cause of

15  action is also dismissed with prejudice under Rule 12(b)(6) for

16  failure to state a claim because there are no facts that would

17  support this cause of action so any amendment would be futile.

18  **IV. CONCLUSION**

19     For all the reasons discussed above, the Court GRANTS in part

20  and DENIES in part Defendants' Motion to Dismiss.

21

22  IT IS SO ORDERED.

23

24  Dated: March 14, 2016

25

26                     DEAN D. PREGERSON

27                  United States District Judge

28