O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONS GATE ENTERTAINMENT, INC., a Delaware corporation, <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> TD AMERITRADE SERVICES COMPANY, INC., a Delaware corporation, et al. <br><br> Defendants/Counterclaimants. | Case No. 2:15-05024 DDP-E <br><br> **ORDER RE: PLAINTIFF'S MOTION TO VACATE THE COURT'S MARCH 14, 2016 ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** <br><br> [Dkt. 160] |

Presently before the court is Plaintiff's Motion to Vacate this court's Order (Dkt. 87), issued March 14, 2016. Having considered the parties' submissions, the court adopts the following Order.

**I. BACKGROUND**

Plaintiff Lions Gate Entertainment, Inc. ("Lions Gate") claims to hold copyrights in the film *Dirty Dancing*, which includes the iconic line "Nobody puts Baby in a corner." (First Am. Compl. ("FAC") ¶¶ 21-22). Lions Gate also alleges trademark rights in DIRTY DANCING and the line NOBODY PUTS BABY IN A CORNER. (*Id*. ¶¶ 18-19, 23-34).[1]

Defendants TD Ameritrade, TD Ameritrade Services, and Amerivest (collectively, "TD") are related financial services organizations. (*Id*. ¶¶ 4-8). Defendant Havas Worldwide New York, an advertising agency, created a national advertising campaign on behalf of TD. (*Id*. ¶ 30.) The campaign featured the tag line "Nobody puts your old 401k in a corner." (*Id.* ¶ 32). The ads often included images that conjured up *Dirty Dancing*, including an image of a man lifting a piggy bank over his head after the piggy bank ran into the man's arms, which invoked the dance lift from the final scene in *Dirty Dancing* (*Id.* ¶ 32). Lions Gate claimed that Defendants' advertising campaign "intentionally copied the *Dirty Dancing* motion picture, and was designed to create an association with Lions Gate and its commercial activities by marketing TD Ameritrade's goods and services with phrases" that modified the NOBODY PUTS BABY IN A CORNER trademark and line from *Dirty Dancing*, as well as the signature dance lift. (*Id.* ¶¶ 32-34.).

Based on these allegations, Lions Gate brought, *inter alia*, copyright claims, as well as claims for (1) false association and unfair competition pursuant to 15 U.S.C. § 1125(a); (2) unfair competition pursuant to Cal. Bus. & Prof. Code § 17200 and the common law; and (3) trademark infringement pursuant to 15 U.S.C. § 1125(a) and the common law (collectively, the "Trademark Claims"). Defendants filed a Motion to Dismiss. (*See* Def's' MTD at 2, 15-25.)  On March 14, 2016, this court granted in part Defendants' Motion to

---

[1] The facts in this section are drawn from the court's prior Order, Dkt. 87, which recounts the FAC allegations in greater detail.

1  Dismiss and dismissed Lions Gate's Trademark Claims with prejudice. (Dkt. 87). Lions
2  Gate now moves to vacate the March 14 Order with respect to the Trademark Claims.[2]

**II. LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 54(b), "any order . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." A district court also "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001).[3]

**III. DISCUSSION**

In the present motion, Lions Gate requests that the court exercise its discretion to vacate parts of its Order Granting in Part Defendants' Motion to Dismiss, Dkt. 87. Although styled as a Motion to Vacate, Lions Gate's motion, in effect, asks the court to reconsider the merits of its prior Order.[4] Specifically, Lions Gate asks the court to vacate the dismissal with prejudice of its Trademark Claims. These claims arise from TD's alleged unauthorized use of the NOBODY PUTS BABY IN A CORNER trademark. Lions Gate reasons that, because it has entered into a settlement with TD, it will be unable to appeal the relevant parts of the court's interlocutory order and "can only seek relief . . . by way of a motion to vacate." (Mem. at 2).[5]

---

[2] As part of the settlement agreement entered into by the parties, Defendants agreed not to oppose the present motion.

[3] Although Plaintiff does not style the present motion as one for reconsideration, the court notes that Local Rule 7-18 is potentially applicable. However, because the legal standard is not determinative in this case, the court treats the present motion as a Rule 54(b) motion to vacate.

[4] Lions Gate maintains that, had it known earlier of the Ninth Circuit's reversal of *Mercado Latino v. Indio Products*, 649 Fed. App'x 633 (9th Cir. May 13, 2016), "it would have included the Trademark Claims in its [earlier] motion for reconsideration." (Mem. at 3-4).

[5] It is unclear whether Lions Gate raises this fact as an equitable consideration in favor of granting vacatur. Even if it did, several courts have held that, where the parties' voluntary action forecloses the possibility of appeal, then this fact does not necessarily

3

### A. *Dastar*

This court previously ruled that Lions Gate's Trademark Claims were pre-empted by the Copyright Act and barred by the Supreme Court's holding in *Dastar*. (Dkt. 87 at 28-29). *Dastar* concerned a television series produced by a Twentieth Century Fox affiliate that was copied, modified, and repackaged by Dastar into a videotape set. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 26 (2003). Twentieth Century Fox and others raised copyright and trademark claims, alleging that Dastar had falsely designated the "origin" of the products, in contravention of the Lanham Act, 15 U.S.C. § 1125(a).[6]

The Supreme Court held that the term "origin," for the purposes of the Lanham Act, means "the producer of the tangible product sold in the marketplace," and not "the author of any idea, concept, or communication embodied in those goods." *Id. at* 32, 37. To hold otherwise would risk confounding the two bodies of intellectual property law, causing the Lanham Act's trademark protections to extend into areas traditionally occupied by the law of copyright. *Id.* at 34. Because Dastar manufactured and sold the video set "as its own product," *id.* at 31, the Court ruled that it did not falsely designate the "origin" or producer of the goods, in contravention of the Lanham Act.

Similarly, here, because TD's advertising campaign was not likely to confuse consumers as to the actual "producer of the tangible product sold in the marketplace," the court concluded that the Trademark Claims were barred under *Dastar*. The court reasoned thus:

---

weigh in favor of vacatur. *See In re CytRx Corp. Stokholder Derivative Litigation*, No. CV 14-6414-GHK (PJWx), at *3 (C.D. Cal. Aug. 17, 2016); *Levin v. City & Cty. of San Francisco*, No. 3:14-CV-03352-CRB, 2017 WL 2335358, at *1 (N.D. Cal. May 30, 2017).

[6] Section 1125(a) prohibits, among other things, a person's use in commerce of "any false designation of origin" that is likely to confuse consumers as to "the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."

4

> [I]f the TD Defendants were to sell posters, journals, and clothing with NOBODY PUTS BABY IN A CORNER on them, or take the goods Lions Gate alleges it produces or licenses and put TD's own mark on it, then there would be a solid origin claim under the Lanham Act, and surely any state and common-law equivalent. *Dastar* explicitly provided for that—the distinction it drew for origin claims was between "the producer of the tangible goods that are offered for sale" (allowable) and "the author of any idea, concept, or communication embodied in those goods" (preempted). *Id.* at 37, 123 S.Ct. 2041.
>
> The problem is that nothing like that has occurred here. Plaintiff claims that Defendants have used a slightly altered version of its trademark in advertising for services that Plaintiff argues will cause consumer confusion as to Plaintiff's endorsement or association with those services, even though Plaintiff does not allege it practices or licenses those services. That is, according to Plaintiff, a consumer viewing the TD advertisements would be confused as to the association of the film company Lions Gate (or at least the movie *Dirty Dancing*) with TD's financial services, even though the advertisements clearly promote TD's financial services and do not mention Lions Gate or *Dirty Dancing*, or attempt to pass off products of TD as from Lions Gate or vice versa.

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*, 170 F. Supp. 3d 1249, 1267 (C.D. Cal. 2016).

Lions Gate challenges this conclusion on the grounds that "whether Lions Gate offers financial services . . . is irrelevant to its ability to plead cognizable Trademark Claims." (Mem. at 9). The court disagrees. Although it is possible that trademark infringement can occur in cases of non-rival goods or services, the "type" of good or service is one of several factors to be considered in deciding whether there is a likelihood of consumer confusion. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 874 (9th Cir. 2014). Moreover, whether Lions Gate "practices or licenses" financial services is not irrelevant to whether the ad campaign appears to have falsely designated the "origin" or producer of those services as Lions Gate. Therefore, the court did not err in considering this factor, among others, when assessing the Trademark Claims.

### B.  Mercado Latino

Lions Gate also argues that the court's Order was based a decision that was subsequently reversed by the Ninth Circuit, *Mercado Latino, Inc. v. Indio Products, Inc.*, 649

Fed. App'x 633 (9th Cir. 2016). The Order cites *Mercado Latino* for the following proposition:

> The Supreme Court has extended this principle of copyright preemption to the Lanham Act and federal trademark protection. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33–38 (2003); *see also Mercado Latino, Inc. v. Indio Prods., Inc*, No. CV 13–01027 DDP, 2013 WL 2898224, at *4 (C.D.Cal. June 12, 2013) ("To the extent that the Copyright Act provides an adequate remedy, therefore, Lanham Act claims are preempted."). (Dkt. 87, at 23).

Despite the brevity of the Order's reference to *Mercado Latino*, Lions Gate claims that the court's reliance on it was misplaced, and that this reliance justifies vacatur of the court's dismissal of the Trademark Claims.

In *Mercado Latino*, the plaintiff brought copyright and trade dress claims arising from the sale of devotional prayer candles. *Mercado Latino, Inc. v. Indio Prod., Inc.*, No. CV 13-01027 DDP RNBX, 2013 WL 2898224, at *1 (C.D. Cal. June 12, 2013), *rev'd and remanded*, 649 F. App'x 633 (9th Cir. 2016). The district court concluded that the trade dress claims were pre-empted, as they sought protection for 'the same elements for which Mercado seeks copyright protection.'" *Id*. The Ninth Circuit reversed in an unpublished decision. The Circuit held that the trade dress claims were not barred under *Dastar*. It held that the plaintiff had alleged copyright claims based on the design of the candles, as well as trade dress claims based on allegations that the design was so similar to that of the defendants' candles as to cause customer confusion about the origin of the goods. *Id.* at 634. In so ruling, the Ninth Circuit distinguished *Dastar* as applying to "the narrow instance in which a plaintiff alleges a defendant has violated the Lanham Act by falsely designating the origin of a 'communicative product." *Id*. (quoting *Dastar*, 539 U.S. at 33). The candles at issue in *Mercado Latino*, however, were not communicative products. Here, conversely, the use of Lions Gates' trademarked phrase (or a variation thereof) in the advertising campaign involved a communicative product to which *Dastar*'s reasoning may apply. Therefore, the unpublished reversal of *Mercado Latino* has no import on the court's prior Order.

Nor, as Lions Gate suggests, was the prior Order erroneous because it was based on an over-expansive application of *Dastar*. The Order acknowledges, as proper, that there may be "instances where a communicative good can be protected under both copyright and trademark." (Dkt. 87 at 30). However, it reasoned that the Trademark Claims in the present case were pre-empted because they could not be said to protect "different" rights than those arising under the Copyright Act. (*Id*. at 30).

### C. Warner Brothers Entertainment

Lions Gate argues that vacatur is also appropriate in light of the Eighth Circuit's ruling in *Warner Brothers Entertainment v. X One X Productions*, 840 F.3d 971, 979-80 (8th Cir. 2016). *Warner Brothers* involved copyright and trademark infringement claims for the use of characters and "signature phrases" from the films *Gone with the Wind* and *The Wizard of Oz*, as well as the *Tom & Jerry* cartoons. *Id*. at 975. Although the Eighth Circuit's ruling is not binding on its own decisions, the court examines whether its reasoning is persuasive in the case at hand.

In *Warner Brothers*, the defendants "extracted images of famous characters" from publicity materials, and then licensed these extracted images for use on sundry items, ranging from clothing to lunchboxes to playing cards. *Id.* at 975. In some cases, the defendants "modified the images, such as by adding a character's signature phrase from the movie." *Warner Bros. Entm't v. X One X Prods.*, 644 F.3d 584, 590 (8th Cir. 2011). Under these circumstances, the Eighth Circuit held that "[i]mages of the film actors in character and signature phrases from the films are not communications, concepts, or ideas that the consumer goods embody as *Dastar* defines these terms." 840 F.3d at 980. Rather, the products were used to "associate the products with Warner's films, not to copy the film itself." *Id*.

In contrast, the line "Nobody puts your old 401K in the corner" in TD's advertising campaign was used to incorporate communicative elements of the film *Dirty Dancing*. Lions Gates alleged trademark violations arising "not only on the alleged mark, but also on other elements from the film *Dirty Dancing*," (Dkt. 87 at 33), such as an image

of a man lifting a piggy bank over his head, which evoked the movie's signature dance lift, and a reference to the song that played during the movie's closing dance scene with the line, "[b]ecause retirement should be the time of your life." (FAC ¶¶ 32, 34).

Together with these other elements, the use of a variant of Lions Gate's trademark phrase in TD's advertisement served to evoke the "communications, concepts, or ideas" embodied in the movie *Dirty Dancing*. *Id*. As such, the Trademark Claims are barred under *Dastar*, as they do not protect rights in a communicative product that are distinct from those already protected by the Copyright Act.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Vacate the March 14, 2016 Order is DENIED.

**IT IS SO ORDERED.**

Dated:  October 16, 2017

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE